

□ **ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 15 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA *ex. rel.*, VICTOR
E. BIBBY and BRIAN J. DONNELLY,

    RELATORS/PLAINTIFFS,

vs.

ABN AMRO MORTGAGE GROUP, INC. (TROY,
MI), AMERICAN HOME MORTGAGE CORP.
(NEW YORK), BANK OF AMERICA
CORPORATION, CENDANT MORTGAGE (MT
LAUREL, NJ), CHASE MANHATTAN
MORTGAGE CORP. (a division of J.P. MORGAN
CHASE & CO.), COUNTRYWIDE HOME LOANS,
INC, COUNTRYWIDE LOANS PROCESSING,
L.P., FIFTH THIRD BANCORP, FIRST HORIZON
LOAN CORPORATION (a division of FIRST
HORIZON NATIONAL CORPORATION), FIRST
MAGNUS FINANCIAL CORP. (TUCSON, AZ),
FRANKLIN AMERICAN MORTGAGE CO.
(FRANKLIN, TN), GENERAL MOTORS
ACCEPTANCE CORPORATION, GUARANTY
RESIDENTIAL LENDING (AUSTIN, TX), IRWIN
MORTGAGE CORPORATION, J.P. MORGAN
CHASE BANK (ISELIN, NJ), MATRIX
FINANCIAL SERVICES CORPORATION, MERIT
FINANCIAL, INC. (REDMOND, WA), MIDFIRST
BANK (OKLAHOMA CITY, OK), MORTGAGE
INVESTORS CORPORATION (FLORIDA),
NATIONAL CITY MORTGAGE, INC. and
CITIMORTGAGE INC., NAVY FEDERAL
CREDIT UNION (VIENNA, VA), NEW
FREEDOM MORTGAGE CORPORATION (SALT
LAKE CITY, UT), PRINCIPAL RESIDENTIAL
MORTGAGE, INC. (acquired by CitiMortgage, a
member of CitiMortgage Group), SUNTRUST
MORTGAGE, INC. (OCALA, FL), UNION
FEDERAL BANK OF INDIANAPOLIS
(INDIANAPOLIS, IN), U.S. BANK a/k/a U.S.
BANCORP, USAA FEDERAL SAVINGS BANK
(SAN ANTONIO, TX), WASHINGTON MUTUAL
HOME LOANS, an affiliate of WASHINGTON

CIVIL ACTION FILE NO.
**1:06-cv-0547 MHS**

**FILED UNDER SEAL**

**FIRST AMENDED COMPLAINT**

MUTUAL BANK, F.A.,
WELLS FARGO HOME MORTGAGE (a division
of WELLS FARGO BANK, N.A),

DEFENDANTS.

## REALTORS' FIRST AMENDED COMPLAINT

COMES NOW, VICTOR E. BIBBY and BRIAN J. DONNELLY, Plaintiffs/Relators, in the above-styled action, by and through counsel of record, Wilbanks & Bridges LLP, and amend their Complaint for the first time as a matter of right pursuant to F.R.C.P. 15. Relators herein restate their allegations and claims for relief as well as add certain Defendants and drop certain Defendants.

Plaintiff states that this action was initially brought on behalf of the United States of America by VICTOR E. BIBBY and BRIAN J. DONNELLY (collectively referred to as the "Relators") against WELLS FARGO HOME MORTGAGE (a division of WELLS FARGO BANK, N.A), WASHINGTON MUTUAL HOME LOANS, an affiliate of WASHINGTON MUTUAL BANK, F.A., FIRST HORIZON LOAN CORPORATION (a division of FIRST HORIZON NATIONAL CORPORATION), HOMEOWNERS MORTGAGE ENTERPRISES, INC, MORTGAGE INVESTORS CORPORATION (FLA), CHASE MANHATTAN MORTGAGE CORP.(a division of JP MORGAN CHASE & CO.), NATIONAL CITY MORTGAGE, INC., and CITIMORTGAGE INC., GENERAL MOTORS ACCEPTANCE CORPORATION, AMERICAN HOME CORTGAGE CORP. (NEW YORK), COUNTRYWIDE HOME LOANS, INC, COUNTRYWIDE LOANS PROCESSING, L.P., PRINCIPAL RESIDENTIAL MORTGAGE, INC., BANK OF AMERICA CORPORATION, MATRIX FINANCIAL SERVICES CORPORATION, FIFTH THIRD BANCORP, BB&T CORP., MARINE MORTGAGE CO., HOMESIDE LENDING, INC., IRWIN MORTGAGE

CORPORATION, US BANK a/k/a US BANCORP and AFFILIATED ENTITIES (hereinafter sometimes collectively referred to as "Defendants," to include Defendants hereby added) pursuant to the *qui tam* provisions of the Civil False Claims Act, 31 U.S.C. §§ 3729-33.

