# EXHIBIT A

# VA's Loan Guaranty Monitoring Unit

*Preliminary Report #T2004-044*
*September 23, 2004*
*CitiMortgage, Incorporated*
*Farmington Hills, Michigan*



<u>*Honoring a National Commitment*</u>

**CitiMortgage, Incorporated**
**Farmington Hills, Michigan**
Preliminary Report #T2004-044

Table of Contents

| | |
|---|---:|
| *What is the Purpose and Scope of the Audit?* | 1 |
| *What is the Background Information for the Audit?* | 1 |
| *When was the Audit Conducted?* | 1 |
| *What Major Deficiencies were Noted?* | 1 |
| *What are the Details of the Major Deficiencies?* | 1 |
| *Exhibit A* | 4 |
| *Exhibit B* | 6 |
| *Exhibit C* | 7 |

September 23, 2004
**CitiMortgage, Incorporated**
**Farmington Hills, Michigan**
Preliminary Report #T2004-044

## *What is the Purpose and Scope of the Audit?*

The purpose of the audit is to determine whether CitiMortgage, Incorporated (CMI) is compliant with the laws, regulations, and policies governing VA guaranteed loans. It was conducted in accordance with generally accepted Government auditing standards. The review covered 69 loans originated in 2002 and 2003.

## *What is the Background Information for the Audit?*

CitiMortgage, Incorporated is a supervised lender owned by CitiBank (West) FSB. The home office is located at 2755 Farmington Road, Farmington Hills, Michigan. CitiMortgage, Incorporated has 44 Regional Sales Offices nationwide.

Data in VA records for the period ending June 30, 2004, show that the liquidation rate of VA loans originated by CMI during fiscal years 1999 through 2003 is 1.87 percent. The liquidation rate of all VA loans originated nationwide during that same period is 1.60 percent.

Other data available to VA show that 0.05 percent (1) of the 1,981 VA loans that CMI closed during the 24-month period ending in July 2004 are delinquent 90 days or more. The 90-day delinquency rate of all VA loans closed in nationwide during that same period is 0.38 percent.

## *When was the Audit Conducted?*

During August 24-26, 2004, the Loan Guaranty Service Monitoring Unit audited the loan origination procedures at the Southfield, Michigan office of CitiMortgage, Incorporated (CMI), a mortgage lender operating within the jurisdiction of the VA Regional Loan Center in Cleveland. Ron Lessard, Maria Mitchell, and Ron Johnson, loan specialists, conducted the audit. We appreciate the lender's cooperation with the auditors. The Loan Guaranty Officer at our Cleveland Regional Loan Center was also advised of the preliminary findings.

## *What Major Deficiencies were Noted?*

The following major deficiencies were noted during the review:

- Material noncompliance with VA credit standards and property eligibility requirements as discussed in Exhibits A through C.

- Noncompliance with 38 CFR 36.4312(d) - fees and charges.

- Noncompliance with 38 CFR 36.4312(e) - funding fees.

- Noncompliance with 38 CFR 36.4344(c) and/or 36.4347 - minimum property requirements.

- Noncompliance with 38 CFR 36.4344(i) - lender staff appraisal reviewer processing fees.

## *What are the Details of the Major Deficiencies?*

Details of the major deficiencies are listed below.

1

1. Material noncompliance with VA credit standards and property eligibility requirements as discussed in Exhibits A through C.

2. **Noncompliance with 38 CFR 36.4312(d) - fees and charges.**

Veterans were charged unallowed fees in addition to the one-percent loan origination fee. CMI should provide evidence that the unallowed fees have been refunded to the veterans.

    CMI# 2000388737, VA# 17-17-6-1293331, ▓▓▓▓ - $488.07 broker extension (poc)
    CMI# 2000433481, VA# 17-17-6-1304301, ▓▓▓▓ - $360 escrow fee (less $40, the difference between an allowable one-per-cent origination fee and that actually charged for a total refund due of $320)
    CMI# 2000521899, VA# 18-18-6-0729685, ▓▓▓▓ - $350 CMI, $70 tax service (less $149.90, the difference between an allowable one-per-cent origination fee and that actually charged for a total refund due of $270.10)
    CMI# 2000478096, VA3 72-72-6-0805164, ▓▓▓▓ - $195 administration fee to ReMax Realty Services
    CMI# 2000819554, VA# 73-73-6-0594128, ▓▓▓▓ - $150 compilation to Prudential CT Realty

    Reference: *VA Lender's Handbook*, paragraph 8.02.

