# EXHIBIT C

# *VA's Loan Guaranty Monitoring Unit*

*Preliminary Report #T2006-035*
*June 16, 2006*
*CitiMortgage dba Principal Residential Mortgage, Incorporated*
*O'Fallon, Missouri*



*Honoring a National Commitment*

**CitiMortgage dba Principal Residential Mortgage, Incorporated**
**O'Fallon, Missouri**
Preliminary Report #T2006-035

Table of Contents

| | |
|---|---|
| *What is the Purpose and Scope of the Audit?* | 1 |
| *What is the Background Information for the Audit?* | 1 |
| *When was the Audit Conducted?* | 1 |
| *What Major Deficiencies were Noted?* | 1 |
| *What are the Details of the Major Deficiencies?* | 2 |
| *Exhibit A* | 6 |
| *Exhibit B* | 7 |
| *Exhibit C* | 8 |
| *Exhibit D* | 9 |
| *Exhibit E* | 10 |
| *Exhibit F* | 12 |
| *Exhibit G* | 13 |
| *Exhibit H* | 14 |
| *Exhibit I* | 15 |

June 16, 2006
**CitiMortgage dba Principal Residential Mortgage, Incorporated**
**O'Fallon, Missouri**
Preliminary Report #T2006-035

## *What is the Purpose and Scope of the Audit?*

The purpose of the audit is to determine whether CitiMortgage dba Principal Residential Mortgage, Incorporated (PRM) is compliant with the laws, regulations, and policies governing VA guaranteed loans. It was conducted in accordance with generally accepted Government auditing standards. The review covered 86 loans originated in 2003 through 2005.

## *What is the Background Information for the Audit?*

CitiMortgage dba Principal Residential Mortgage, Incorporated is a supervised lender owned by CitiBank NA. The home office is located at 1000 Technology Drive, Mail Station 901, O'Fallon, Missouri. CitiMortgage dba Principal Residential Mortgage, Incorporated has numerous branch offices nationwide.

Data available to VA show that 0.66 percent (29) of the 4,384 VA loans that PRM closed during the 24-month period ending in April 2006 are delinquent 90 days or more. The 90-day delinquency rate of all VA loans closed nationwide during that same period is one percent.

## *When was the Audit Conducted?*

During May 23-25, 2006, the Loan Guaranty Service Monitoring Unit audited the loan origination procedures at the home office of CitiMortgage dba Principal Residential Mortgage, Incorporated (PRM), a mortgage lender operating within the jurisdiction of the VA Regional Loan Center in St. Paul. Maria E. Mitchell, Vickie Hawthorne, Mary Maza, and J. Wayne Rial, loan specialists, conducted the audit. We appreciate the lender's cooperation with the auditors. The Loan Guaranty Officer at our St. Paul Regional Loan Center was also advised of the preliminary findings.

## *What Major Deficiencies were Noted?*

The following major deficiencies were noted during the review:

- Material noncompliance with VA credit standards as discussed in Exhibits A through I.

- Noncompliance with 38 CFR 36.4312(d) - fees and charges.

- Noncompliance with 38 CFR 36.4312(e) - funding fees.

- Noncompliance with 38 CFR 36.4348(a)(13) and 36.4348(f) - lender agents and participation fees.

- Noncompliance with 38 CFR 36.4344(c) and/or 36.4347 - minimum property requirements.

- Noncompliance with 38 CFR 36.4337(j) - lender responsibility regarding Reserves/National Guard statements.

- Noncompliance with 38 CFR 36.4337(j) - lender responsibility regarding Active Duty applicants.

## *What are the Details of the Major Deficiencies?*

Details of the major deficiencies are listed below.

**1.  Material noncompliance with VA credit standards as discussed in Exhibits A through I.**

**2.  Noncompliance with 38 CFR 36.4312(d) - fees and charges.**

Veterans were charged disallowed fees in addition to the one-percent loan origination fee.  PRM should provide evidence that the disallowed fees have been refunded to the veterans.

