**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. VICTOR E. BIBBY and BRIAN J. DONNELLY,<br><br>Relators/Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A, *et al.*,<br><br>Defendants. | Civil Action No.:<br><br>1:06-cv-00547-AT<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT MORTGAGE INVESTORS CORPORATION'S REPLY**

Relators Victor E. Bibby and Brian J. Donnelly ("Relators") have sued Defendant Mortgage Investors Corporation (Ohio) ("Mortgage Investors") and a number of unrelated parties, alleging that certain indisputably unrelated transactions (only one involving Mortgage Investors) each constituted a violation of the False Claims Act ("FCA"). Mortgage Investors has moved to be severed from this case because they were improperly joined, and Relators have consented to the severance. The only relevant allegations are those made explicitly in the Second Amended Complaint ("SAC") against Mortgage Investors. Allegations against other defendants are irrelevant, as are numerous allegations in Relators' briefs and affidavits, which appear nowhere in the SAC.

1

After six years and three complaints, and having had, Relators assert, access to myriad files and voluminous evidence, Relators have alleged only one purportedly false claim by Mortgage Investors. Even if the new assertions in the declarations filed by Relators were true—and they are not—Relators have not alleged that any of those transactions constituted an FCA violation. Since the undisputed facts show that the only claim in the SAC that related to Mortgage Investors was not false, Mortgage Investors is entitled to summary judgment.

## ARGUMENT

Unable to respond effectively to Mortgage Investors' evidence regarding the only transaction at issue, Relators instead have attempted to confuse the issue, filing hundreds of pages—some seven and a half pounds—of hearsay and accusations against unrelated parties, which do not fairly address the subject matter of the Motion. But quantity of paper does not substitute for relevance of evidence. Behind all of the smoke generated by Relators' voluminous briefing, the fact remains that Relators still do not identify a single purported false claim other than the one, clearly proper transaction listed in the SAC, and they continue to confuse title searches and abstracts, on the one hand, with title examinations on the other. In fact, much of Relators' own "evidence" supports Mortgage Investors' position that the fees paid were bona fide and reasonable.

The Motion for Summary Judgment should be granted because: I) there was no "fee shifting" in the one loan at issue in the SAC; II) Relators cannot amend the

Complaint with their briefs; and III) Relator Donnelly lacked standing to file the SAC against Mortgage Investors and, in any case, he is equitably estopped from pursuing this case because of his failure to notify the Bankruptcy Court of this case, even after it was unsealed, until after Mortgage Investors filed its Motion for Summary Judgment.

## I. There Has Been No False Claim

Mortgage Investors is entitled to summary judgment because there was no false claim. The only Mortgage Investors loan in the SAC was not a false claim, and Relators have nowhere alleged any other purportedly false claim against Mortgage Investors. The SAC admits that the attorney's closing fee in the single loan at issue was paid outside of closing, and despite more than five years having passed since this case was filed, Relators still cannot show that the title search and examination fees were unreasonable, or, more to the point, that Mortgage Investors somehow knew that such fees were purportedly unreasonable.

### A. Relators Are Bound by the Allegations in the SAC that the Attorney's Closing Fee Was Paid Outside of Closing

The SAC includes only one loan originated by or otherwise relating to Mortgage Investors, VA Case Number 16-16-6-0798278, closed on April 10, 2004 (the "Mortgage Investors Loan").[1] The SAC clearly alleges that the $350.00

---

[1] Relators' assertion that the SAC alleges multiple false claims against Mortgage Investors is simply incorrect. Unlike other defendants, who are alleged to have submitted "false claims," Mortgage Investors is simply alleged to have "committed

attorney's closing fee in the Mortgage Investors Loan was paid outside of closing, and Relators have alleged no facts to the contrary. (SAC, Ex. B.) Relators never alleged that this fee was paid by the borrower, but rather asserted that $450.00 in fees for title services—title search/abstract, and title examination—are higher than what was reasonable and customary. (SAC ¶ 102). Now, seeing the weakness of their case, Relators appear to be insinuating that the attorney's closing fee was not paid outside of closing by Mortgage Investors after all. Relators' Mem. at 8 n.14. The assertion is absurd on its face and is insufficient to create a genuine factual issue. Additionally, Relators are bound by the allegations in the SAC and cannot amend them with their briefs. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). In any event, Relators have cited no evidence or other basis for asserting that the $350.00 attorney's closing fee was <u>not</u> paid outside of closing, as Relators have alleged.

