# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel, VICTOR E. BIBBY and BRIAN J. DONNELLY,<br><br>      Relators/Plaintiffs,<br><br>      v.<br><br>WELLS FARGO BANK, N.A, *et al.*,<br><br>      Defendants. | Civil Action No.:<br><br>1:06-cv-00547-AT |

### DEFENDANT MORTGAGE INVESTORS CORPORATION'S REPLY TO PLAINTIFF/RELATORS' RESPONSE TO MORTGAGE INVESTORS CORPORATION'S STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO DISPUTE

**Mortgage Investors Corporation's Statement No. 1:**

Relators Victor E. Bibby and Brian J. Donnelly ("Relators") filed this action on March 8, 2006. Complaint, ECF No. 1.

**Relators' Response:**

Admit.

**Mortgage Investors Corporation's Reply:**

No reply.

**Mortgage Investors Corporation's Statement No. 2:**

Only a single loan in the operative complaint, the Second Amended Complaint ("SAC"), involved Mortgage Investors, the April 10, 2004 loan bearing VA Case Number 16-16-6-0798278 (the "Mortgage Investors Loan"). SAC ¶ 102, Ex. B.

**Relators' Response:**

Denied.  The Second Amended Complaint ("SAC") involves all of Defendant Mortgage Investors Corporation's ("MIC's") loans with unallowable or excessive fees that violate the terms of the VA IRRRL program.  (*See* SAC, Doc. 54.)  Additional evidence of MIC's fraudulent inclusion of unallowable fees in other MIC loans is found in the Relators' affidavits.  (*See* Bibby Aff. ¶27; Donnelly Aff. ¶11.)

**Mortgage Investors Corporation's Reply:**

Relators cite no other loan in the SAC involving Mortgage Investors, cite no part of the SAC that purportedly contains another loan involving Mortgage Investors, and cannot amend the SAC with their briefs.  Relators fail to cite to any particular paragraph of the SAC, and in any case the SAC nowhere alleges that Mortgage Investors was involved with more than one transaction.  Finally, the SAC certainly cannot concern any loan that is not a Claim under the False Claims Act.

**Mortgage Investors Corporation's Statement No. 3:**

The closing and title work in connection with the Mortgage Investors Loan was conducted by Phillip Pleska of Pleska & Associates. Declaration of Philip L. Pleska ¶ 4 (Ex. B);1 Declaration of Thomas J. Carpenter ¶ 12 (Ex. A).

**Relators' Response:**

Admit.

**Mortgage Investors Corporation's Reply:**

No reply.

**Mortgage Investors Corporation's Statement No. 4:**

The "attorney closing fee" for the Mortgage Investors Loan was paid by Mortgage Investors outside of closing, and not by the borrowers. SAC, Ex. B; Pleska Declaration ¶ 10 (Ex. B); Carpenter Declaration ¶ 12 (Ex. A).

**Relators' Response:**

Denied.  The subject loan contains an excessive charge for title examination. (*See* Bibby Aff. ¶¶18, 20 – 22, 25, 26, 30; Donnelly Aff. ¶10.)  This indicates that unallowable fees were bundled with the title examination fee.  (*See* Bibby Aff. ¶¶11(b), 18, 33(c), 36; Donnelly Aff. ¶11 – 15.)

**Mortgage Investors Corporation's Reply:**

Even if Relators' unsupported assertion that unspecified "unallowable fees" were "bundled with the title examination fee" were true, it is undisputed that the

"attorney closing fee" was paid outside of closing, as Relators themselves allege in the SAC.  Because Relators cite no evidence that the attorney closing fee in the transaction at issue was *not* paid outside of closing, Mortgage Investors Corporation's Statement No. 4 is uncontroverted.

**Mortgage Investors Corporation's Statement No. 5:**

The prohibition on charging borrowers for certain costs in addition to the lender's flat 1% charge does not include attorneys' fees "for title work." VA Pamphlet 26-7 (Ex. 1 to Ex. A).

