## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, VICTOR E. BIBBY and BRIAN J. DONNELLY, | * * * * | **CIVIL ACTION FILE NO.** |
| | * | **1:06-CV-0547-AT** |
| RELATORS/PLAINTIFFS, | * * | |
| vs. | * * | |
| WELLS FARGO BANK, NATIONAL ASSOCIATION (INC.), individually and as s/b/m with WELLS FARGO HOME MORTGAGE, INC., et al. | * * * * * | |
| DEFENDANTS. | * * | |

State of Georgia
County of DeKalb

### JANUARY 11, 2012 DECLARATION OF VICTOR E. BIBBY

The undersigned, Victor E. Bibby, declares as follows:

1.    I am of lawful age, competent to submit this declaration, which is based on

personal knowledge.

2.    I am a Relator in the above-captioned case.

3.    I am currently the Branch Manager and a Senior Loan Officer for

SouthPoint Financial Services, Inc. ("SouthPoint").  In those capacities I

originate mortgage loans, principally Veterans Administration Interest Rate Reduction Refinance Loans ("IRRRL" loans) for Veterans Mortgage Company, which is a division of SouthPoint. My office is located at 5955 Shiloh Road East, Suite 200, Alpharetta, GA 30005. I am licensed to originate loans in Georgia, Florida, Alabama, Tennessee, Texas, South Carolina, and North Carolina. SouthPoint originates both government guaranteed and conventional loans in approximately thirteen states, and employs approximately 25 loan officers in multiple locations.

4.     Formerly, I worked as President and CEO of U.S. Financial Services, Inc. ("U.S. Financial Services"). However, since December 2010, U.S. Financial Services has not originated mortgage loans. U.S. Financial Services does still have a division that operates as a mortgage direct marketing company. That division handles direct mail campaigns, printing, and advertising.

5.     U.S. Financial Services was in the business of originating VA IRRRL loans as a mortgage broker for ten years (2001-2010).

6.     As stated in the Second Amended Complaint ("SAC") I have been active in the mortgage business for fifteen years and have specialized in VA IRRRL loans for that entire period of time. I have been involved in several thousand VA IRRRL refinance transactions during my career. U.S. Financial Services

originated over 4,000 VA IRRRL loans during the time I worked for that company. I have sent VA IRRRL loans that U.S. Financial Services originated to at least 26 different lenders, including six of the defendants named in this action.

7.  I have reviewed the "motion to dismiss," "memorandum," and Burris Declaration, with exhibits, which were filed by defendant PNC Bank, N.A. ("PNC") in this action.

8.  Closing agents charge a fee for closing loans. This is true whether the loan is a VA IRRRL loan, an FHA loan, or a conventional loan. This is true whether the state involved is an "attorney" state, where lawyers close real estate loans, or a "title" state, where title companies close real estate loans. A "settlement fee" is, in the mortgage industry, the same thing as an "attorneys fee" – it is the charge for closing the loan. The fee charged for closing the loan is in addition to, and separate from, the fee charged for title work, whether denominated for "title search" or "title examination" (those two terms are used interchangeably). Closing agents do not close loans for free, without charge.

9.  While doing business as Veterans Mortgage Company, I brokered the refinance of the Evans loan (identified in Exhibit B to the SAC) which was

underwritten by National City Mortgage Co. (PNC's predecessor). "Veterans Mortgage" is listed on Line 801 and 802 of the HUD-1. The loan was closed on October 25, 2004, prior to the time I became aware of the illegal bundling of fees by lenders.

10.    As a part of the refinance transaction on the Evans loan, I was given a copy of the HUD-1 Settlement Statement at loan closing to keep in our business files as required by law.

11.    I have not received any loan documents from the Government or from a Government subpoena. I was not aware of a Government subpoena to PNC until I reviewed the "memorandum" filed with PNC's motion to dismiss. I have given loan information to the Government regarding this case, but I have not been given or received any loan documents or information from the Government. I have given loan information to the VA regarding this case, but I have not been given or received any loan documents or information related to the allegations of this case from the VA.

12.    Attached as Exhibit 1 is the Evans HUD-1 Settlement Statement referenced in Exhibit B to the SAC. The HUD-1 states on its face that $550 was charged for "title examination," but that nothing was charged for "attorney's fees" or "settlement or closing fee."

