## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, | * | **CIVIL ACTION FILE NO.** |
| VICTOR E. BIBBY and BRIAN J. | * | |
| DONNELLY, | * | |
| | * | **1:06-CV-0547-AT** |
| RELATORS/PLAINTIFFS, | * | |
| | * | |
| vs. | * | |
| | * | |
| WELLS FARGO BANK, NATIONAL | * | |
| ASSOCIATION (INC.), individually and | * | |
| as s/b/m with WELLS FARGO | * | |
| HOME MORTGAGE, INC., et al. | * | |
| | * | |
| DEFENDANTS. | * | |

State of Georgia
County of DeKalb

### JANUARY 17, 2012 DECLARATION OF VICTOR E. BIBBY

The undersigned, Victor E. Bibby, declares as follows:

1.  I am of lawful age, competent to submit this declaration, which is based on personal knowledge.

2.  I am a Relator in the above-captioned case.

3.  I am currently the Branch Manager and a Senior Loan Officer for SouthPoint Financial Services, Inc. ("SouthPoint"). In those capacities I

originate mortgage loans, principally Veterans Administration Interest Rate

Reduction Refinance Loans ("IRRRL" loans) for Veterans Mortgage

Company, which is a division of SouthPoint. My office is located at 5955

Shiloh Road East, Suite 200, Alpharetta, GA 30005. I am licensed to

originate loans in Georgia, Florida, Alabama, Tennessee, Texas, South

Carolina, and North Carolina. SouthPoint originates both government

guaranteed and conventional loans in approximately thirteen states, and

employs approximately 25 loan officers in multiple locations.

4.     Formerly, I worked as President and CEO of U.S. Financial Services, Inc.

("U.S. Financial Services"). However, since December 2010, U.S. Financial

Services has not originated mortgage loans. U.S. Financial Services does

still have a division that operates as a mortgage direct marketing company.

That division handles direct mail campaigns, printing, and advertising.

5.     U.S. Financial Services was in the business of originating VA IRRRL loans

as a mortgage broker for ten years (2001-2010).

6.     As stated in the Second Amended Complaint ("SAC") I have been active in

the mortgage business for fifteen years and have specialized in VA IRRRL

loans for that entire period of time. I have been involved in several thousand

VA IRRRL refinance transactions during my career. U.S. Financial Services

originated over 4,000 VA IRRRL loans during the time I worked for that company. I have sent VA IRRRL loans that U.S. Financial Services originated to at least 26 different lenders, including six of the defendants named in this action.

7.  I have reviewed the "motion to dismiss" and "memorandum" which were filed by defendant First Tennessee Bank National Association ("FTN") in this action.

8.  Closing agents charge a fee for closing loans. This is true whether the loan is a VA IRRRL loan, an FHA loan, or a conventional loan. This is true whether the state involved is an "attorney" state, where lawyers close real estate loans, or a "title" state, where title companies close real estate loans. A "settlement fee" is, in the mortgage industry, the same thing as an "attorneys fee" – it is the charge for closing the loan. The fee charged for closing the loan is in addition to, and separate from, the fee charged for title work, whether denominated for "title search" or "title examination" (those two terms are used interchangeably). Closing agents do not close loans for free, without charge.

9.  While doing business as Veterans Mortgage Company, I brokered the refinance of the Breeden loan (identified in Exhibit B to the SAC) which

was underwritten by First Horizon Home Loan Corp. (FTN's predecessor). "Veterans Mortgage Company" is listed on Lines 801 and 802 of the HUD-1. The loan was closed on February 15, 2004, prior to the time I became aware of the illegal bundling of fees by lenders.

10.    As a part of the refinance transaction on the Breeden loan, I was given a copy of the HUD-1 Settlement Statement at loan closing to keep in our business files as required by law.

11.    I have not received any loan documents from the Government or from a Government subpoena. I was not aware of a Government subpoena to FTN until I reviewed the "memorandum" filed with FTN's motion to dismiss. I have given loan information to the Government regarding this case, but I have not been given or received any loan documents or information from the Government. I have given loan information to the VA regarding this case, but I have not been given or received any loan documents or information related to the allegations of this case from the VA.

12.    Attached as Exhibit 1 is the Breeden HUD-1 Settlement Statement referenced in Exhibit B to the SAC. The HUD-1 states on its face that $640 was charged for "title examination," but that nothing was charged for "attorney's fees" or "settlement or closing fee."

