**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, | * | |
| VICTOR E. BIBBY and BRIAN J. | * | **CIVIL ACTION FILE NO.** |
| DONNELLY, | * | |
| | * | **1:06-CV-0547-AT** |
| RELATORS/PLAINTIFFS, | * | |
| | * | |
| vs. | * | |
| | * | |
| WELLS FARGO BANK, NATIONAL | * | |
| ASSOCIATION (INC.), individually and | * | |
| as s/b/m with WELLS FARGO | * | |
| HOME MORTGAGE, INC., et al. | * | |
| | * | |
| DEFENDANTS. | * | |

**RELATORS' SURREPLY TO DEFENDANT
MORTGAGE INVESTORS CORPORATION'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

It's hard to know where to begin in replying to Mortgage Investors

Corporation's ("MIC's") Reply to its Summary Judgment Motion.  MIC's Reply

hardly seems to be related to MIC's initial motion.  In fact, the overriding theme of

MIC's Reply is that MIC regrets filing a motion for summary judgment and now

wants to convert its summary judgment motion into a motion to dismiss.  Of

course, MIC cannot cite to any support for its attempt to undo its own ill-advised

motion, because none exists.  MIC is stuck with the overwhelming evidence

Relators have submitted in opposition.

After having first been the party to insist on admitting evidence outside the pleadings, MIC requests that the Court ignore *all* of Relators' evidence and instead rely only on what is contained within the Second Amended Complaint (SAC). (Reply 2.)  Because this is a motion for summary judgment, however, Relators are entitled to submit evidence, beyond the four corners of the SAC, which *cannot* be ignored.[1]  In fact, it is to be construed with "all justifiable inferences" drawn in Relators' favor, *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 850 (11th Cir. 2000) (citation omitted), and "disregarding all evidence favorable to the moving party."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## I.   The Example Loan Was Dirty.

Relators have produced evidence to establish that the Belless loan, referenced in Exhibit B to the SAC, was dirty because the amount charged for title examination was not reasonable and customary.[2]  MIC argues, despite Relators'

---

[1] "The formal issues framed by the pleadings are not controlling on a motion for summary judgment; the court must consider the issues presented by the other material offered by the parties on the motion to determine whether the Rule 56 request should be granted."  10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2721 (3d ed.).

[2] MIC makes much of the fact the HUD-1 for the Belless closing listed the attorneys' fees as "POC" (paid outside of closing).  That won't help MIC rehabilitate its flawed motion for summary judgment.  Because the title examination fee for the Belless loan exceeded the reasonable and customary fee (as the SAC alleges (SAC ¶ 102) and Relators' evidence *proves*), MIC uncontrovertibly violated the terms of the IRRRL program.

submission of overwhelming evidence to the contrary, that in the Belless loan, the $450 charge for title examination was "bona fide and reasonable."  (Reply 2.) Relators' evidence not only raises a genuine issue of material fact as to that MIC contention, in truth, Relators' evidence absolutely *proves* the contrary—charging $450 for a title examination for a VA IRRRL refinance loan in Georgia is *far above* the reasonable and customary rate *and* indicative of fee shifting.  Indeed, $450 is far above what MIC's *own closing agent* advertises he charges.  (Bibby Aff. ¶¶ 31, 33.)

As discussed in detail in Relators' Brief in opposition, Relators submitted the following evidence in support of their contentions:  (1) the affidavits of Relators Victor Bibby and Brian Donnelly (Bibby Aff. ¶¶ 8, 18, 21, 22, 25, 26, 30; Donnelly Aff. ¶¶ 10-14); (2) the affidavit of attorney Peter Todd (Todd Aff. ¶¶ 5-9); (3) the affidavit of Sarah Spear, which attaches the fee sheets showing the advertised rate for title examinations from 20 Georgia title examiners (Spear Aff. ¶¶ 5-25); (4) a survey from Bankrate, which reports Georgia closing costs (Bibby Aff. ¶ 24); and (5) the fee sheet from MIC's closing attorney, Pleska, which contradicts the testimony MIC submitted in this case.  (Bibby Aff. ¶¶ 31, 33.)

Any *one* of those five items would be enough to create a genuine issue of material fact and thereby defeat MIC's summary judgment motion.  In truth, each

of the five is really uncontestable.  Each contradicts MIC's evidence; each affirmatively demonstrates that $450 is *not* a reasonable and customary fee for a VA IRRRL closing in Georgia *and that* charging the veteran such an excessive fee is, at a minimum, compelling evidence of the very kind of illegal fee shifting alleged by the SAC.  (Bibby Aff. ¶¶ 11(b), 18, 33(c), 36.)