The following Defendants in the initial Complaint are hereby dropped from this litigation: NBANK, HOMEOWNERS MORTGAGE ENTRPRISES, INC., SUNSHINE MORTGAGE CORPORATION, FIRST CITY FINANCIAL CORP., LTD, COMMONWEALTH UNITED MORTGAGE, CMS MORTGAGE GROUP, INC., BB & T CORP., MARINE MORTGAGE CO., ALTA FINANCIAL CORPORATION, BSM FINANCIAL, L.P., PHH CORP and HOMESIDE LENDING, INC.

The following parties are hereby added as party defendants: MORTGAGE INVESTORS CORPORATION, ABN AMRO MORTGAGE GROUP, INC. (TROY, MI), CENDANT MORTGAGE (MT LAUREL, NJ), FIRST MAGNUS FINANCIAL CORP. (TUCSON, AZ), FRANKLIN AMERICAN MORTGAGE CO. (FRANKLIN, TN), GUARANTY RESIDENTIAL LENDING (AUSTIN, TX), JP MORGAN CHASE BANK (ISELIN, NJ), MERIT FINANCIAL, INC. (REDMOND, WA), MIDFIRST BANK (OKLAHOMA CITY, OK), NAVY FEDERAL CREDIT UNION (VIENNA, VA) NEW FREEDOM MORTGAGE CORPORATION (SALT LAKE CITY, UT), SUNTRUST MORTGAGE, INC. (OCALA, FL), UNION FEDERAL BANK OF INDPLS (INDIANAPOLIS, IN) and USAA FEDERAL SAVINGS BANK (SAN ANTONIO, TX).

## THE PARTIES

### 1.

Relator, VICTOR E. BIBBY is President and CEO of U.S. Financial Services, Inc. d/b/a Veteran's Mortgage Company. U.S. Financial Services is a Georgia corporation which operates offices and provides mortgage services as a licensed mortgage broker in seven (7) U.S. states, including, and limited to, Georgia (Residential Mortgagee Licensee #16824), Florida (Residential Mortgagee Licensee #256621), Alabama (Residential Mortgagee Licensee #B8401), South Carolina (Residential Mortgagee License #00225-02M), North Carolina (Residential Mortgagee Licensee #B-119658), Tennessee (Residential Mortgagee Licensee #2876120), and Texas (Residential Mortgagee Licensee #MB 19053).

### 2.

Relator, BRIAN J. DONNELLY is Vice-President of Operations of U.S. Financial Services, Inc. d/b/a Veteran's Mortgage Company ("U.S. Financial").

### 3.

Relator, VICTOR E. BIBBY resides in Fulton County, Georgia. Relator, BRIAN J. DONNELLY resides in Cherokee County, Georgia. They bring this *qui tam* action based upon direct and unique information that they possess with regard to the fraudulent acts of Defendants as set forth hereafter.

## DEFENDANTS

### 4.

Defendant     AMERICAN  HOME  MORTGAGE  CORP  (NEW  YORK)  a/k/a AMERICAN BROKERS CONDUIT (hereinafter "Defendant " or collectively with other

Defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is located in New York. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is CORPORATION SERVICE COMPANY, 40 Technology Pkwy South #300, Norcross, GA 30092.

**5.**

Defendant BANK OF AMERICA CORPORATION, a Delaware corporation (hereinafter "Defendant Bank of America" or collectively with other Defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 401 N Tryon St NC1-021-02-20, Charlotte, NC 28255. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is CT CORPORATION, 1201 Peachtree Street, Atlanta, GA 30361.

**6.**

Defendant CHASE MANHATTAN MORTGAGE CORP., a wholly owned subsidiary of JP MORGAN CHASE & CO. (hereinafter "Defendant Chase Mortgage" or collectively with other Defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal

place of loan operations is at 270 Park Avenue, New York, NY 10017. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its corporate headquarters at 270 Park Avenue, New York, NY 10017.

**7.**

Defendant CITIMORTGAGE, INC., a New York corporation (hereinafter "Defendant Citimortgage" or collectively with other Defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 1000 Technology Drive, MS 140, O'Fallon, MO 63304. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is CT CORPORATION SYSTEM, 1201 Peachtree Street, NE, Atlanta, GA 30361.