3. **Noncompliance with 38 CFR 36.4312(e) - funding fees.**

The veteran's certificate of eligibility indicates previous use of entitlement. CMI improperly collected the funding fee based on first-time use (2 percent) or $2,878.90 instead of the 3 percent fee of $4,320 for subsequent use. CMI should provide evidence that VA received the $1,441.10 additional funding fee.

    CMI# 2000931701, VA# 29-29-6-0665093, ▓▓▓▓

The veteran's certificate of eligibility indicates previous use of entitlement; however, the veteran put down more than 10 percent towards the purchase of the property. CMI improperly collected a 3 percent funding fee of $1,800 when the correct fee for subsequent use of entitlement with more than 10 percent down is 1.25 percent or $750. CMI should request a $1,050 funding fee refund, apply the refund to the outstanding principal loan balance, and furnish VA evidence of the principal reduction.

    CMI# 2000549609, VA# 23-23-6-0324316, ▓▓▓▓

    Reference: *VA Lender's Handbook*, paragraphs 8.01, 8.02, and 8.08.

4. **Noncompliance with 38 CFR 36.4344(c) and/or 36.4347 - minimum property requirements.**

CMI did not ensure that the property requirements or special conditions required by the appraisal or VA, and cited on the NOV and/or the VANOV, were met before requesting evidence of VA guaranty. This item represents conditions that are integral to the property being considered safe, sound, and sanitary for VA purposes. If CMI is unable to provide the following document, we will require return of the canceled loan guaranty certificate.

    CMI# 200086134, VA# 10-10-6-0570322, ▓▓▓▓ - clear Wood Destroying Insect Information report showing that the standing water and dampness in the crawl space have been corrected

    Reference: *VA Lender's Handbook*, Chapters 10 - 15.

**5. Noncompliance with 38 CFR 36.4344(i) - lender staff appraisal reviewer processing fees.**

VA records show that ▇▇▇▇▇▇▇▇ was approved as a SAR for another company/other companies. CMI did not submit the necessary data to VA for the transfer of SAR approval. CMI should immediately apply to the Cleveland VA Regional Loan Center and pay the appropriate processing fees to transfer SAR approval to CitiMortgage, Incorporated.

   Reference: *VA Lender's Handbook*, paragraph 15.05.

EXHIBIT A



VA# 10-10-6-0575918
CMI# 2001174511

### *What Did We Determine?*

Our audit revealed that CMI disregarded VA credit standards by not establishing that the borrower had sufficient reliable income to repay the loan.

### *How Did We Arrive at This Determination?*

We used the following employment data:

Veteran: Active Military                           23 years                           07/14/80 - approval

We reanalyzed the income and expenses as follows:

|  | Lender | VA Auditors |
|---|---|---|
| Veteran's Gross Income | $3,787 | $ 1,894 |
| Non-taxable Income | +1,557 | + 0 |
| Federal Tax | - 360 | - 249 |
| State Tax | - 0 | - 0 |
| Social Security | - 290 | - 0 |
| Long Term Obligations | - 1,177 | - 1,177 |
| P-I-T-I | - 1,060 | - 1,060 |
| Maintenance and Utilities | - 246 | - 246 |
| Residual Income | $2,211 | $- 838 |
|  |  |  |
| Ratio | 42% | +100% |

VA recommends a residual of $990 for a three-member household.

CMI did not establish that the veteran had sufficient reliable income to repay the loan. The veteran's military Leave and Earnings Statement indicates that he was due to leave military service on January 31, 2004, less than four months from the loan closing. VA credit standards provide that the military income of an applicant who is within 12 months of his/her separation date may not be used to qualify a loan unless the applicant has reenlisted, or has furnished a statement of intent to reenlist and the commanding officer's statement confirming that the applicant is eligible to reenlist. CMI did not obtain either the commanding officer's statement that he was eligible to reenlist or a statement of the veteran's intent to reenlist. Since the veteran has sufficient service to qualify for military retirement, VA has included fifty percent of his base pay in its income computation.