>  PRM# 6385122-4, VA# 10-10-6-0577870, ███████ - $65 pest inspection, $25 notary
>  PRM# 6409938-5, VA# 11-11-6-0266169, ███████ $98.46 for six more days interest credit due borrower, $21.50 funding fee overpayment (maximum loan exceeded value of property plus funding fee - correct funding fee was $2,171.50 on value of $101,000 but borrower charged and VA received $2,193.  PRM should request a $21.50 funding fee refund through the VA Funding Fee Payment System and refund to veteran since loan is paid in full.)
>  PRM# 6424513-7, VA# 17-17-6-1375326, ███████ - $60 pest inspection
>  PRM# 6419214-9, VA# 19-19-6-0355365, ███████ - $25 federal express package, $5 postage/copying
>  PRM# 6439710-2, VA# 19-19-6-0356743, ███████ - $110.13 disallowed overcharge (the borrower paid $1,585 of the maximum one percent origination of $1,619.87, leaving a balance of $34.87 to be applied towards the unallowed $145 processing fee)

>  Reference:  *VA Lender's Handbook*, paragraphs 8.2, 8.3, 8.8 and Chapter 13, Exhibit 1.

**3.  Noncompliance with 38 CFR 36.4312(e) - funding fees.**

VA Form 26-8937, Verification of VA Benefit-Related Indebtedness, was not found in the loan file; however, PRM's Certification of Veteran's Benefits form showed that the borrower checked he had received VA disability benefits in the past.  Our records confirm that the borrower is indeed an exempt veteran and is not presently receiving benefits in order to recoup an overpayment.  This information would have been annotated on the VA Form 26-8937 if one had been obtained from the VA.  PRM should request a $1,232 funding fee refund through the VA Funding Fee Payment System, apply the refund to the outstanding principal loan balance, and furnish VA evidence of the principal reduction.

>  PRM# 6397179-0, VA# 17-17-6-1366880, ███████

>  Reference:  *VA Lender's Handbook*, paragraphs 8.1, 8.2, and 8.8.

**4.  Noncompliance with 38 CFR 36.4348(a)(13) and 36.4348(f) - lender agents and participation fee.**

According to the records available to us in WebELI, the agents named below are not VA approved agents.  If you have documentation to the contrary, please include it in your response.  If not, PRM should immediately apply to our St. Paul office for approval of your agents and pay the appropriate participation fee in accordance with *VA's Lender's Handbook*, Chapter 1.7c.  The agents listed below may not act as your agent on any future loans until PRM receives written notification of agent approval.  However, if PRM uses an agent one time or less than four times per year, agent approval by VA is not required and PRM may authorize the agency relationship on a loan-by-loan basis using the lender's certification on VA Form 26-1820, Report and Certification of Loan Disbursement.

>  A & H Mortgage Services, Inc. ███
>  Active Mortgage dba Unified Resource Group, LLC ███
>  Allied Home Mortgage Capital Corporation ███
>  Allied Mortgage Capital Corporation ███
>  Amstar Mortgage Corporation ███
>  Amstar Mortgage Corporation dba Indemae Home Loan ███



Answer One Mortgage
Atlantic Mortgage Loans, Inc.
BancGroup Mortgage Corporation
Bankers Home Mortgage, Inc.
Benchmark Mortgage Corporation
Capital Mortgage Group, LLC
Central Florida Mortgage & Associates, Inc.
Challenge Financial Investors Corporation
Champion Mortgage, LLC
Citadel Mortgage Corporation
Crystal Mortgage
East Lake Mortgage Corporation
EHJM Mortgage Corporation
Elite Mortgage Network
Evergreen Pacific Mortgage, Inc.
Family Choice Mortgage Corporation
Financial Concepts, LLC
First Equity Lending
First Fidelity Mortgage
Gibraltar Mortgage, LLC
Good Faith Mortgage, Inc.
Heritage Mortgage Corporation of SW Florida
Home Mortgages, Inc.
Main Street Mortgage dba Asset Mortgage & Financial Services
Midas Financial Group, Inc.
Mortgage Atlantic, Inc.
Mortgage Consultants, Inc.
Mortgage Masters of Indiana, Inc.
Mortgages Unlimited, Inc.
Net Rate Mortgage, Inc.
New South Mortgage Corporation
North Florida Mortgage, LLC
Partners Group Financial, LLC
Pioneer Bank & Trust
Plaza Mortgage
Premier Mortgage Funding, Inc.
Proven Mortgage Corporation
Providence Mortgage PC
RealWorks, Inc.
Resource One Mortgage Group, Inc.
RWG Mortgage Company, Inc.
Sherwood Mortgage Group, Inc.
STD Financial Services, Inc.
Stockton Mortgage Corporation
Stockton Turner & Company
Sunbelt Lending Services, Inc.
The Home Mortgage Loan Company

Reference: *VA Lender's Handbook*, paragraphs 1.1, 1.7 and 1.10.