### B. The Purported "Evidence" Relators Cite is Irrelevant Hearsay and Confuses Title Searches with Title Examinations

The purported "evidence" that Relators cite in opposition to the Motion for Summary Judgment can be divided into three categories: 1) assertions that do not implicate Mortgage Investors; 2) assertions that do not support Relators' allegations; and 3) hearsay. Additionally, Relators' allegations regarding fees

---

similar fraud." SAC ¶ 102. Nowhere in the SAC do Relators even generally allege that Mortgage Investors had any involvement in any other loan.

allegedly charged in transactions far removed in time and place from the transaction at issue, are irrelevant and do not defeat summary judgment.

### 1. *Relators' Key Allegations Have Nothing to Do with Mortgage Investors*

As Mortgage Investors demonstrated in its Motion to Sever, which Relators do not oppose, Mortgage Investors was improperly joined in this case. Mortgage Investors is not alleged to have acted in concert with the other defendants, nor to have been part of any of the purportedly wrongful transactions alleged against the other defendants. Accordingly, allegations of improper fee-shifting *by other defendants*, or by settlement agents who work with other defendants, have nothing to do with Mortgage Investors.

Relators make inflammatory allegations against other companies, such as Wells Fargo (Bibby Aff. ¶¶ 26, 38), and regarding settlement agents with whom Mortgage Investors does not do business (*e.g.*, Bibby Aff. ¶ 39). Since those allegations have nothing to do with Mortgage Investors, they are irrelevant to the summary judgment inquiry. Moreover, as set forth below, aside from being hearsay and irrelevant to the single loan at issue, the few "facts" asserted regarding purported fee shifting by Mortgage Investors are, upon closer examination, nothing of the sort.

### 2. *Relators' Assertions Do Not Support Relators' Claims*

A title examination is separate and additional to a title abstract or search. In Georgia, the title examination must be conducted by an attorney, and involves the

giving of a legal opinion regarding title. Nonetheless, Relators continue to confuse the two steps, insisting that since they believe a title abstract or search costs up to $200, the total cost of a title abstract or search *and a title examination* should be less than $200 as well. This makes no sense.

Moreover, the very "evidence" that Relators have submitted shows that title abstracts alone, without an attorney's examination and formal opinion of title, often cost at the high end of what Relators spuriously assert to be the "customary" charge for a title abstract *and* a title examination. *See*, *e.g.*, Spear Aff. ¶ 12 (title search, without exam, up to $180); *id.* ¶ 22 (title search, without exam, up to $245, depending on location).

Relators' other "evidence" is likewise irrelevant, reflecting, for example, prices for title abstracts from companies that appear to provide title abstracts to attorneys who would then conduct title examinations, or documents that do not quote fees for title examinations. *See*, *e.g.*, Spear Aff. ¶ 6 (Southern Abstract Services, L.L.C.); *id.* ¶ 7 (TurnAround Title, Inc.); *id.* ¶ 8 (Triumph Research Specialists); *id.* ¶ 9 (Doc Hunters).

The purported survey from BankRate.com, whose admissibility Relators do not even attempt to establish, is likewise completely irrelevant. First, rates in 2009, when the mortgage market collapsed, are not probative of rates in 2004 (when the Mortgage Investors Loan was closed). Second, the numbers in the survey are not sufficiently broken down. *See* Bibby Aff. ¶ 24. Third,

6

BankRate.com itself admits that its survey is only based on computerized Good-Faith Estimates to which it has access, not to some actual survey of the mortgage industry, and that its numbers were often inaccurate because of systematic discrepancies between GFEs and the actual costs reflected on HUD-1s.  *See http://www.bankrate.com/finance/mortgages/2010-closing-costs/* (Ex. A hereto).

Since even Relators' inadmissible "evidence" supports Mortgage Investor's position, the Motion for Summary Judgment should be granted.

### 3.  <u>Relators' Testimony Is Inadmissible Hearsay</u>

Hearsay within affidavits is not admissible on summary judgment.  *Macuba v. DeBoer*, 193 F.3d 1316, 1322-24 (11th Cir. 1999).  Therefore, since all of Relators' testimony regarding Mortgage Investors' interaction with real estate settlement agents is hearsay (not to mention untrue), it may not be considered here.