**Relators' Response:**

Admit that the lender can charge reasonable and customary amounts for title examination and title insurance.  38 C.F.R. § 36.4313(d)(1).  Denied that MIC did so with respect to the Belless loan closing; instead MIC inflated the charge for "title work" to compensate its closing agent for closing the loan.

**Mortgage Investors Corporation's Reply:**

Relators have admitted Statement No. 5, as they must.  Relators' additional, unsupported statement, does not address Statement No. 5.

**Mortgage Investors Corporation's Statement No. 6:**

VA Regulations permit the borrower to be charged for title examination and title insurance, separate from the flat 1% charge. 38 C.F.R. § 36.4313(d).

**Relators' Response:**

Admit that the lender can charge reasonable and customary amounts for title examination and title insurance. 38 C.F.R. § 36.4313(d)(1).

**Mortgage Investors Corporation's Reply:**

Statement No. 6 is uncontroverted.

**Mortgage Investors Corporation's Statement No. 7:**

Mortgage Investors does not use mortgage brokers to assist in the origination of VA loans, and has never used either of the Relators for assistance in originating any loans. Carpenter Declaration ¶ 6 (Ex. A).

**Relators' Response:**

Admit with respect to the loan bearing VA Case Number 16-16-6-0798278 that was attached to Relators' SAC. Denied otherwise.

**Mortgage Investors Corporation's Reply:**

Since Relators fail to cite any evidence or give any explanation for their purported "denial" of Statement No. 7, the response fails to comply with LR 56.1. Statement No. 7 is uncontroverted.

**Mortgage Investors Corporation's Statement No. 8:**

$450.00 is a reasonable charge for the title services provided in connection with the Mortgage Investors Loan. It is the actual charge that was paid to Pleska &

Associates, and is less than the usual and customary for a title examination. Carpenter Declaration ¶¶ 13-16 (Ex. A); Pleska Declaration ¶¶ 7-8, 12 (Ex. B).

**Relators' Response:**

Denied. $450 is an excessive charge for title services provided for the subject loan. (*See* Bibby Aff. ¶¶18, 20 – 22, 25, 26, 30; Donnelly Aff. ¶10; Todd Aff. ¶¶5 - 9; Spear Aff. ¶¶5 - 25.) The reasonable and customary amount for title examination services is between $85-200. (*Id.*) Admit that the subject HUD-1 indicates $450 was paid to Pleska & Associates – but most of that was paid from the veteran borrower's loan proceeds as a result of MIC's fee shifting.

**Mortgage Investors Corporation's Reply:**

Relators claim to dispute the fact that $450 is a reasonable charge for the title services provided, but they only cite figures for title examination, and ignore the title search/abstract. Additionally, Relators appear to misunderstand the HUD-1 Settlement Statement. All of the $450 for title services was paid by the borrower (not "most," as Relators curiously allege), which is proper. There was no "fee shifting," and Relators cite nothing here to show otherwise. Accordingly, Statement No. 8 is uncontroverted.

**Mortgage Investors Corporation's Statement No. 9:**

At the time the Mortgage Investors loan was originated and submitted to the VA, Mortgage Investors reasonably believed that $450.00 was a reasonable and

customary charge for the title work performed. Carpenter Declaration ¶¶ 15-16 (Ex. A).

**Relators' Response:**

Denied. This testimony is directly contradicted by the Relators' testimony and the testimony of independent witnesses. (*Id.*) In addition, given the usual charges for title work in Georgia, there is simply no way MIC could have "believed", "reasonably" or otherwise, that $450 "was a reasonable and customary charge."

**Mortgage Investors Corporation's Reply:**

Relators allege that purported "testimony" of "independent witnesses" contradicts Statement No. 9. Yet Relators cite none. Rather, Relators cite a largely inadmissible affidavit from their counsel's paralegal. Moreover, nothing cited by Relators addresses the rate-comparison that Mortgage Investors undertook at the time of the transaction at issue, and nothing cited by Relators addresses Mortgage Investors' reasonable belief at that time. Accordingly, Statement No. 9 is uncontroverted.