4

a.   As stated in the SAC, a charge of $550 for "title examination" in Georgia far exceeds the usual and customary charge for title work in Georgia, as alleged in the SAC.

b.   As stated in the SAC, in my experience, closing attorneys in Georgia do not actually charge anything close to $550 for title work on a VA IRRRL refinance loan.  There is nothing about a refinance of a VA loan which would necessitate such an exorbitant charge.

c.   As stated in paragraph 103 of the SAC, PNC inflated the charge for "title examination" to include its closing agent's settlement fee.  That allowed PNC to avoid having to pay the attorneys' fee itself.

d.   As stated in the SAC, that is the most common methodology utilized by lenders to shift closing and attorneys' fees on VA IRRRL loans from the lenders to the veterans.  (SAC ¶¶ 63, 67, 68.)

e.   Under the regulations and program rules, the HUD-1 Settlement Statement for the subject loan should have shown the actual charge for title work, and should have revealed that a settlement fee was in fact charged, but was paid out of closing ("POC") by the lender. (SAC ¶¶ 53, 61.)

f.   The HUD-1 Settlement Statement conceals the fact the settlement fee was paid by the veteran rather than by the lender.

13.   Attached hereto as Exhibit 2 is a document sent to us by Nat Hardwick, as Managing Partner of Morris Hardwick Schneider, on January 8, 2007.[1]  This Exhibit is an email attaching a copy of Morris Hardwick Schneider's fee sheet for the states of Georgia, Alabama, South Carolina, North Carolina and Tennessee.

a.   The fee sheet shows that Morris Hardwick Schneider charges $125 for "title examination" and $450 for "settlement/attorneys' fee" – *not* anything close to "$550" for title work and "$0" for settlement/attorneys' fees.

b.   The usual and customary charges for title work in Georgia, whether denominated "title search" or "title exam," have changed little or none in the past 15 years.  Closing attorneys such as Morris Hardwick Schneider (and Jackson and Hardwick) did not charge significantly more in 2004 than they did in 2007 or than they do in 2011.

---

[1] Morris Hardwick Schneider was formerly known as Jackson and Hardwick.  Nat Hardwick was employed with Jackson and Hardwick at the time of the closing of the Evans loan.  Jackson and Hardwick was the closing agent for the Evans loan.

14.   After the loan referenced on Exhibit B to the SAC was closed, the lender

was required to submit to the VA a "Report and Certification of Loan

Disbursement" (VA Form 26-1820, Line 24).  (SAC ¶¶ 52(i), 92.)

    a.   In that Form, the lender is required to certify that "the lender has not

imposed and will not impose any charges or fees against the veteran

borrower in excess of those permissible under the schedule set forth in

paragraph (d) of [38 C.F.R. § 36.4313]." (VA Form 26-1820,

Lender's Certification, Item 24B)  (emphasis added)).

    b.   In that Form, the lender is further required to certify that "the

undersigned lender understands and agrees that the lender is

responsible for the acts of agents identified in Item 24J . . ." (*Id.*, Item

24K (emphasis added).)

    c.   In that Form, the lender must further certify that "the loan conforms

with the applicable provisions of Title 38, U.S. Code and the

Regulations concerning guaranty or insurance of loans to veterans."

(*Id.*, Item 24L.)

15.   The various "audits" referenced in exhibits to PNC's Burris Declaration

and in PNC's Memorandum in Support involved VA's analysis of

"overcharges."  The gravamen of the SAC is not some generic

"overcharges" but the very specific practice of lenders bundling

unallowable fees (such as closing fees or attorneys' fees) *in to* allowable

fees to conceal the fact veterans were being illegally charged unallowable

fees.

16.    On January 7, 2010 the VA issued "Circular 26-10-01," a true and

accurate copy of which is attached hereto as Exhibit 3.  (The same

document is attached to the Burris Declaration as Exhibit 2.)

    a.    VA Circular 26-10-01 (January 7, 2010) makes it very clear that

although charges for "title examination" and "title insurance" are

allowable, "the veteran may only pay the **actual** amount charged by

the third party."  (Ex. 3, Paragraph (2)(b) (emphasis in the original);

*see also* Paragraph (2), reference to "reasonable and customary

amounts for certain itemized fees").)

    b.    Circular 26-10-01 also makes it clear "if an origination fee is charged,

lenders may NOT assess veterans any other fees on VA-guaranteed

loans, other than the allowable fees noted in subparagraph (b) above."

(Ex. 3, Paragraph (2)(c) (emphasis in original).)

8

c.   Circular 26-10-01 also makes it clear "the lender may NOT charge the veteran for attorney's fees associated with settlement." (Ex. 3, Paragraph (2)(d) (emphasis in original).)

d.   Circular 26-10-01 also makes it clear that as to any fees for "title exam" those are allowed "so long as" they "reflect the actual cost and are reasonable customary." (Ex. 3, Paragraph (2)(d) (emphasis in original).)

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed this _11th_ day of January, 2012, in Atlanta Georgia, U.S.A.

_____
Victor E. Bibby

I, _____, a notary public for the county and state, certify that Victor E. Bibby, whose name is signed to the foregoing Declaration and who acknowledged before me on this day that, having read the contents of the foregoing Declaration, he executed the same voluntarily.

Sworn to and subscribed before
me this _11th_ day of January, 2012.

_____
Notary Public