4

a.   As stated in the SAC, a charge of $640 for "title examination" in Georgia far exceeds the usual and customary charge for title work in Georgia, as alleged in the SAC.

b.   As stated in the SAC, in my experience, closing attorneys in Georgia do not actually charge anything close to $640 for title work on a VA IRRRL refinance loan.  There is nothing about a refinance of a VA loan which would necessitate such an exorbitant charge.

c.   As stated in paragraph 104 of the SAC, FTN inflated the charge for "title examination" to include its closing agent's settlement fee.  That allowed FTN to avoid having to pay the attorneys' fee itself.

d.   As stated in the SAC, that is the most common methodology utilized by lenders to shift closing and attorneys' fees on VA IRRRL loans from the lenders to the veterans.  (SAC ¶¶ 63, 67, 68.)

e.   Under the regulations and program rules, the HUD-1 Settlement Statement for the subject loan should have shown the actual charge for title work, and should have revealed that a settlement fee was in fact charged, but was paid out of closing ("POC") by the lender. (SAC ¶¶ 53, 61.)

f.   The HUD-1 Settlement Statement conceals the fact the settlement fee
     was paid by the veteran rather than by the lender.

g.   The HUD-1 Settlement Statement shows on its face at Line 801 that a
     "Loan Origination Fee" of $1,622 was charged to the veteran.  That
     "Loan Origination Fee" is 1% of the "Payoff" amount of $162,287.83

13.  After the loan referenced on Exhibit B to the SAC was closed, the lender
     was required to submit to the VA a "Report and Certification of Loan
     Disbursement," a true and accurate copy of which is attached hereto as
     Exhibit 2 (VA Form 26-1820, Line 24,).  (SAC ¶¶ 52(i), 92.)

a.   In that Form, the lender is required to certify that "the lender has not
     imposed and will not impose any charges or fees against the veteran
     borrower in excess of those permissible under the schedule set forth in
     paragraph (d) of [38 C.F.R. § 36.4313]." (VA Form 26-1820,
     Lender's Certification, Item 24B)  (emphasis added)).

b.   In that Form, the lender is further required to certify that "the
     undersigned lender understands and agrees that the lender is
     responsible for the acts of agents identified in Item 24J . . ." (*Id.*, Item
     24K (emphasis added).)

c.    In that Form, the lender must further certify that "the loan conforms with the applicable provisions of Title 38, U.S. Code and the Regulations concerning guaranty or insurance of loans to veterans." (*Id.*, Item 24L.)

14.   On January 7, 2010 the VA issued "Circular 26-10-01," a true and accurate copy of which is attached hereto as Exhibit 3.

a.    VA Circular 26-10-01 (January 7, 2010) makes it very clear that although charges for "title examination" and "title insurance" are allowable, "the veteran may only pay the **actual** amount charged by the third party." (Ex. 3, Paragraph (2)(b) (emphasis in the original); *see also* Paragraph (2), reference to "reasonable and customary amounts for certain itemized fees").)

b.    Circular 26-10-01 also makes it clear "if an origination fee is charged, lenders may NOT assess veterans any other fees on VA-guaranteed loans, other than the allowable fees noted in subparagraph (b) above." (Ex. 3, Paragraph (2)(c) (emphasis in original).)

c.    Circular 26-10-01 also makes it clear "the lender may NOT charge the veteran for attorney's fees associated with settlement." (Ex. 3, Paragraph (2)(d) (emphasis in original).)

d.     Circular 26-10-01 also makes it clear that as to any fees for "title

exam" those are allowed "so long as" they "reflect the actual cost and

are reasonable customary."  (Ex. 3, Paragraph (2)(d) (emphasis in

original).)

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the

foregoing is true and accurate to the best of my knowledge and belief.

Executed this _17th_ day of January, 2012, in Atlanta Georgia, U.S.A.

_____
Victor E. Bibby

I, _____, a notary public for the county and
state, certify that Victor E. Bibby, whose name is signed to the foregoing
Declaration and who acknowledged before me on this day that, having read the
contents of the foregoing Declaration, he executed the same voluntarily.

Sworn to and subscribed before
me this _17th_ day of January, 2012.

_____
Notary Public

8