MIC claims Relators' evidence "confuses" what a title examination, title abstract, and title search *really* involves.  (Reply 5-7.)  MIC is dead wrong.  (*See* Todd Aff. ¶¶ 4-9.)  More to the point, given the motion at issue is one for summary judgment, MIC's attempt to craft an alternative explanation for the affiants' clear and explicit testimony and the documents supporting that testimony ignores the standard of review applicable to motions for summary judgment.  MIC cannot, at this stage, even try to explain away Relators' evidence:  that evidence is *assumed* to be true.  If there's to be any "interpretation" of Relators' evidence, Relators' interpretation prevails.[3]

---

[3] MIC can pretend all it wants that the SAC alleges fee shifting only by inflating title examination charges, but any reading of the SAC belies that pretension.  That particular method of cheating was a common one, but only one method, as the SAC makes clear.  (SAC ¶¶ 39, 66, 68, 69, 90.)  MIC and its closing agents also shift fees by inflating title insurance premiums above the usual and customary rate.  (Bibby Aff. Ex. 9-A.)  Relators compiled MIC loans closed by Pleska where the use of both methods for fee shifting are apparent.  (Bibby Aff. ¶ 33(b)-(c).)  MIC offers no arguments disputing Relators' claim that lenders such as MIC also

MIC contends the Court should ignore the Bibby and Donnelly Affidavits to the extent they refer to closing agent Pautauros and any of MIC's other agents, which testimony MIC argues is inadmissible heresay.[4]  But MIC does not—and on motion for summary judgment, cannot—dispute the accuracy of their testimony, which proves MIC's own admitted illegally bundling and shifting fees.[5]

Specifically, Relator Donnelly's Affidavit details an exchange with Paula Pautauros of National Title Network, Inc. ("NTN"), a closing *agent* for MIC's VA IRRRL loans.  (Donnelly Aff. ¶ 11.)  As recounted in the Donnelly Affidavit, Ms. Pautauros explained how NTN minimizes the VA unallowable fees which the lender must pay and passed most of that cost on to the veteran, meaning MIC used the veteran's loan proceeds to pay their closing expenses.  (*Id.* ¶ 11(b).)[6]

---

cheated in other ways, thus ignoring material allegations of the SAC, which conduct would defeat a motion to dismiss, had MIC filed one.

[4] That argument fails for multiple reasons.  First, it ignores that the closing agents were acting as MIC's agents.  Fed. R. Evid. 801(d)(2)(D).  Second, this testimony proves the closing agent's state of mind and intent.  Fed. R. Evid. 803(3).  Third, the testimony is not offered for the truth the transaction was unlawful but to prove that the agents had notice or knowledge that this illegal fee shifting was occurring. Fed. R. Evid. 801(c).

[5] Relators can depose MIC's closing agents when discovery begins.  Because MIC filed its summary judgment before discovery commenced, Relators have not yet had an opportunity to take any depositions.

[6] In addition to the NTN evidence, MIC does not dispute Relators' evidence about MIC's North Carolina closing agents Thorp & Clarke.  (Bibby Aff. ¶ 35.)  As detailed in Relator Bibby's Affidavit, Thorp & Clarke is *still* "bundling" attorneys' fees/settlement fees in to the charge for title examinations and charging in excess

MIC also makes the incredible argument that the fee sheets Relators obtained from Pleska & Associates are "irrelevant" and this Court should simply ignore them.  (Reply 7-8.)  That argument is unsurprising:  those fee sheets devastate MIC's motion—and the credibility of MIC and of its closing agent Pleska.  At a minimum, Relators' evidence creates a jury question about the veracity of the Pleska testimony submitted by MIC and whether in the subject example loan MIC illegally shifted fees to the veteran.

To make a totally unfounded claim like "Relators submit no evidence to contradict the 2004 rates for Pleska & Associates" (Reply 8), MIC ignores the evidence, such as the Affidavit of Peter Todd.  Todd, an attorney, has worked as a title examiner in Georgia for almost *thirty* years.  (Todd Aff. ¶ 4.)  His testimony that a charge of $450 for title examination from 1985 to date is excessive is directly at odds with MIC's false characterization of the evidence.  (*Id.* at ¶ 9.)  MIC may not like the evidence, but it owes a duty to this Court to at least not ignore and misrepresent it.