**8.**

Defendant COUNTRYWIDE HOME LOANS, INC. and COUNTRYWIDE HOME LOANS SERVICING, L.P., (hereinafter collectively "Defendant Countrywide " or collectively with other Defendants as "Defendants"), now owned and operated by BANK OF AMERICA, are affiliated financial services institutions, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 4500 Park Granada #11, Calabasas, CA 91302. As hereafter described, Relators processed Veteran Administration loans. Both these Defendants during all relevant times as to the conduct hereafter described did

transact, and do now presently transact, their lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said Defendants who may be served is CORPORATION SERVICE COMPANY, 40 Technology Pkwy South, #300, Norcross, GA 30092.

9.

Defendant FIFTH THIRD BANCORP a/k/a FIFTH THIRD BANK, an Ohio corporation (hereinafter "Defendant Fifth Third" or collectively with other Defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is Fifth Third Center, Cincinnati, OH 45263. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its offices located at Fifth Third Center, Cincinnati, OH 45263.

10.

Defendant FIRST HORIZON HOME LOAN CORPORATION, a Kansas corporation, being a division of FIRST HORIZON NATIONAL CORP. (whose headquarters is 165 Madison Avenue, Memphis, Tennessee) (hereinafter "Defendant First Horizon " or collectively with other Defendants as "Defendants") is a financial services institution and national bank, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of home loan operations is at 4000 Horizon Way, #1123, Irving, TX 75063. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact,

its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said Defendant who may be served is CT CORPORATION SYSTEM, 1201 Peachtree Street NE, Atlanta, GA 30361.

## 11.

Defendant GENERAL MOTORS ACCEPTANCE CORPORATION, a Delaware corporation (hereinafter "Defendant GMAC " or collectively with other Defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 2000 Renaissance Center, 12th Floor, Detroit, MI 48265. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is CORPORATION PROCESS COMPANY, 180 Cherokee Street, NE, Marietta, GA 30060.

## 12.

Defendant IRWIN MORTGAGE CORPORATION, an Indiana corporation (hereinafter "Defendant Irwin Mortgage" or collectively with other Defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 10500 Kincaid Drive, Fishers, IN 46038. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of

Georgia. The registered agent for said defendant who may be served is CT CORPORATION, 1201 Peachtree Street NE, Atlanta, GA 30361.

### 13.

Defendant MATRIX FINANCIAL SERVICES CORPORATION, a Arizona corporation, being a wholly owned subsidiary of Matrix Capital Bank (hereinafter "Defendant Matrix" or collectively with other Defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of business is 2133 W. Peoria Ave, Suite 100, Phoenix, AZ 85029. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is CT CORPORATION, 1201 Peachtree Street, Atlanta, GA 30361.

### 14.

Defendant MORTGAGE INVESTORS CORPORATION (FLA), an Florida corporation (hereinafter "Defendant Mortgage Investors" or collectively with other Defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of home loan operations is at 6090 Central Avenue, St Petersburg, FL 33707. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said

defendant who may be served is CT CORPORATION, 1201 Peachtree Street, NE, Atlanta, GA 30361.

**15.**

Defendant NATIONAL CITY MORTGAGE, INC. , an Ohio corporation and subsidiary of National City Bank of Indiana (hereinafter "Defendant National City " or collectively with other Defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of business is 3232 Newmark Drive, Miamisburg, OH 45342. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is CT CORPORATION, 1201 Peachtree Street NE, Atlanta, GA 30361.

**16.**

Defendant PRINCIPAL RESIDENTIAL MORTGAGE, INC., acquired by CitiMortgage, a member of CitiMortgage Group, (hereinafter "Defendant " or collectively with other Defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is at 1000 Technology Drive, O'Fallon, MO 63368. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its offices located at 1000 Technology Drive, O'Fallon, MO 63368.

**17.**

Defendant U.S. BANK a/k/a US BANCORP (hereinafter "Defendant US BANK" or collectively with other Defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is US Bancorp Center, 800 Nicollet Mall, Minneapolis, MN 55402. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its offices located at US Bancorp Center, 800 Nicollet Mall, Minneapolis, MN 55402.

**18.**

Defendant, WASHINGTON MUTUAL HOME LOANS, INC., an affiliate of WASHINGTON MUTUAL BANK, F.A. (hereinafter "Defendant Washington Mutual" or collectively with other Defendants as "Defendants") is a national financial institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of operations is at 1201 Third Avenue, Seattle, WA 98101. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This defendant may be served at one of its branch offices located at 2140 Peachtree Road, Atlanta, GA 30309-1350.