This loan was approved by an automated underwriting system; however, CMI compromised the integrity of the data by using income that was not reliable.

CMI placed the government at undue risk by not establishing that the borrower had sufficient reliable income to repay the loan.

4

EXHIBIT A, continued

VA# 10-10-6-0575918
CMI# 2001174511

We used the following loan data:

| | |
|---|---|
| Loan Amount | $132,870 |
| Date of Application | 09/06/03 |
| Approved by Lender | 10/06/03 |
| Loan Closed | 10/07/03 |
| First Payment Due | 12/01/03 |
| Guaranty Issued | 12/09/03 |
| Guaranty Amount | $36,000 |

*What Action Are We Proposing Based on Our Determination?*

Based on our review of this loan, we are proposing that CMI sign an indemnification agreement. The signing of an indemnification agreement will ensure that VA will recover from CMI any loss on the loan (or subsequent VA interest rate reduction refinancing loan) due to a default occurring within five years of the date of VA guaranty. Prior to responding, please review *VA Lender's Handbook*, paragraphs 4.01, 4.02, 4.09, 4.10, 4.11, 38 CFR 36.4337, and title 38, U.S.C., section 3710(b), regarding the income and credit requirements of the law.

EXHIBIT B

VA# 17-17-6-1304301
CMI# 2000433481

## *What Did We Determine?*

Our audit revealed that CMI did not ensure the property met basic eligibility standards or minimum property requirements established by VA.

## *How Did We Arrive at This Determination?*

There is no evidence in CMI's file that the individual water supply at the property met the requirements of either the local health authority or EPA standards. To meet minimum property requirements, VA requires each living unit to be provided with a continuous supply of safe and potable water. The property was appraised on October 30, 2002. The appraisal report indicates the property is on an individual water supply. CMI's staff appraisal reviewer (SAR) improperly issued a Notice of Value (NOV) on November 5, 2002, that did not require the local health authority acceptance of the individual water supply. There is no evidence in CMI's file that it obtained the local health authority acceptance of the individual water supply.

## *What Action Are We Proposing Based on Our Determination?*

CMI put both the veteran and the Government at undue risk by accepting as loan security, a property that did not meet basic eligibility standards at the time the loan was made. Should CMI be unable to produce either a past or current health authority acceptance of the individual water supply, VA will, in the final report, require that CMI return the canceled loan guaranty certificate. Prior to responding, please review *VA Lender's Handbook*, paragraphs 11.09, 12.03, 12.06, 12.08, and 13.06, 38 CFR 36.4344(c), minimum property requirements, and title 38, U.S.C., section 3704(a), regarding property eligibility.

EXHIBIT C

VA# 06-06-6-0647550
CMI# 2000293656

### *What Did We Determine?*

Our audit revealed that CMI did not ensure the property met basic eligibility standards or minimum property requirements established by VA.

### *How Did We Arrive at This Determination?*

There is no evidence in CMI's file that the community water supply at the property met the requirements of either the local health authority or EPA standards. To meet minimum property requirements, VA requires each living unit to be provided with a continuous supply of safe and potable water. The property was appraised on July 18, 2002. The appraisal report indicates the property may be on a community water system. The appraiser checked the box indicating a public system but also typed "COMMUNITY", indicating it may be on a community water supply. CMI's staff appraisal reviewer (SAR) improperly issued a Notice of Value (NOV) on August 5, 2002, that did not require the local health authority acceptance of the community water supply. There is no evidence in CMI's file that it obtained the local health authority acceptance of the community water supply. CMI should provide the health authority acceptance or provide evidence that the property is on a public water system.

### *What Action Are We Proposing Based on Our Determination?*

CMI put both the veteran and the Government at undue risk by accepting as loan security, a property that did not meet basic eligibility standards at the time the loan was made. Should CMI be unable to produce either a past or current health authority acceptance of the community water supply or proof that the property is on a public water system, VA will, in the final report, require that CMI return the canceled loan guaranty certificate. Prior to responding, please review *VA Lender's Handbook*, paragraphs 11.09, 12.03, 12.06, 12.08, and 13.06, 38 CFR 36.4344(c), minimum property requirements, and title 38, U.S.C., section 3704(a), regarding property eligibility.