**5. Noncompliance with 38 CFR 36.4344(c) and/or 36.4347 - minimum property requirements.**

PRM did not ensure that all property requirements or special conditions required by the appraisal or VA, and cited on the NOV and/or the VANOV, were met before requesting evidence of VA guaranty. PRM should provide the following documents in its response to the preliminary report. If the original inspections or certifications are not available, PRM may obtain current inspections or certifications.

   PRM# 6418208-2, VA# 10-10-6-0580961, ████████ - evidence of treatment for the active carpenter
      ant infestation or a clear Wood Destroying Insect Information Report
   PRM# 6389804, VA# 14-14-6-0955172, ██████ - local health authority acceptance of the
      individual water system (not properly required on the NOV)
   PRM# 6436233-8, VA# 17-17-6-1378096, ██████ - local health authority acceptance of the
      individual water system
   PRM# 6437937-3, VA# 17-17-6-1378498, █████ - fee appraiser's final certification for completion
      of construction
   PRM# 6451768-3, VA# 17-17-6-1381637, ████ - evidence that fungi damage is repaired and/or
      not structural for the wood siding on back porch
   PRM# 6411335-0, VA# 19-19-6-0354753, ██████ - Wood Destroying Insect Information Report
      indicated damage to wood in the area below the first main floor with further inspection to be
      done by a qualified building expert to determine necessary repairs. Need the qualified expert
      inspection to clear first report.
   PRM# 6416248-0, VA# 28-28-6-0744250, █████- evidence of flood insurance or evidence that flood
      insurance is not required
   PRM# 6401441-8, VA# 31-31-6-0377159, ██████ - veteran's repair certification for the
      installation of the steam release valve overflow pipe
   PRM# 6444318-7, VA# 40-40-6-0186289, ██████ - completion certification for the installation
      of the front landscaping
   PRM# 6403296-4, VA# 51-51-6-0526095, █████- clear Wood Destroying Insect Information report,
      fee appraiser's repair certification for the completion of exterior wood work painting, sanding
      and removal of all loose paint on the house and garage wood work and trim, spot painting of all
      unpainted wood work, caulking all voids and cracks, painting all affected wood work with a
      good quality paint to full coverage according to manufacturers directions, replacing all damaged
      and/or missing door and window screens
   PRM# 6456595-5, VA# 62-62-6-1047061, ███████ - clear Wood Destroying Insect
      Information report

   Reference: *VA Lender's Handbook*, Chapters 10 - 15.

**6. Noncompliance with 38 CFR 36.4337(j) - lender responsibility regarding Reserves/National Guard statements.**

Some of the loans did not contain statements regarding the mobilization status of Reserve or National Guard members. This certification must be submitted on all loans where a borrower is in the Reserve or National Guard. A response to this finding is not required; however, PRM should take corrective action to ensure compliance, as violations of this requirement may require indemnification in the future.



   PRM# 6445595-9, VA# 10-10-6-0583185, ████
   PRM# 6389804, VA# 14-14-6-0955172, ████
   PRM# 6431499-0, VA# 17-17-6-1376950, ████
   PRM# 6461230-2, VA# 17-17-6-1383480, ██████
   PRM# 6437673-4, VA# 25-25-6-0932015, ████

   Reference: *VA Lender's Handbook*, paragraph 4.2.

**7. Noncompliance with 38 CFR 36.4337(j) - lender responsibility regarding Active Duty applicants.**

One loan did not contain either an offer of civilian employment, evidence of reenlistment, or a statement of intent to reenlist and the commanding officer's statement confirming that the applicant is eligible to reenlist. This documentation is required for an active duty applicant who is within 12 months of their separation date from military service. Although PRM did not obtain the proper documentation, we have independently verified that the active duty applicant is still on active duty. Had we not been able to establish that the veteran was still on active duty, this would have resulted in a request for indemnification. A response to this finding is not required; however, PRM should take corrective action to ensure future compliance.