Every instance of Relators Bibby or Donnelly stating what a third party allegedly (and improbably) told them is hearsay and, not being subject to any exception to the hearsay rule, is inadmissible.  *See*, *e.g.*, Donnelly Aff. ¶ 11 (hearsay declarant Ms. Pautauros); *id.* ¶ 12 (hearsay declarants unidentified "closers"); *id.* ¶ 14 (hearsay declarant Ms. Hembree); *id.* ¶ 15 (hearsay declarants unidentified "processor" and underwriter); Bibby Aff. ¶¶ 23-24, 27 (hearsay declarant Bankrate, Inc.); *id.* ¶ 26 (hearsay declarant Wells Fargo); *id.* ¶ 28 (hearsay declarant unnamed "Title Officer and Auditor"); *id.* ¶ 25 (hearsay declarant Ms. Miller); *id.* ¶¶ 37-38 (hearsay declarants unnamed "lenders"); *id.* ¶ 39 (hearsay

declarant Windham Law Firm).  In addition, the Affidavit of Sarah Spear (and the documents attached thereto) is almost entirely comprised of hearsay, namely Ms. Spears testifying as to what she was allegedly told by various hearsay declarants. *See*, *e.g.*, Spear Aff. ¶ 25 (not even identifying the hearsay declarants).

### 4. *Purported Evidence of Current Fees Is Irrelevant*

Relators' affidavits selectively cite to loans and "evidence" without regard to chronology.  It is simply not probative in this case what was charged in 1997 or 1998, or what a third party allegedly said the average charge was in 2009.

Accordingly, since Relators submit no evidence to contradict the 2004 rates for Pleska & Associates (confirmed by the other 2004 loans closed by Pleska that Relators cite), or to establish that the rates paid for title services for the Mortgage Investors Loan were so outrageous as to put Mortgage Investors on notice that they were in violation of the law, it is undisputable that Mortgage Investors did not violate the FCA and summary judgment should issue.

### C. The Title Search and Exam Fees Were Not "Unallowable"

It is undisputed that the $450 charged by Pleska & Associates for the title search/abstract and title exam in the Mortgage Investors Loan was the actual charge for those services.  Relators present no evidence to the contrary, and Relators' own evidence supports this conclusion.   First, the purported Pleska rate sheet that Relators filed shows a closing fee almost identical to the fee paid by

Mortgage Investors in this case, and also shows title fees that are almost identical.[2] Specifically, the "Attorney Fee" is $400, which is almost the same as the fee that Mortgage Investors paid for the Mortgage Investors Loan. The "Title Search," which was to be paid to Guaranty Title and *not* to Pleska & Douglas, was $275,[3] and the fee for the "Title Binder," representing the title exam done by an attorney, was $150. Accordingly, the combined title search/abstract and exam/binder fee was $425, virtually the same as for the Mortgage Investors Loan. *See* Bibby Aff. ¶ 31, Ex. 11.[4] Second, all the loans closed by Pleska & Assocs. that Relators cite from the same time period reflect the fees that Mr. Pleska testified were charged.

Mortgage Investors shopped around and found the best price for its borrowers. Even if another closing agent might have offered a lower price, that would not establish a violation of the False Claims Act. Nor would deception on the part of a settlement agent constitute a violation by Mortgage Investors.[5]

---

[2] The rate sheet is for Pleska & Douglas, LLC, which lists as members Pleska & Associates, LLC, and Brian M. Douglas & Associates, LLC. It is not clear whether the sheet was for Pleska or Douglas.

[3] The fact that the title search fee was to be paid to a title company underscores the fact that a title search (which can be outsourced) is not the same as a title examination, and that an additional fee must be paid for the services of the attorney who conducts the title exam, if one is ordered.

[4] While an IRRRL is one example of a refinanced loan, there is no reason a list of "Refinance Closing Fees" would refer only to IRRRL loans. *Cf.* Bibby Aff. ¶ 31.

[5] Relators' suggestion that Mortgage Investors would be liable under the laws of agency for alleged wrongdoing by a settlement agent is preposterous. First, even an employee's knowledge is not necessarily imputed under the FCA. *See United States v. SAIC*, 626 F.3d 1257, 1261 (D.C. Cir. 2010) (rejecting theory of

Finally, since Mortgage Investors undisputedly paid the attorney's closing fee outside of closing, Relators' allegations are simply not credible.