**Mortgage Investors Corporation's Statement No. 10:**

In the State of Georgia, a title examination consists of the preparation of a title abstract and the rendering of an opinion of title. Carpenter Declaration ¶ 7 (Ex. A); Pleska Declaration ¶ 8 (Ex. B).

**Relators' Response:**

Admit that title examination involves a search for the title and an examination of the title.

**Mortgage Investors Corporation's Reply:**

Relators cite nothing to explain their rewording of Statement No. 10 and make no objection to Statement No. 10 under LR 56.1. Accordingly, Statement No. 10 is uncontroverted.

**Mortgage Investors Corporation's Statement No. 11:**

Mortgage Investors never asked the title agent to increase the cost of the title charges. On the contrary, Mortgage Investors researched and obtained a rate for the title work, which was lower than other title agents were charging for similar work in Georgia during the same time period. Pleska Declaration ¶¶ 7, 12 (Ex. B); Carpenter Declaration ¶¶ 14-16 (Ex. A).

**Relators' Response:**

Denied. This testimony is directly contradicted by the Relators' testimony. (*See* Bibby Aff. ¶¶18, 20 – 22, 25, 26, 30; Donnelly Aff. ¶10.) It is also contradicted by independent evidence. (*See* Todd Aff. ¶¶5 - 9; Spear Aff. ¶¶5 - 25.) The reasonable and customary amount for title examination services is between $85-200. (*See* Bibby Aff. ¶¶18, 20 – 22, 25, 26, 30; Donnelly Aff. ¶10; Todd Aff. ¶¶5 - 9; Spear Aff. ¶¶5 - 25.) Further denied that MIC "researched"

rates for title work; had it done so, it would not now be representing to this Court that $450 was a "reasonable and customary charge". Further denied that MIC has proved, or can prove, that $450 was "lower than other title agents were charging." Lenders such as MIC and agents such as Pleska were collaborating to shift fees to the veteran, which was illegal.

**Mortgage Investors Corporation's Reply:**

Relators have not cited to a single instance in which Mortgage Investors ever asked a title agent to increase the cost of title charges. Rather, Relators have proffered hearsay testimony purporting to establish that other unrelated lenders allegedly did so on other occasions. This inadmissible evidence has nothing to do with Mortgage Investors. Further, Relators have not cited evidence to show that other title agents were not charging more for similar work in Georgia during the same time period, as demonstrated by the rate quotes that Mortgage Investors received from other companies. Additionally, Relators cite no evidence to contradict the testimony of Mr. Carpenter. The uncontradicted evidence is that Mortgage Investors did, in fact, research rates for title work, as set forth in the Carpenter Declaration. Finally, Relators cite nothing to support their defamatory assertion that "Lenders such as MIC and agents such as Pleska were collaborating to shift fees to the veteran." Relators cannot use the phrase "such as" to create the illusion of a factual issue with respect to Mortgage Investors, where their factual allegations are in fact against *other* lenders and *other* settlement agents.

**Mortgage Investors Corporation's Statement No. 12:**

Relator Donnelly filed a voluntary petition for bankruptcy under Chapter 7 on October 29, 2008. *In re Donnelly*, No 08-23093-REB, Petition, Dkt. 1 (N.D. Ga. Bankr.) (Ex. C).

**Relators' Response:**

Admit.

**Mortgage Investors Corporation's Reply:**

No reply.

**Mortgage Investors Corporation's Statement No. 13:**

Relator Donnelly did not schedule or otherwise disclose this action, or any purported claim against any lender, in his bankruptcy. *In re Donnelly*, Petition, Schedule B, Dkt. 1 at 17-19 (Ex. C).

**Relators' Response:**

Denied.  After the seal was lifted on October 3, 2011, Relator Donnelly moved to re-open his bankruptcy case on November 2, 2011.  (*See* Donnelly Bankr. Aff. ¶6.)  On November 14, 2011, the bankruptcy court entered an order reopening Relator Donnelly's bankruptcy case.  (*Id*. ¶7.)  After the case was reopened, Relator Donnelly filed a status report in the bankruptcy on November 15, 2011, which included the disclosure of the *qui tam* case.  (*Id*. ¶8.)  On

November 18, 2011, the bankruptcy trustee was re-appointed in Relator Donnelly's bankruptcy case. (*Id*. ¶9.) On November 22, 2011, Schedule B was amended to add the *qui tam* case as an asset of the bankruptcy estate. (*Id*. ¶10.)