---

of the reasonable and customary fee for title work in North Carolina.  (*Id.* ¶ 35.)
MIC also does not dispute Relators' evidence that another MIC closing agent,
Service Link, has also admitted to fee shifting.  (Bibby Aff. ¶ 36.)  This evidence
alone proves that MIC has engaged in behavior that violates the VA IRRRL
regulations.

In a totally circular argument, MIC next contends that the charge for title examination on the example loan was the actual amount Pleska charged for that work, and that insulates MIC from liability.  (Reply 8-9.)  That argument frankly makes no sense.  First, Relators' evidence establishes, at a minimum, a jury question whether MIC charged the reasonable and customary amount for title examination; if not, MIC violated the regulations and rules, contrary to its certifications.  Pleska's own fee sheets prove MIC's assertion is not accurate.  (Bibby Aff. ¶¶ 31, 33.)  That alone is enough to defeat a motion for summary judgment.  Second, Relators' evidence proves that in truth what MIC did was to compensate its closing agent by inflating the title examination charge, thus shifting from MIC to the veteran the cost for closing fees—just as the SAC alleged.  (SAC ¶ 102.)

## II.   The SAC Alleged Relators Had More Than One Example of MIC's Fraud.

MIC makes the illogical and factually incorrect argument that Relators' entire case is based on an allegation that MIC was guilty of fraud only as to the one loan referenced on Exhibit B to the SAC.  (Reply 10.)  Nothing could be further from the truth.  The SAC *very specifically alleged* that other IRRRL loans like those identified in Exhibit B also went into foreclosure or default and that false claims were made on those loans.  (SAC ¶ 111.)  Even prior to discovery, Relators

have at least 64 examples of other dirty MIC loans, and discovery will uncover many more.  (Bibby Aff. Ex. 9-A, 9-B.)  MIC's Reply simply ignores these 64 additional examples and the testimony explaining how MIC committed its illegal fee shifting in VA IRRRL loans.  (Bibby Aff. ¶ 28.)  But then, MIC didn't have much choice but to ignore Relators' evidence:  it is overwhelming.

## III.   MIC Cannot Create or Revert to a Motion to Dismiss in its Reply Brief.

In its Reply Brief, MIC makes, for the first time, a confused and nearly incomprehensible argument that Relators cannot rely on anything but the SAC to respond to MIC's motion for summary judgment.  That is contrary to the Rules and the law.  Relators were entitled to, and properly did, respond to MIC's motion for summary judgment by submitting evidence.  Relators' evidence does obliterate MIC's arguments, but that truth does not allow MIC to pretend it never filed a motion for summary judgment, or really meant to file merely a motion to dismiss.[7]

---

[7] MIC attempts in its Reply Brief to raise an entirely new issue, arguing Relators have failed to establish that all of the dirty loans give rise to "claims" under the FCA.  First, a party may not raise all-new arguments in reply.  *See Fisher v. Ciba Specialty Chem. Corp.,* 238 F.R.D. 273, 316 n.89 (S.D. Ala. 2006); *Martinez v. Weyerhaeuser Mortgage Co.,* 959 F.Supp. 1511, 1515 (S.D. Fla. 1996); *Newsome v. Barnhart,* 444 F. Supp. 2d 1195, 1203 n.7 (M.D. Ala. 2006).  Second, that appears to be yet another MIC attempt to redraft its motion for summary judgment—to alternatively seek partial summary judgment as to *some* claims stated in the SAC—presumably claims that default without foreclosure rendered false claims choate.  That too is improper in a reply brief.  Apparently MIC got this idea from motions to dismiss filed by other defendants.  In response, Relators need

## IV.   Relator Donnelly's Personal Bankruptcy Does Not Defeat Standing nor Limit His Recovery.

MIC's standing argument mischaracterizes the applicable law.  In *Barger v. City of Cartersville, Ga.*, the Eleventh Circuit held that the bankruptcy trustee was "the real party in interest" and had "exclusive standing to assert any . . . claims." 348 F.3d 1289, 1292 (11th Cir. 2003).  The court further held that the trustee succeeded the debtor's position as a plaintiff pursuant to Federal Rule of Civil Procedure 25(c), which states that "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom interest is transferred to be substituted in the action or joined with the original party."  *Id*. at 1292-93.  The Eleventh Circuit held that since the district court never directed the trustee to substitute for the debtor, it was proper for the trustee to simply take the debtor's place in the litigation.  *Id.* at 1293. Because the bankruptcy trustee has similarly taken Relator Donnelly's position in this litigation, MIC's standing argument fails.