### 19.

Defendant, WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N. A., (hereinafter "Defendant Wells Fargo" or collectively as "Defendants") is a diversified financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of operations is at 464 California Street, San Francisco, CA 94104. As hereafter described, Relators processed Veteran Administration loans. Defendant Wells Fargo during all relevant times as to the conduct hereafter described, did transact, and does now presently transact its lending business in the State of Georgia and within the Northern District of Georgia. Said defendant may be served through its registered agent CORPORATION SERVICE COMPANY, 40 Technology Pkwy South, #300, Norcross, GA 30092.

### NEW DEFENDANTS ADDED BY AMENDMENT

### 20.

Defendant ABN AMRO MORTGAGE GROUP, INC. (hereinafter "Defendant or collectively with other Defendants as "Defendants"), a foreign profit corporation, is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal office is 1000 Technology Drive, MS 140, O'Fallon, Missouri 63368 – 2240. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served upon at its offices located at 1000 Technology Drive, MS 140, O'Fallon, MO 63368 – 2240.

## 21.

Defendant FIRST MAGNUS FINANCIAL CORPORATION (hereinafter "Defendant or collectively with other Defendants as "Defendants"), a foreign profit corporation, is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal office is603 North Wilmot Road, Tucson, Arizona 85711. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served upon its registered agent, CT Corporation System, 1201 Peachtree Street, Atlanta, Fulton County, Georgia 30361 or at its offices located at 603 North Wilmot Road, Tucson, Arizona 85711.

## 22.

Defendant FRANKLIN AMERICAN MORTGAGE COMPANY (hereinafter "Defendant or collectively with other Defendants as "Defendants"), a foreign profit corporation, is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal office is 501 Corporate Centre Drive, #400, Franklin, Tennessee 37067-2659. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served upon its registered agent, CT Corporation System, 1202 Peachtree Street, N.E., Atlanta, Fulton County, Georgia 30361, or at its offices located at 501 Corporate Centre Drive, #400, Franklin, Tennessee 37067 – 2659.

**23.**

Defendant GUARANTY RESIDENTIAL LENDING, INC. (hereinafter "Defendant or collectively with other Defendants as "Defendants"), a foreign profit corporation, is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal office is 1300 South Mopac Expressway, Austin, Texas 78746-6907. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its offices located at 1300 South Mopac Expressway, Austin, Texas 78746.

**24.**

Defendant J.P. MORGAN CHASE BANK (hereinafter "Defendant or collectively with other Defendants as "Defendants"), a foreign profit corporation, is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal office is270 Park Avenue, 39th Floor, New York, New York 10017 - 2014. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served upon its registered agent, CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, Fulton County, Georgia 30361 or at its offices located at 270 Park Avenue, 39th Floor, New York, New York 10017 – 2014.

**25.**

Defendant MERIT FINANCIAL, INC. (hereinafter "Defendant or collectively with other Defendants as "Defendants"), a domestic profit corporation, is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal office is 2400 Lakeview Parkway, Suite 650, Alpharetta, Georgia 30009. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served upon its registered agent, Rick L. Kent, 2400 Lakeview Parkway, Suite 650, Alpharetta, Georgia 30009 or at its offices located at 2400 Lakeview Parkway, Suite 650, Alpharetta, Fulton County, Georgia 30004.

**26.**

Defendant NATIONAL CITY MORTGAGE, INC. (hereinafter "Defendant or collectively with other Defendants as "Defendants"), a foreign profit corporation, is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal office is 3232 Newmark Drive, Miamisburg, Ohio 45342-5421. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served upon its registered agent, CT Corporation System, 1202 Peachtree Street, N.E., Atlanta, Fulton County, Georgia 30361, or at its offices located at 3232 Newmark Drive, Miamisburg, Ohio 45342-5421.

**27.**

Defendant SUNTRUST MORTGAGE, INC. (hereinafter "Defendant or collectively with other Defendants as "Defendants"), a foreign profit corporation, is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal office is 901 Semmes Avenue, Richmond, Virginia 23224-2270. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served upon its registered agent, Corporation Services Company, Inc., 40 Technology Parkway South, #300, Norcross, Georgia 30092, or at its offices located at 901 Semmes Avenue, Richmond, Virginia 23224.

**28.**

Defendant UNION FEDERAL BANK OF INDIANAPOLIS (hereinafter "Defendant or collectively with other Defendants as "Defendants"), is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal office is 45 North Pennsylvania Street, Indianapolis, Indiana 46204. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its offices located at 45 North Pennsylvania Street, Indianapolis, Indiana 46204.