PRM# 6449340-6, VA# 16-16-6-0805107, ████████

Reference: *VA Lender's Handbook*, paragraph 4.2.

EXHIBIT A



VA# 10-10-6-0580961
PRM# 6418208-2

### *What Did We Determine?*

Our audit revealed that PRM disregarded VA credit standards by not establishing that the borrower had sufficient reliable income to repay the loan.

### *How Did We Arrive at This Determination?*

PRM did not adhere to the credit underwriting standards by not properly documenting the borrower's employment, income, liquid assets, credit explanations, and the complete automatic underwriting system results. The income analysis did not contain the underwriter's explanation for using income from employment of only three-months; further, since verification of income was not found, the auditors were unable to determine if proper income application was used for a borrower in a field whose earnings may depend upon commissions. In addition, the file did not contain two months of bank records as evidence that the borrower had the required minimum liquid assets of $2,759.06 needed to close this loan.

For verification of commission income, VA requires the actual amount of commissions paid year-to-date, the basis for payment, the frequency for payment of commissions, plus the income tax returns and schedules, signed and dated, for the previous two years. In addition, evidence that the borrower's employment in sales has been extensive would be required to conclude the stability of employment and income. And, because the borrower had been in his new job for a very short time, only base pay could be used to qualify the borrower for the loan.

PRM placed the government at undue risk by not establishing that the borrower had sufficient reliable income to repay the loan.

We used the following loan data:

| | |
|---|---|
| Loan Amount | $142,977 |
| Date of Application | 04/13/04 |
| Approved by Lender | unknown |
| Loan Closed | 05/06/04 |
| First Payment Due | 07/01/04 |
| Guaranty Issued | 05/24/04 |
| Guaranty Amount | $36,000 |
| Date of First Default | 03/01/05 |

### *What Action Are We Proposing Based on Our Determination?*

Based on our review of this loan, we are proposing that PRM sign an indemnification agreement. The signing of an indemnification agreement will ensure that VA will recover from PRM any loss on the loan (or subsequent VA interest rate reduction refinancing loan) due to a default occurring within five years of the date of VA guaranty. Prior to responding, please review *VA Lender's Handbook*, Chapter 4, 38 CFR 36.4337, and title 38, U.S.C., section 3710(b), regarding the income and credit requirements of the law.

EXHIBIT B



VA# 17-17-6-1367719
PRM# 6399969-2

### *What Did We Determine?*

Our audit revealed that PRM disregarded VA credit standards by not establishing that the borrower had sufficient reliable income to repay the loan.

### *How Did We Arrive at This Determination?*

PRM did not adhere to the credit underwriting standards by not properly documenting the borrower's employment, income, rental, or asset data. The file did not document the required two years employment and income history, and was also missing pay statements covering at least the most recent 30-day period, W-2 forms for the previous two years and an explanation for employment gaps over 30 days, as applicable.

This loan was processed using an automatic underwriting system receiving a refer rating. The refer rating required that the underwriter provide a written explanation for approving the loan, the rental reference for the most recent 12 months, and the most recent two months of bank records. The refer rating required the borrower's written explanation for the credit inquiries made the previous 90-day period and a written explanation for the derogatory credit. None of the listed document requirements were found in the loan file.

PRM placed the government at undue risk by not establishing that the borrower had sufficient reliable income to repay the loan.

We used the following loan data:

| | |
|---|---|
| Loan Amount | $134,699 |
| Date of Application | 02/11/04 |
| Approved by Lender | 03/05/04 |
| Loan Closed | 03/15/04 |
| First Payment Due | 05/01/04 |
| Guaranty Issued | 03/19/04 |
| Guaranty Amount | $36,000 |
| Date of First Default | 12/01/05 |

### *What Action Are We Proposing Based on Our Determination?*

Based on our review of this loan, we are proposing that PRM sign an indemnification agreement. The signing of an indemnification agreement will ensure that VA will recover from PRM any loss on the loan (or subsequent VA interest rate reduction refinancing loan) due to a default occurring within five years of the date of VA guaranty. Prior to responding, please review *VA Lender's Handbook*, Chapter 4, 38 CFR 36.4337, and title 38, U.S.C., section 3710(b), regarding the income and credit requirements of the law.