## II. Relators Cannot Amend the Complaint with Their Briefs

A plaintiff cannot amend the complaint with his briefs. *Gilmour*, 382 F.3d at 1315; *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F. 2d 1101 (7th Cir. 1984) (calling this rule "axiomatic"). Yet Relators, who alleged only one purportedly false claim against Mortgage Investors in the SAC, now insinuate that multiple loans are at issue. Bibby Aff. ¶ 20. Since Relators had to plead their claims with particularity, only claims pled with particularity in the SAC are at issue. Moreover, the new allegations—even if they were properly before the Court—are heterogeneous in time and amounts, are not alleged with particularity, and are not "claims" at all (let alone False Claims).

### A. Under Rule 9, Relators Must Plead Fraud with Particularity

Because FCA claims are grounded in fraud, they must be pled with particularity under F.R.C.P. 9(b). *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357-60 (11th Cir. 2006). This standard is important, since it enables

---

collective scienter). Second, while a settlement agent may be the lender's agent for certain limited purposes (such as disbursing the lender's funds), he is not the lender's agent for all purposes, such as setting the price that he charges the lender for his services. The settlement agent's role is adverse to the lender in that context. Moreover, Relators completely misunderstand VA Form 26-1820, ¶ 24(J), which is concerned with agents who gathered underwriting information for the lender, not settlement agents (who are the agents of the title insurance company). *See* Ex. B.

the defendant to prepare its defense, and since it prevents the use of vague or conclusory allegations as license to engage in a fishing expedition of the type Relators envision here. *See id.*

Since Relators identified only one purportedly False Claim with respect to Mortgage Investors in the SAC, and did not allege even generally—let alone with particularity—that Mortgage Investors was responsible for any additional purported False Claims, this case concerns that one loan and Relators cannot defeat summary judgment by attempting to introduce allegations regarding other loans.[6]

### B. Relators' New Allegations Do Not Satisfy Rule 9

Even if Relators were entitled to plead only a single "example" of the alleged fraud—and even if Relators had pled that the loan described in Paragraph 102 of the SAC was merely an example of purported fraud by Mortgage Investors, which Relators did not do—the "example" alleged in the SAC is so different in time, place and amounts from the loans in Relators' affidavits that Mortgage Investors was not fairly put on notice of the nature of the claims against it. The majority of the "new" loans identified in the affidavits had settlement or closing fees paid outside of closing by the lender, in amounts that varied greatly (reflecting

---

[6] Relators' suggestion that Mortgage Investors waived its rights by answering instead of moving to dismiss is without merit. First, Mortgage Investors has pled its affirmative defenses. Second, Mortgage Investors filed its answer to the SAC, which pled a single purported False Claim. Relators cannot now assert that the SAC should be read to allege additional False Claims against Mortgage Investors, when the SAC itself says no such thing.

11

principally the difference between states where attorneys have to close loans and where notaries do so—contrary to Relator Bibby's unsupported statement (Bibby Aff. ¶ 27.f), the closing fee in notary states is frequently lower than $250). They ranged in time from 1997 to 2008, were closed by different people, and had different amounts for the various title-related work that was performed in each, which work also presumably varied widely. Only 21 of the "new" loans were from Georgia, and only two of those were closed by Pleska & Assocs. around 2004. The other loans bear no similarity at all to the "example" alleged in the SAC.

Moreover, Mortgage Investors could not have been on notice of Relators' additional allegations because: a) unlike other defendants, there is no reference in the SAC to multiple claims by Mortgage Investors; and b) Relators simply allege that "Mortgage Investors committed *similar* fraud," not that the allegations against the other defendants somehow apply to Mortgage Investors as well. (SAC ¶ 102 (emphasis added)). Even now, Relators fail to allege facts to establish an FCA violation with particularity with respect to any of the 64 "new" loans.

### C. Relators' New Allegations Are Not "Claims"

Finally, Relators do not allege that any of their new allegations represent False Claims. Since the loans were apparently all refinanced, it is implausible that they would be claims at all under the FCA. Accordingly, even if the Court were to consider the additional loans that Relators failed to include in the SAC, none could possibly give rise to FCA liability since no claim has been made. *United States ex*

*rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002).