**Mortgage Investors Corporation's Reply:**

Relators cite no evidence and cannot deny that, at the time the Motion for Summary Judgment was filed, Relator Donnelly had not scheduled or otherwise disclosed this Action, or any purported claim against any lender, in his bankruptcy. Relator Donnelly's belated scheduling of this Action is irrelevant to the standing inquiry. With respect to equitable estoppel, courts routinely hold that scheduling a claim after having one's standing challenged is too little, too late.

**Mortgage Investors Corporation's Statement No. 14:**

Relator Donnelly did disclose the existence of several other lawsuits to which he had been a party. *In re Donnelly*, Statement of Financial Affairs, Dkt. 1 at 10 (Ex. C).

**Relators' Response:**

Admit. The cases he disclosed were not subject to a court-ordered seal.

**Mortgage Investors Corporation's Reply:**

Statement No. 14 is uncontroverted.

**Mortgage Investors Corporation's Statement No. 15:**

Relator Donnelly's interest in this case was not administered in or abandoned by the bankruptcy estate. *In re Donnelly*, Petition, Schedule B, Dkt. 1 at 17-19 (Ex. C); Discharge of Debtor, Dkt. 20 (Ex. D).

**Relators' Response:**

Denied.  After the seal was lifted on October 3, 2011, Relator Donnelly moved to re-open his bankruptcy case on November 2, 2011.  (*See* Donnelly Bankr. Aff. ¶6.)  On November 14, 2011, the bankruptcy court entered an order reopening Relator Donnelly's bankruptcy case.  (*Id*. ¶7.)  After the case was reopened, Relator Donnelly filed a status report in the bankruptcy on November 15, 2011, which included the disclosure of the *qui tam* case.  (*Id*. ¶8.)  On November 18, 2011, the bankruptcy trustee was re-appointed in Relator Donnelly's bankruptcy case.  (*Id*. ¶9.)  On November 22, 2011, Schedule B was amended to add the *qui tam* case as an asset of the bankruptcy estate.  (*Id*. ¶10.)  Once the *qui tam* case was publicly disclosed as a potential asset in the bankruptcy, the Bankruptcy Trustee filed an application in the bankruptcy court seeking approval to employ counsel for Relator Donnelly in the *qui tam* case as the Trustee's Special Counsel to pursue the *qui tam* case on behalf of the Trustee.  (Bankruptcy, Doc. 34.)  The Bankruptcy Court entered an order granting that application on December 1, 2011.  (Bankruptcy, Doc. 37.)

**Mortgage Investors Corporation's Reply:**

Relators cite no evidence to dispute the fact that Relator Donnelly's interest in this Action was not administered in or abandoned by the bankruptcy estate. Accordingly, Statement No. 15 is uncontroverted.

**Mortgage Investors Corporation's Statement No. 16:**

Relator Donnelly received a no-assets discharge from bankruptcy on March 26, 2009. *In re Donnelly*, Discharge of Debtor, Dkt. 20 (Ex. D).

**Relators' Response:**

Admit that Relator Donnelly initially received a no-assets discharge from bankruptcy on March 26, 2009.  The bankruptcy has, however, been re-opened – after the seal on this case was lifted and before MIC, or any defendant to this case – accused Donnelly of any bad action with respect to his bankruptcy. Because his bankruptcy has been re-opened, any Relators' share recovered by Relator Donnelly will go to the bankruptcy trustee.  (*See* Donnelly Bankr. Aff. ¶11.)

**Mortgage Investors Corporation's Reply:**

Statement No. 16 is uncontroverted.