---

not respond to this improperly raised argument and instead rely upon and incorporate herein arguments made in Relators' response briefs discussing this "failure to state a FCA claim" subject.  (*See* ECF No. 235, R. Resp. to CHL's Mot. to Dismiss Part IX; ECF No. 252, R. Resp. to FTN's Mot. to Dismiss Parts II, III; ECF No. 238, R. Resp. to WF's Mot. to Dismiss Parts V, VI; ECF No. 248, R. Resp. to SunTrust's Mot. to Dismiss Part III; ECF No. 244, R. Resp. to PNC's Mot. to Dismiss Part II; ECF No. 240, R. Resp. to JPMC's Mot. to Dismiss Part IV.B.)

MIC also reargues judicial estoppel, but contrary to its prior argument, MIC now agrees that the bankruptcy trustee is not subject to equitable estoppel. (Reply 14.) Defeated, MIC makes the new claim that the bankruptcy trustee is limited to recovering the amount of the creditors' claim. (*Id*.) MIC cites no authority for that new claim, and provides no argument in support of it. Although it is not exactly clear, that appears to be some sort of new equitable claim relating to Relator Donnelly.

As explained in detail in response to MIC's motion, to be successful in its judicial estoppel argument as it relates to Donnelly, MIC must show that Donnelly's actions "were calculated to make a mockery of the judicial system." The equities in this case, however, are in Donnelly's favor and his claims should not be barred. Donnelly did not disclose the *qui tam* claim because of the seal; when the seal was lifted, he did so—before MIC or any defendant ever raised the issue. When he initially filed for bankruptcy, Donnelly was unaware that he could have requested a partial lifting of the seal as an option. (Donnelly Bankr. Aff. ¶ 4.) Relator Donnelly was doing his best to comply with an existing Court Order and uphold his duty to keep the *qui tam* case confidential. (*Id.* ¶¶ 4-5.)

Respectfully submitted this 19th day of January, 2012.


BUTLER, WOOTEN & FRYHOFER, LLP


BY: s/ James E. Butler, Jr.
JAMES E. BUTLER, JR.
  jim@butlerwooten.com
  Georgia Bar No. 099625
LEIGH MARTIN MAY
  leigh@butlerwooten.com
  Georgia Bar No. 473389
BRANDON L. PEAK
  brandon@butlerwooten.com
  Georgia Bar No. 141605
SAMANTHA A. DiPOLITO
  samantha@butlerwooten.com
  Georgia Bar No. 203011
2719 Buford Highway
Atlanta, Georgia  30324
(404) 321-1700
(404) 32101713 Fax

WILBANKS & BRIDGES, LLP


BY: s/ Marlan B. Wilbanks
MARLAN B. WILBANKS
  mbw@wilbanks-bridgeslaw.com
  Georgia Bar No. 758223
TY M. BRIDGES
  tmb@wilbanks-bridgeslaw.com
  Georgia Bar No. 081500
3414 Peachtree Street, N.E., Ste. 1075
Atlanta, Georgia 30326
(404) 842-1075
(404) 842-0559 Fax


PHILLIPS & COHEN


BY: s/ Mary Louise Cohen
MARY LOUISE COHEN
  mlc@phillipsandcohen.com
  DC Bar No. 298299
TIMOTHY McCORMACK
  tmccormack@phillipsand cohen.com
  DC Bar No. 493692
2000 Massachusetts Avenue, N.W.
Washington, DC 20036
(202) 833-4567
(202) 833-1815 Fax


Attorneys for Relators/Plaintiffs

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in Times New Roman, 14 point font.

s/ James E. Butler, Jr.
JAMES E. BUTLER, JR.
  jim@butlerwooten.com
  Georgia Bar No. 099625
Butler, Wooten & Fryhofer, LLP
2719 Buford Highway
Atlanta, Georgia  30324
(404) 321-1700
(404) 321-1713 Fax

## CERTIFICATE OF SERVICE

This is to certify that on January 19, 2012, I electronically filed RELATORS' SURREPLY TO DEFENDANT MORTGAGE INVESTORS CORPORATION'S MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