Defendant USAA FEDERAL SAVINGS BANK (hereinafter "Defendant or collectively with other Defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal office is 10750 McDermott Freeway, San Antonio, Texas 78288-9876.  As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia.  This Defendant may be served upon its offices located at 10750 McDermott Freeway, San Antonio, Texas 78288-9876.

## JURISDICTION AND VENUE

**30.**

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. §§ 3732(a) and 3730(b). This Court has jurisdiction to entertain this qui tam action. Relators are an "original source" and can institute this action in the name of the United States as contemplated by the Civil False Claims Act, 31 U.S.C. Sections 3729-33 (hereinafter "FCA").

**31.**

Venue is appropriate as to each Defendant, in that one or more of Defendants can be found in, reside in, and/or transact business in this judicial district. Additionally, acts proscribed by 31 U.S.C. § 3729 have been committed by one or more of the Defendants in this judicial district. Therefore, within the meaning of 28 U.S.C. § 1391(c) and 31 U.S.C. § 3732(a), venue is proper.

**32.**

Relators have presented the Government with disclosures regarding the FCA violations described herein as required by 31 U.S.C. §. 3730(b)(2).

## STATUTORY BACKGROUND

**33.**

The False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1) makes knowingly presenting, causing to be presented, or conspiring to present to the United States any false or fraudulent claim for payment a violation of Federal Law punishable by three times the amount of the actual damages the Government sustains and a civil monetary penalty of between $5,500 and $11,000 per claim made.

**34.**

The FCA, 31 U.S.C. § 3729(a)(2) makes knowingly presenting, causing to be presented, or conspiring to make or use a false record or statement to get a false or fraudulent claim paid or approved by the Government a violation of federal law punishable by three times the amount of the actual damages the Government sustains and a civil monetary penalty of between $5,500 and $11,000 per claim made.

**35.**

The FCA defines a "claim" to include any request or demand, whether under contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested. "Claims" may also include the submission of information and documentation to the Government which is material to the

Government's decision to guarantee debt or incur risks of repayment and/or loss on behalf of Government beneficiaries such as our Veterans of the Armed Forces ("Veterans").

36.

For purposes of the FCA, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

### SUMMARY OF FACTUAL BACKGROUND

37.

Relator Bibby is the President and CEO of U.S. Financial Services. He founded this company in August 2001. He has been in the mortgage business operating as a loan officer from December, 1996 through the present time. He has developed substantial expertise with regard to VA mortgage loans. He is a licensed mortgage broker in seven states.

38.

Relator Donnelly is Vice President of Operations for U.S. Financial Services, Inc. He has been employed in the mortgage business industry as a loan officer for over six (6) years and his specialty is originating VA loans. In August, 2001, he joined U.S. Financial Services. He is licensed as a mortgage loan officer in Tennessee and South Carolina.

39.

U.S. Financial Services specializes in the brokering of ad origination of VA loans. The company has originated more than $400,000,000.00 in VA IRRRL loans in seven states since 2001. IRRRL stands for "Interest Rate Reduction Refinancing Loan."

**40.**

A VA IRRRL loan is a refinancing home loan program available to Veterans or active duty borrowers who currently hold their VA entitlement with regard to the property being refinanced. The program is designed to give Veteran borrowers the opportunity to lower their current interest rates or shorten the terms of their home mortgages with limited documentation required.

**41.**

The following is a brief description of the steps describing how a loan application flows from its point of origination with an originating broker to the point where the VA guarantees the loan after closing:

Step 1 – Licensed mortgage brokers (such as U.S. Financial Services) originate the loan by advertising to the general public. When the broker is contacted by a Veteran borrower ("Borrower") and a loan application is obtained from the Borrower, the broker acts as processor in gathering the documentation that will be required by the lender as a condition for underwriting the loan;

Step 2 – Each approved VA lender (such as the Defendants) have written guidelines that are provided to and used by the broker in determining what documentation is needed from the Borrower to qualify for VA loan funding and servicing. Before the broker can originate a loan, the broker must be sponsored by an approved VA lender. The brokers do not underwrite or service loans. Conversely, it is the lender's role is to underwrite the loan and make sure that the loan adheres to all VA guidelines and regulations before approving the loan application and

before giving a final "clear to close" status on the loan. In Step 2, the lender employs underwriters to review the loan application that was submitted by the broker on behalf of the Borrower to be sure that the documentation is satisfactory. It is the lender's job to underwrite the file to make sure that it conforms to program guidelines and VA guidelines;