EXHIBIT C



VA# 17-17-6-1371001
PRM# 6395978-7

### *What Did We Determine?*

Our audit revealed that PRM disregarded VA credit standards by not establishing that the borrower had sufficient reliable income to repay the loan.

### *How Did We Arrive at This Determination?*

PRM did not adhere to the credit underwriting standards by not properly documenting the borrower's employment and income data. The file did not document the borrower's military Leave and Earnings Statement nor evidence that the borrower had at least 12 months of obligated military service remaining beyond the closing of the loan. Independent confirmation obtained on June 6, 2006, revealed that the borrower is not on active duty status.

PRM placed the government at undue risk by not establishing that the borrower had sufficient reliable income to repay the loan.

We used the following loan data:

| | |
|---|---|
| Loan Amount | $210,054 |
| Date of Application | unknown |
| Approved by Lender | 03/27/04 |
| Loan Closed | 04/05/04 |
| First Payment Due | 06/01/04 |
| Guaranty Issued | 04/27/04 |
| Guaranty Amount | $52,514 |

### *What Action Are We Proposing Based on Our Determination?*

Based on our review of this loan, we are proposing that PRM sign an indemnification agreement. The signing of an indemnification agreement will ensure that VA will recover from PRM any loss on the loan (or subsequent VA interest rate reduction refinancing loan) due to a default occurring within five years of the date of VA guaranty. Prior to responding, please review *VA Lender's Handbook*, Chapter 4, 38 CFR 36.4337, and title 38, U.S.C., section 3710(b), regarding the income and credit requirements of the law.

8

EXHIBIT D



VA# 17-17-6-1379025
PRM# 6439958-7

### *What Did We Determine?*

Our audit revealed that PRM disregarded VA credit standards by not establishing that the borrowers had sufficient reliable income to repay the loan.

### *How Did We Arrive at This Determination?*

PRM did not adhere to the credit underwriting standards by not properly documenting the borrowers' income data. The file contained no income documentation for either the borrower or the co-borrower. Income was not properly documented by either a verification of employment or a telephone verification, one current pay stub covering at least one full month of employment containing year-to-date, bonus, and overtime information, if applicable, or any previous year's W-2 forms. This file was also run through an automated underwriting system. Without proper income documentation, the integrity of the data used was compromised.

PRM did provide a letter from CitiMortgage dated March 14, 2006, stating that the borrowers' mortgage had been paid in full; however, our records indicate the loan is active and VA still has liability on this loan. If additional documentation, like the HUD-1 Settlement Statement, is available to document that the borrowers have extinguished VA's liability through a conventional sale of the property, PRM may submit that documentation with the response to this report.

PRM placed the government at undue risk by not establishing that the borrower had sufficient reliable income to repay the loan.

We used the following loan data:

| | |
|---|---|
| Loan Amount | $136,437 |
| Date of Application | unknown |
| Approved by Lender | 07/23/04 |
| Loan Closed | 07/30/04 |
| First Payment Due | 09/01/04 |
| Guaranty Issued | 08/09/04 |
| Guaranty Amount | $36,000 |

### *What Action Are We Proposing Based on Our Determination?*

Based on our review of this loan, we are proposing that PRM sign an indemnification agreement. The signing of an indemnification agreement will ensure that VA will recover from PRM any loss on the loan (or subsequent VA interest rate reduction refinancing loan) due to a default occurring within five years of the date of VA guaranty. Prior to responding, please review *VA Lender's Handbook*, Chapter 4, 38 CFR 36.4337, and title 38, U.S.C., section 3710(b), regarding the income and credit requirements of the law.

EXHIBIT E


VA# 17-17-6-1383480
PRM# 6461230-2

### *What Did We Determine?*

Our audit revealed that PRM disregarded VA credit standards by not establishing that the borrowers were a satisfactory credit risk.