### III. Relator Donnelly Lacked Standing and Is Equitably Estopped

The facts don't lie. First, for years, while this case was under seal, Relator Donnelly did not seek the guidance of this Court or of the Bankruptcy Court to make an honest disclosure of his assets, despite being represented by able counsel in both cases. Second, even after this case was unsealed, Relator Donnelly still kept quiet. Third, Relator Donnelly moved to reopen his bankruptcy *not* to disclose his interest in this case (as he disingenuously testifies here), but to add a creditor, or at least, so he told the Bankruptcy Court in his filing. *See In re Donnelly*, No. 08-23093-REB, Motion to Reopen, Dkt. 22 (N.D. Ga. Bankr. Nov. 2, 2011), Ex. C hereto. Finally, only *after* Mortgage Investors filed its Motion for Summary Judgment, and not before, as Relators wrongly assert, did Relator Donnelly acquiesce and notify the Bankruptcy Court of his interest in this case.

Summary judgment is appropriate against Relator Donnelly because he lacked standing when the Second Amended Complaint was filed, a jurisdictional defect that cannot be remedied by the belated ratification of the bankruptcy trustee, and because Donnelly is estopped from profiting from his deception.

### A. Donnelly's Lack of Standing Cannot be Remedied Ex-Post

Relators fail to address Mortgage Investors' arguments regarding Relator Donnelly's lack of standing, focusing instead on his reasons for failing to disclose this case in his bankruptcy. Yet intent is irrelevant to standing. Mortgage

Investors Corporation (Ohio) was not a party to the First Amended Complaint. When, on July 18, 2011, Relator Donnelly purported to bring suit against Mortgage Investors Corporation (Ohio) by filing the Second Amended Complaint, he lacked standing to do so. Counsel were not authorized to represent his already-closed Chapter 7 bankruptcy estate, and they did not bring suit on behalf of the estate. Mr. Donnelly's claims in the SAC against Mortgage Investors were therefore a nullity, and so there are no claims for the bankruptcy trustee to pursue now.

"[S]tanding must be determined as of the time at which the plaintiff's complaint is filed." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003). Since Mr. Donnelly lacked standing to bring the SAC—and lacks standing still—summary judgment should be entered against him.

### B. Donnelly Misled the Bankruptcy Court

Although in this Circuit, a bankruptcy trustee is not equitably estopped by the actions of the debtor, the mere involvement of the bankruptcy trustee does not immunize the debtor from the consequences of his actions, and the debtor is still estopped from profiting from them.[7] Accordingly, even if Mr. Donnelly's lack of standing could be remedied *ex-post*, the trustee would be limited to recovering the amount of the creditors' claims in Relator Donnelly's bankruptcy.

---

[7] Relators suggest that Mortgage Investors should not have raised Relator Donnelly's lack of standing because Relator Bibby's standing would not be affected. That is not a legal argument.

## **CONCLUSION**

Accordingly, Mortgage Investors is entitled to summary judgment on the sole count of the Second Amended Complaint.

## **LOCAL RULE 7.1D CERTIFICATION**

I hereby certify that the foregoing brief complies with the font and point requirements of LR 5.1, to wit, this brief was prepared in Times New Roman font, 14-point type.

Dated:  January 9, 2012        Respectfully submitted,

| TAYLOR ENGLISH DUMA LLP | WEINER BRODSKY SIDMAN KIDER PC |
|---|---|
| /s/ Matthew R. Rosenkoff<br>Matthew R. Rosenkoff, Esq.<br>Georgia Bar No. 842117<br>1600 Parkwood Circle – Suite 400<br>Atlanta, Georgia 30339<br>(770) 434-6868<br>(770) 434-7376 (Facsimile)<br>mrosenkoff@taylorenglish.com | /s/ Mitchel H. Kider<br>/s/ David M. Souders<br>/s/ Michael Y. Kieval<br>Mitchel H. Kider (*Pro Hac Vice*)<br>David M. Souders (*Pro Hac Vice*)<br>Michael Y. Kieval (*Pro Hac Vice*)<br>1300 19th Street, NW, Fifth Floor<br>Washington, DC 20036<br>Telephone: (202) 628-2000<br>Facsimile: (202) 628-2011<br>kider@wbsk.com<br>souders@wbsk.com<br>kieval@wbsk.com |

*Attorneys for Defendant Mortgage Investors Corporation*