**Mortgage Investors Corporation's Statement No. 17:**

At the time of his bankruptcy filing, Relator Donnelly knew of the existence and pendency of this action. Complaint, ECF No. 1.

**Relators' Response:**

Admit. Although Relator Donnelly knew about the pendency of his *qui tam* case, it was his understanding that the seal prevented him from disclosing the *qui tam* case in his bankruptcy or in any other context. (*Id.* ¶¶4, 5.)

**Mortgage Investors Corporation's Reply:**

Statement No. 17 is uncontroverted.

**Mortgage Investors Corporation's Statement No. 18:**

Relator Donnelly falsely certified "under penalty of perjury that" his Schedule B was "true and correct" to the best of his knowledge, information and belief. *In re Donnelly*, Declaration Concerning Debtor's Schedules, Dkt. 1 at 43 (Ex. C).

**Relators' Response:**

Denied. Relator Donnelly did not disclose his *qui tam* action in his bankruptcy because it was his understanding that the seal prevented him from doing so. (*Id.*)

**Mortgage Investors Corporation's Reply:**

Relators cite no facts or evidence to suggest that Relator Donnelly's certification of Schedule B in his bankruptcy was not false, or that it was not certified "under penalty of perjury," or that the certification was not that Schedule B was "true and correct" to the best of his knowledge, information and belief.

14

Relator Donnelly's subjective reason for making such a false certification was not addressed in Statement No. 18.  Accordingly, Statement No. 18 is undisputed.

**Mortgage Investors Corporation's Statement No. 19:**

Relator Donnelly benefited from his failure to disclose this action in the bankruptcy. *In re Donnelly*, Discharge of Debtor, Dkt. 20 (Ex. D).

**Relators' Response:**

Denied.  Because his bankruptcy has been re-opened, any Relators' share recovered by Relator Donnelly will go to the bankruptcy trustee.  (*Id.* ¶11.)

**Mortgage Investors Corporation's Reply:**

Relators do not cite any evidence that Relator Donnelly did not benefit at the time of his prior discharge from his failure to disclose this Action in the bankruptcy.  Relators argue that the re-opening of the bankruptcy, and the apparent correction of Relator Donnelly's Bankruptcy Schedules, negate any benefit.  The fact remains, however, that Relator Donnelly did incur a benefit from his failure to disclose this Action, even if he has allegedly subsequently taken steps to return that benefit.  Accordingly, Statement No. 19 is uncontroverted.

| | |
|---|---|
| Dated: January 9, 2012 | Respectfully submitted, |
| TAYLOR ENGLISH DUMA LLP | WEINER BRODSKY SIDMAN KIDER PC |
| /s/ Matthew R. Rosenkoff<br>Matthew R. Rosenkoff, Esq.<br>Georgia Bar No. 842117<br>1600 Parkwood Circle – Suite 400<br>Atlanta, Georgia 30339<br>(770) 434-6868<br>(770) 434-7376 (Facsimile)<br>mrosenkoff@taylorenglish.com | /s/ Mitchel H. Kider<br>/s/ David M. Souders<br>/s/ Michael Y. Kieval<br>Mitchel H. Kider (*Pro Hac Vice*)<br>David M. Souders (*Pro Hac Vice*)<br>Michael Y. Kieval (*Pro Hac Vice*)<br>1300 19th Street, NW, Fifth Floor<br>Washington, DC 20036<br>Telephone: (202) 628-2000<br>Facsimile: (202) 628-2011<br>kider@wbsk.com<br>souders@wbsk.com<br>kieval@wbsk.com |

*Attorneys for Defendant Mortgage Investors Corporation*

## LOCAL RULE 7.1D CERTIFICATION

I hereby certify that the foregoing Statement complies with the font and point requirements of LR 5.1, to wit, this brief was prepared in Times New Roman font, 14-point type.

/s/ Matthew R. Rosenkoff
Matthew R. Rosenkoff, Esq.
Georgia Bar No. 842117
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle – Suite 400
Atlanta, Georgia 30339
(770) 434-6868
(770) 434-7376 (Facsimile)
mrosenkoff@taylorenglish.com