*Bank of America Corporation:*
Nancy H. Baughan
Robert M. Brennan
Scott E. Zweigel
Parker, Hudson, Rainer
       & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, GA  30303
*-and-*
Jonathan Rosenberg
William J. Sushon
Asher L. Rivner
O'Melveny & Myers LLP
7 Times Square
New York, NY  10036

*CitiMortgage:*
Christopher J. Willis
Burt M. Rublin
Diana L. Spagnuola
Ballard Spahr LLP
999 Peachtree Street, Suite 1000
Atlanta, GA 30309

*Countrywide and Bank of America, N.A.*
Richard K. Hines V
Nelson Mullins Riley & Scarborough
201 17th Street, Suite 1700
Atlanta, Ga. 30363
*-and-*
Robert J. Conlan, Jr.
Mark P. Guerrera
Mark D. Hopson
Sean C. Griffin
Meghan D. Berroya
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC  20005
*-and-*
Douglas A. Axel
Sidley Austin LLP
555 West Fifth Street
Los Angeles, CA  90013

*SunTrust:*
William H. Jordan
Michael L. Brown
Van A. Anderson
Alston & Bird LLP
1201 West Peachtree St,
Atlanta, GA 30309

*First Tennessee:*
Irene Freidel
Jennifer J. Nagle
K&L Gates LLP
One Lincoln Street
Boston, MA  02111
-and-
Christopher S. Anulewicz
Geremy Gregory
Balch & Bingham LLP
30 Ivan Allen, Jr. Blvd., N.W.
Suite 700
Atlanta, GA  30308

*GMAC:*
H. Wayne Phears
McGuire Woods LLP
Suite 2100, Promenade II
1230 Peachtree Street NE
Atlanta, GA 30309

*New Freedom:*
Thomas Barton
Aaron P.M. Tady
Coles Barton LLP
9 Lumpkin Street, Suite 200
Lawrenceville, GA  30046

*PNC:*
M. Robert Thornton
Christopher C. Burris
Catherine M. O'Neil
Jonathan R. Chally
King & Spalding
1180 Peachtree Street, N.E.
Atlanta, GA  30309

*Mortgage Investors:*
Matthew R. Rosenkoff
Taylor English Duma LLP
1600 Parkwood Circle – Suite 400
Atlanta, GA 30339
-and-
Mitchel H. Kider
David M. Souders
Michael Y. Kieval
Scott D. Burke
Weiner Brodsky Sidman Kider PC
1300 19th Street, NW, Fifth Floor
Washington, DC 20036

*Wells Fargo:*
David. L. Balser
McKenna Long  Aldridge LLP
303 Peachtree Street, Suite 5300
Atlanta, GA  30308
-and-
Amy P. Williams
K & L Gates, LLP
214 North Tryon Street, 47th Floor
Charlotte, NC 28202
-and-
Robert J. Sherry
K & L Gates, LLP
1717 Main Street, Suite 2800
Dallas, TX  75201

*United States of America:*
Daniel A. Caldwell
Assistant U.S. Attorney
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA  30303

*JPMorgan:*                                  -and-

William V. Custer                            Shannon Rose Selden
Jennifer B. Dempsey                          Andrew J. Ceresney
Damon J. Whitaker                            Mary Beth Hogan
Bryan Cave LLP                               Courtney M. Dankworth
One Atlantic Center, Fourteenth Floor        Debevoise & Plimpton LLP
1201 W. Peachtree St., N.W.                  919 Third Avenue
Atlanta, GA 30309                            New York, NY  10022


      I certify that I have mailed by United States Postal Service the document to the following:

*United States of America:*                  *Irwin Mortgage:*

Alan S. Gale                                 Robert B. Berner
United States Department of Justice          Bailey Cavalieri LLC
P.O. Box 261                                 Kettering Tower
Ben Franklin Station                         40 North Main Street, Suite 1250
Washington, DC  20044                        Dayton, OH 45423
                                             *(Courtesy Copy Only)*


      This 19th day of January, 2012.

                        BY: s/  James E. Butler, Jr.
                        JAMES E. BUTLER, JR.
                          Georgia Bar No. 099625
                        LEIGH MARTIN MAY
                          Georgia Bar No. 473389
                        BRANDON L. PEAK
                          Georgia Bar No. 141605
                        SAMANTHA A. DiPOLITO
                          Georgia Bar No. 203011
                        Butler, Wooten & Fryhofer, LLP
                        2719 Buford Highway
                        Atlanta, Georgia 30324
                        (404) 321-1700
                        (404) 321-1713 Fax