Step 3 - If there are any problems or "conditions" that the lender and/or underwriter finds in Step 2, it is the job of the broker to work with the Borrower to "clear" any of these "conditions." All conditions must be "cleared" in order to obtain a "clear to close" status on the file. In essence, if the underwriter determines that the Borrower does not meet the lender's guidelines or that a problem exists with regard to meeting VA lending guidelines, it becomes the job of the broker to address that problem to see if it can be cured;

Step 4 - Once the file is underwritten and cleared to close, the lender gives closing instructions to the attorney or title company performing the closing on behalf of the Borrower. At that point, the HUD statement or settlement statement is prepared by the attorney/title company from these instructions. The HUD is cleared and approved as being accurate by the lender before the closing takes place. When this happens, the closing agent, whether attorney or title company, closes the loan per the specific instructions provided by the lender. It is worth noting that there are two different types of closing requirements, depending upon the state where the closing is taking place. Certain states, such as Georgia, are considered "attorney states" which require the use of an attorney to close the VA loans. Other states, such as Florida are "title states" and no attorney is needed because a title company can act as closing agent for a VA loan;

Step 5 - On a refinance loan, the Borrower has three days to rescind the loan after the closing during which the loan can be cancelled. If the loan is not cancelled, then the attorney/title company completes the funding of the loan with the wired funds provided by the

lender. After the closing, the loan packages, to include the HUD-1 and other VA forms are again certified by the lender, and the charges owed to the Department of Veterans Affairs in consideration for guaranteeing the loan are sent out by the closing agent. The VA charges one-half of one percent as a fee for guaranteeing VA IRRRL loans. In Step 5, the lender certifies the accuracy of the file to the Veterans Administration through the use of VA Form 26-1820 (Loan Disbursement and Certification Form). The certification of the lender to the VA that the loan does not contain unallowable charges is required by the Code of Federal Regulations. Absent the present of a truthful certification, the VA would not knowingly provide a guaranty on a VA IRRRL loan. The lender sends this form along with the VA funding fee to the Veterans Administration.

Step 6 – After the loan is finalized, a copy of the HUD statement is maintained by the closing agent and sent to the broker and the lender. Relator believes that the VA also gets a copy of the HUD forms.

## SUMMARY OF FRAUD FACTS

### 42.

In November 2005, Relators were asked by two of the VA lenders that they regularly work with to change the way that certain line items are disclosed on the HUD settlement statements for VA IRRRL loans. In investigating these requests, Relators closely reviewed the underwriting guidelines that govern the allowable and unallowable fees that a Veteran Borrower can lawfully be charged in the context of a VA loan.

**43.**

As a part of the process, Relators discovered that a Veteran Borrower cannot be charged attorney fees, escrow fees or closing fees. However, Veteran Borrowers can be charged a reasonable fee for a title examination which should cost approximately $125.00 to $175.00. This range of title examination fees is the industry standard in the multiple states.

**44.**

Relators have it, upon information and belief, that the standard $125.00 to $175.00 charge for title examination services represents the industry standard charge for that service across the United States. In many instances, Relators have received written quotes from attorneys and title companies specifying that the title examination charges for all VA loans are in the $125.00 to $175.00 range. The most typical title examination charge is $150.00.

**45.**

Despite the actual costs of a title examination, the Relators have observed over the years that the vast majority of the VA loans that they have brokered included title examination charges in amounts over $500.00 to the veteran borrower. Relators discovered that the disparity between the actual title examination fee ($125.00 to $175.00) and the amount being charged for title examinations ($500.00 to over $1,000.00) is the result of the illegal bundling of other loan costs, such as attorney fees, escrow fees or closing fees into the category on the HUD settlement statement listed as being "title examination fees", "closing fees", "title insurance binder" or "title insurance". The unallowable fee is routinely shown on Line 1103 or Line 1104 of the HUD settlement statement.

For years, Relators were told by lenders that attorneys fees, escrow fees and closing fees were allowed to be charged to the Veteran Borrower, and these charges should be reflected on the "title examination" line of the HUD form. Despite these inaccurate statements by the lenders, it is improper and illegal to charge the veteran borrower for these additional closing charges and attorney fees under the VA guidelines. See 38 CFR 36.4312(a), (d) and (e). The lenders and underwriters have been shifting the burden for these costs to the Borrower and increasing the risks to the Government by placing these improper charges on the HUD statement as being "title examination", "closing fees", "insurance binder" or "insurance" charges and adding these unallowable charges to the loan balance. This practice is a ruse which damages the veteran borrower and the Government. Because these costs are added in the VA loan amount being financed, the Government's risk is increased on each and every loan because the VA guarantees each VA loan in the event of unresolved default by Borrower. Raising the loan payments for the borrower affects the likelihood that the monthly amounts owed by the veteran borrower will be paid.