### *How Did We Arrive at This Determination?*

We used the following credit data to reach our determination:

| | |
|---|---|
| CITIFINANC | I-1, opened 11/00 |
| CITIFINANCIAL RE | I-1, opened 12/98 |
| FIRSTFLORI | I-1, opened 11/03 |
| WFNNB/LANE BRYAN | R-1, opened 12/02 |
| CAP ONE BANK | R-1, opened 02/02 |
| BADCOCK HOME | R-1, 2X30, opened 10/94 |
| GREEN PT CRD | I-1, 2X30-11/02, opened 06/96 |
| MITSUBISHI MOTOR | I-1, 1X30-07/02, opened 08/01 |
| CITI | R-1, 4X30, 2X60-10/03, 2X90, opened 01/90 |
| HHLD BANK | R-1, 1X30-04/04, opened 07/03 |
| CAP ONE BANK | R-1, 3X30-09/04, closed 11/04 |
| PARK AV BK | I-2, paid, 5X30-01/04, opened 11/98 |
| DEPT OF VETERANS | I-9, $171 collection paid 02/04 |
| MBGA/JC PENNEY | R-9, $273 charge-off (in repayment) from 08/00 |
| DEBT REC SOL | O-9, $623 collection for Sprint Ltd, opened 05/02, settled 11/04 |
| AFNI-BLOOM | O-5, $226 collection for Alltel, opened 06/01, settled 10/04 |
| ANDERSON FIN | O-9, $193 collection for Sprint, opened 12/99, paid 11/04 |
| ONLINE COLL | U-9, $59 collection for Progress Energy, opened 04/01, paid 11/04 |

The borrowers' credit reports revealed five collections, either paid or settled, and one charge-off in repayment in addition to several lates reported in the 12 months prior to closing. There were some timely open accounts; however, in light of the other derogatory credit and no verification of rental payments, there was not sufficient acceptable credit to offset the poor payment history of the borrowers. These derogatory accounts had been pending for several years and there is no evidence that the borrowers made any attempt to pay them in full or arrange for a repayment plan, with the exception of the JC Penney account, until trying to purchase a home. There was no explanation by the borrowers in file as to the reason for the derogatory credit. The underwriter's only explanation of the derogatory credit was "some spotty credit issues" with no real justification for loan approval. The accounts shown above are only those with activity within the 24 months prior to closing. Credit in years past that is not shown above also reflect the borrowers' historical pattern of late payments.

There were several documentation deficiencies found in this file. First, the underwriter annotated the loan analysis that the borrowers' $283 mobile home payment was offset by rent and therefore not counted in the monthly obligations. There was no lease agreement or tax return in file to validate the omission. The file also did not contain court orders to verify the amount of child support the borrower was required to pay. This loan was processed through an automated underwriting system and received a refer rating for adverse credit. Refer ratings require the verification of previous housing expense. The loan application indicates the borrowers had been renting prior to closing but PRM's file did not contain verification of the rental history. The underwriter also noted on the loan analysis that the borrower was in the Reserves and had been activated in 2002 and 2003. PRM neglected to obtain the Reservist Mobilization Statement to verify whether or not the borrower would again be called to active duty in the near future.

10

EXHIBIT E, continued

VA# 17-17-6-1383480
PRM# 6461230-2

In addition, the borrowers' housing expense was increasing from $680 to $1,162 or 71 percent. The underwriter did not explain how borrowers with an already derogatory credit history would sustain such a huge increase in their housing expense. PRM put the government at undue risk by approving a loan for borrowers who were not a satisfactory credit risk.

Our records indicate that this loan was paid in full by a subsequent Interest Rate Reduction Refinance Loan (IRRRL), number 17-17-6-1397509 closed October 2005, which is still active. PRM still has liability through this IRRRL should it go into default within the five year period as detailed below.

We used the following loan data:

| | |
|---|---|
| Loan Amount | $155,492 |
| Date of Application | unknown |
| Approved by Lender | 11/24/04 |
| Loan Closed | 12/07/04 |
| First Payment Due | 02/01/05 |
| Guaranty Issued | 12/28/04 |
| Guaranty Amount | $38,873 |

## *What Action Are We Proposing Based on Our Determination?*

Based on our review of this loan, we are proposing that PRM sign an indemnification agreement. The signing of an indemnification agreement will ensure that VA will recover from PRM any loss on the loan (or subsequent VA interest rate reduction refinancing loan) due to a default occurring within five years of the date of VA guaranty. Prior to responding, please review VA Lender's Handbook, Chapter 4, 38 CFR 36.4337, and title 38, U.S.C., section 3710(b), regarding the income and credit requirements of the law.