**47.**

The Relators have reviewed hundreds of files and hundreds of HUDs generated at closings over the last decade. They discovered that lenders were routinely shifting impermissible and unallowable charges to the veteran borrower in VA IRRRL loans. Accordingly, the veteran borrower is initially damaged in amounts routinely ranging from $400.00 to over $750.00 (many loans reflect unallowable charges exceeding $1,000.00). The Government is also damaged because the Government is guaranteeing the repayment on the VA loans and these unnecessary and illegal charges raise the monthly loan payments and necessarily impact the likelihood of the

default on these VA IRRRL loans. According to Government data, the average default rate on VA IRRRL loans can exceed eighteen (18%) percent. Defaults and foreclosures on IRRRL loans cost the taxpayers tens of millions of dollars per year. But for the fraudulent certification made prior to the loan by Defendants that no VA unallowable charges were included in the amount financed, the VA would not have agreed to guarantee the IRRRL loans at issue. The intentional and fraudulent charges and false certifications made by Defendants were not known to the Government because the Defendants concealed these acts by bundling unallowable charges with allowable charges.

**48.**

It is very important and material that the lender and underwriter comply with the applicable code of federal regulation laws and VA lending guidelines. As a part of the lender's certification on VA Form 26-1820, the lender is required to certify that: "the lender has not imposed and will not impose any charges or fees against the veteran borrower in excess of those permissible under the schedules set forth in paragraph (d) of 38 CFR 36.4312." If the lender does not expressly certify to the VA that the Borrower is not being overcharged, then the VA is unwilling to guarantee the loan. Hence, the lender's truthful certification on VA Form 26-1820 is a material and necessary condition that the Government requires before the IRRRL loan will be guaranteed by the Government or before the Government will pay monies under a guarantee on the IRRRL loans at issue.

**49.**

The Relators have unequivocal knowledge that the defendant lenders have systematically falsified the lender certifications required by the VA by falsifying the records and information submitted to the VA on Form 26-1820. Specifically, the Defendants know that they are adding

impermissible attorney's fees and other charges to the Borrower by lumping these fees in to the "title examination" charges reflected on line 1103 or 1104 of the HUD settlement statement. As stated above, without truthful certifications, the Lenders would not be eligible to have the loans backed by the Government's guarantees. The Government relied on the lender's certification as being "true." Unfortunately, thousands of false certifications have been provided on IRRRL loans that have gone into foreclosure or otherwise cost the Government millions of dollars after default.

## 50.

It is important to understand that it is the lenders who contract with the closing attorneys to handle IRRRL closings. The closings attorneys are acting as the agent of the lender. The lenders send closing instructions to the closing attorney. The brokers who originate the loan do not select, contract or direct the closing attorneys with regard to an IRRRL closing.

## 51.

It is also important to examine the motive behind the lender's decision to pass on the cost of the attorney's fees to the VA borrower. The motivation is based on the monetary advantage and competitive advantage to the lender that is created in this process. Loan closers and agents for certain Defendants named herein have admitted that the genesis of the fraudulent scheme is to raise profits and maintain market share(s).

## 52.

The Lenders directly profit from this scheme because they are passing a "lender paid fee" directly to the veteran borrower. This means that they are saving approximately $400.00 to $750.00 on average per IRRRL closing. Additionally, if the lender tried to pass the attorney's fees to the originating broker (paid outside of closing), this would substantially reduce the

amount of IRRRL refinance transactions and this would directly impact the broker's profits which would reduce the broker's incentive to originate these loans for the lenders. The lender's VA refinance business would suffer greatly if they passed the additional costs to the brokers. There are already a number of VA "unallowables" that the broker must absorb. These fees include the lender's underwriting fees and document preparation fees that cannot be legally passed to the veteran borrower. If an additional $400.00 to over $750.00 were passed on to the broker, the cost would be too high for the broker to absorb.

### 53.

By passing on the unallowable attorney's fees to the borrower, the lender protects its own revenues and its competitive position in the market.