EXHIBIT F



VA# 17-17-6-1385284
PRM# 6458452-7

### *What Did We Determine?*

Our audit revealed that PRM disregarded VA credit standards by not establishing that the borrower was a satisfactory credit risk.

### *How Did We Arrive at This Determination?*

We used the following credit data to reach our determination:

| | |
|---|---|
| JMP FINANCIAL CORP | O-1, current landlord from 10/02, $850/mo |
| NICHOLAS | I-1, opened 05/03 |
| DISCOVER | R-1, 16X30-06/04, 9X60-02/03, 10X90-05/00 |
| HHLD BANK | R-5, $321 collection from 06/30/03, settlement accepted 07/04 |
| UNVL/CITI | O-9, $1,785 unpaid collection from 08/13/98 |
| NISSAN | O-8, $3,213 unpaid collection, dla 05/14/99 |

The borrower's credit within the past year reveals a lack of satisfactory credit history. Besides timely rental, the only satisfactory account was one that had just 15 months history. All other accounts were derogatory in nature which included one with running late pays, a collection that was settled, and two substantial collections that were still pending at time of closing. The UNVL/CITI collection is not the same account on which the borrower is an authorized user only and is reflected above. The borrower explained that the Discover account was actually closed and he was in an arrangement to pay $135 a month for a year at which time it would be reviewed for a pay-off. The credit report noted neither assertion and no documentation to support this arrangement was in the loan file. For the collections, the borrower stated that he wanted to set up repayment plans for the accounts but the creditors would not work with him.

This loan was processed through the Automated Underwriting System and received a refer rating. The underwriter provided no explanation as to why the credit was considered acceptable in light of the derogatory accounts. There was no basis for considering the borrower a satisfactory credit risk.

We used the following loan data:

| | |
|---|---|
| Loan Amount | $117,983 |
| Date of Application | unknown |
| Approved by Lender | 12/07/04 |
| Loan Closed | 12/14/04 |
| First Payment Due | 02/01/05 |
| Guaranty Issued | 01/04/05 |
| Guaranty Amount | $36,000 |
| Date of First Default | 04/01/05 |
| Date of Foreclosure | 01/13/06 |

### *What Action Are We Proposing Based on Our Determination?*

Based on our review of this loan, we are proposing that PRM sign an indemnification agreement. The signing of an indemnification agreement will ensure that VA will recover from PRM any loss on the loan (or subsequent VA interest rate reduction refinancing loan) due to a default occurring within five years of the date of VA guaranty. Prior to responding, please review *VA Lender's Handbook*, Chapter 4, 38 CFR 36.4337, and title 38, U.S.C., section 3710(b), regarding the income and credit requirements of the law.

EXHIBIT G


VA# 26-26-6-0629491
PRM# 6432311-6

### What Did We Determine?

Our audit revealed that PRM disregarded VA credit standards by not establishing that the borrowers had sufficient reliable income to repay the loan.

### How Did We Arrive at This Determination?

PRM did not adhere to the credit underwriting standards by not properly documenting the borrowers' employment and income histories for at least two years. The loan was processed using an automatic underwriting system but the data may be compromised because the file contained no income documentation for either the borrower or the spouse. Proper employment and income is documented by obtaining the borrower's military Leave and Earnings Statement, and the co-borrower's verification of employment or a telephone verification, at least one pay stub covering the most recent 30 days, and any previous W-2 forms, as applicable. The auditors obtained independent confirmation on June 6, 2006, revealing that the borrower is not on active duty status. In addition, the file did not contain two months of bank records as evidence that the borrowers had the required minimum liquid assets of $20,871.27 needed to close this loan.

PRM placed the government at undue risk by not establishing that the borrowers had sufficient reliable income to repay the loan.