### 54.

The Relators have it, upon information and belief that the underwriting violation referenced above is a nationwide problem affecting hundreds of thousands of VA guaranteed loans. Relators have provided hundreds of HUDs from across the nation which reflect FCA violations. Even if the original damage to the VA Borrower and the Government is small at the inception on the FCA violation, the damage and risk associated therewith continues to compound each day because interest runs on the principle loan balance which was inflated with the unallowable charges. By way of example, if the defendant lender improperly shifts $400.00 to the veteran borrower at the closing of the refinance, by the time the loan comes due, an additional $100.00 in damages has accrued due to the accumulation of interest and finance charges over the life of the average VA IRRRL loan prior to default or foreclosure. The average IRRRL loan does not go into default for several years.

## VIOLATION OF CIVIL FALSE CLAIMS ACT, 31 USC § 3729-33 ET SEQ.

### 55.

Paragraphs 1 through 54 are incorporated into Count I as if fully set forth herein.

### 56.

This is a civil action brought by Relators on behalf of the United States against the Defendants pursuant to the Federal False Claims Act, 31 U.S.C. § 3729-33.

### 57.

Defendants knowingly or recklessly disregarded or in deliberate ignorance of the truth or the falsity of the information involved, presented or caused to be presented, false or fraudulent claims for guaranty payment and to the Veterans Administration and/or federal programs enacted for the benefit of Veteran Borrowers, with said acts being in direction violation of, *inter alia* 31 U.S.C. § 3729(a)(1).

### 58.

Further, Defendants in reckless disregard or in deliberate ignorance of the truth or the falsity of the information involved, made, used, caused to be made or caused to be used, false or fraudulent records and statements to get false or fraudulent claims paid or approved, in violation of *inter alia* 31 U.S.C. § 3729(a)(2).

### 59.

More specifically, Defendants caused false certifications to be made on VA form 26-1820. These certifications are a material condition for eligibility and payment under a guaranty as a lender in the VA IRRRL loan programs. Had the Government or the Veterans Administration known that the VA guidelines and regulations were violated or that the Defendant's express certifications were false, the VA would not have guaranteed the VA loans in

question.  The Government would not have knowingly allowed the Defendants to include unallowable and illegal charges in any IRRRL loan.  As a result of the Government's reliance upon the false and misleading statements and certifications of the Defendants, the Government has been damaged and will continue to be damaged from the tens of thousands of VA loans which were improperly certified by Defendants and which contain unallowable VA charges.

**60.**

The Government and the Veterans Administration were not aware of the falsity of the claims and certifications and/or statements made by Defendants or caused to be made by Defendants.   The Government and the Veterans Administration, in reliance on the accuracy of the claims and/or statements, agreed to guarantee hundreds of thousands of VA IRRRL loans for the purposes of assuring payment to Defendants that loan defaults could not be cured by the veteran borrowers.  Tens of thousands of these VA loans resulted in defaults foreclosures and refundings (where the Government actually buys the loan in default) as well as other post-default losses to the Government, which has caused great damage to the Government.

**61.**

As a result of the Defendants' actions set forth above, the United States has been severely damaged and will continue to incur damages in the future.

**WHEREFORE**, Relators pray for judgment against Defendants as follows:

(a)     That Defendants be ordered to cease and desist from submitting and/or causing the submission of false claims, false certifications and illegal demands for payment under IRRRL guaranties or otherwise violating 31 U.S.C. § 3729-33;

(b)     That judgment be entered in favor of the United States and Relator and against the Defendants for all in damages available pursuant to 31 U.S.C. § 3729-33, plus a civil penalty of

not less than Five Thousand Five Hundred and No/100 ($5,500.00) Dollars, and no more than Eleven Thousand and No/100 ($11,000.00) Dollars per claim, as provided by 31 U.S.C. § 3729(a), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the schemes undertaken by Defendants; and

(c)     That Relators be awarded the maximum amount permissible according to 31 U.S.C. § 3730(d); and

(d)     That judgment be granted for the United States of America and Relator and against Defendants for any and all costs including, but not limited to, court costs, expert fees, and all Relators' attorneys' fees spent in furtherance of the prosecution of this suit; and

(e)     That the United States and Relator be granted such other and further relief as the Court deems to be equitable and just.

Respectfully submitted this 15TH day of September, 2009.

WILBANKS & BRIDGES, LLP

_____
Marlan B. Wilbanks
State Bar No. 758223


_____
Ty M. Bridges
State Bar No. 081500

Attorneys for Relators Victor E. Bibby and
Brian R. Donnelly


3414 Peachtree Street, N.E.
Suite 1075
Atlanta, Georgia 30326
(404) 842-1075