We used the following loan data:

| | |
|---|---|
| Loan Amount | $190,451 |
| Date of Application | 05/29/04 |
| Approved by Lender | 07/22/04 |
| Loan Closed | 08/04/04 |
| First Payment Due | 10/01/04 |
| Guaranty Issued | 08/20/04 |
| Guaranty Amount | $47,613 |

### What Action Are We Proposing Based on Our Determination?

Based on our review of this loan, we are proposing that PRM sign an indemnification agreement. The signing of an indemnification agreement will ensure that VA will recover from PRM any loss on the loan (or subsequent VA interest rate reduction refinancing loan) due to a default occurring within five years of the date of VA guaranty. Prior to responding, please review *VA Lender's Handbook*, Chapter 4, 38 CFR 36.4337, and title 38, U.S.C., section 3710(b), regarding the income and credit requirements of the law.

13

EXHIBIT H



VA# 35-35-6-0571269
PRM# 6426845-1

### *What Did We Determine?*

Our audit revealed that PRM disregarded VA credit standards by not establishing that the borrower had sufficient reliable income to repay the loan.

### *How Did We Arrive at This Determination?*

PRM did not adhere to the credit underwriting standards by not properly documenting the borrower's income data. The file contained no income documentation for the borrower. Income was not properly documented by either a verification of employment or a telephone verification, one current pay stub covering at least one full month of employment containing year-to-date, bonus, and overtime information, if applicable, or any previous W-2 forms. This loan was processed through the Automated Underwriting System and received a refer rating because of a tax lien but without proper income documentation, the integrity of the data used was compromised.

PRM placed the government at undue risk by not establishing that the borrower had sufficient reliable income to repay the loan.

We used the following loan data:

| | |
|---|---|
| Loan Amount | $109,000 |
| Date of Application | 04/20/04 |
| Approved by Lender | 05/19/04 |
| Loan Closed | 05/20/04 |
| First Payment Due | 07/01/04 |
| Guaranty Issued | 06/15/04 |
| Guaranty Amount | $36,000 |

### *What Action Are We Proposing Based on Our Determination?*

Based on our review of this loan, we are proposing that PRM sign an indemnification agreement. The signing of an indemnification agreement will ensure that VA will recover from PRM any loss on the loan (or subsequent VA interest rate reduction refinancing loan) due to a default occurring within five years of the date of VA guaranty. Prior to responding, please review *VA Lender's Handbook*, Chapter 4, 38 CFR 36.4337, and title 38, U.S.C., section 3710(b), regarding the income and credit requirements of the law.

14

EXHIBIT I



VA# 51-51-6-0530694
PRM# 6440538-4

### *What Did We Determine?*

Our audit revealed that PRM disregarded VA credit standards by not establishing that the borrowers were a satisfactory credit risk.

### *How Did We Arrive at This Determination?*

We used the following credit data to reach our determination:

The borrowers' credit reports revealed that the borrower's credit was satisfactory but not the co-borrower's. The co-borrower's credit history revealed four open collection/charge-off accounts totaling $7,030 (one for which a repayment plan had been recently set up) and six recently paid collections/charge-offs totaling $2,481. The only satisfactory account in the co-borrower's name is one held jointly with her husband that was opened eight months prior to closing. The co-borrower explained that the derogatory credit occurred while she was in college and did not have a job. However, she had been on active duty with the Air Force for three years prior to closing and had made no attempt to satisfy the outstanding obligations until trying to purchase a home. The payment of adverse credit proximate to closing does not alter the unsatisfactory payment record. PRM did not establish that the borrowers were a satisfactory credit risk.

PRM placed the Government at undue risk by approving a loan for which the borrowers were not a satisfactory credit risk.

We used the following loan data:

| | |
|---|---|
| Loan Amount | $127,750 |
| Date of Application | unknown |
| Approved by Lender | unknown |
| Loan Closed | 07/30/04 |
| First Payment Due | 09/01/04 |
| Guaranty Issued | 01/06/05 |
| Guaranty Amount | $36,000 |

### *What Action Are We Proposing Based on Our Determination?*

Based on our review of this loan, we are proposing that PRM sign an indemnification agreement. The signing of an indemnification agreement will ensure that VA will recover from PRM any loss on the loan (or subsequent VA interest rate reduction refinancing loan) due to a default occurring within five years of the date of VA guaranty. Prior to responding, please review *VA Lender's Handbook*, Chapter 4, 38 CFR 36.4337, and title 38, U.S.C., section 3710(b), regarding the income and credit requirements of the law.