THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, | § | |
| VICTOR E BIBBY and BRIAN J. | § | CIVIL ACTION FILE NO. |
| DONNELLY, | § | |
| | § | 1:06-CV-0547-AT |
| RELATORS/PLAINTIFFS, | § | |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO BANK, NATIONAL | § | |
| ASSOCIATION (INC.), individually and | § | |
| as s/b/m with WELLS FARGO | § | |
| HOME MORTGAGE, INC; *et al.* | § | |
| | § | |
| DEFENDANTS. | § | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF
FIRST TENNESSEE BANK NATIONAL ASSOCIATION TO
DISMISS RELATORS' SECOND AMENDED COMPLAINT**

Defendant First Tennessee Bank National Association s/b/m to First Horizon Home Loan Corporation ("First Tennessee") respectfully submits this Reply Memorandum in Support of its Motion to Dismiss the Second Amended Complaint ("SAC") of relators Victor Bibby and Brian Donnelly ("relators").

## I.    INTRODUCTION

In opposition to First Tennessee's Motion to Dismiss, relators have taken a fourth stab at trying to plead viable legal claims against First Tennessee.  Indeed, in sheer disregard for the well-established principle that plaintiffs may not amend their complaints in briefing motions to dismiss, relators have taken a crack at doing just that.  They have submitted *151 pages* of argument, declarations, and exhibits in opposition to First Tennessee's Motion, most of which is neither pled, referenced in, nor attached to the SAC.  This is entirely impermissible.  *See In re Androgel Antitrust Litigation (No. II)*, 687 F. Supp. 2d 1371, 1381 (N.D. Ga. 2010) ("[A] plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss"); *see also Keh v. Americus and Sumter County Hosp.*, 377 Fed. Appx. 861, 866 (11th Cir. 2010) (holding that "[a]s a general rule, '[t]he scope of the review [on a motion to dismiss] must be limited to the four corners of the complaint" and affirming lower court's refusal to consider a declaration submitted on a motion to dismiss where its contents were disputed);

*Lee v. Sec. Check, LLC*, 2009 WL 3790455, at *2 (M.D. Fla. Nov. 9, 2009) (refusing to consider exhibits and factual allegations submitted by the plaintiff in opposition to motion to dismiss).  First Tennessee disputes the contents of these submissions and requests that the Court disregard any and all such allegations and materials that do not already appear in the text of, or the attachments to, the SAC.

*Even if* the Court were to consider these additional materials as if the complaint had been amended for a fourth time,[1] relators have still failed to state a claim against First Tennessee under the False Claims Act ("FCA") that satisfies Federal Rule of Civil Procedure 8(a), let alone 9(b).  Specifically, even with the benefit of 151 pages of additional material, the SAC still contains no well-pleaded factual allegations – as opposed to unsupported legal conclusions – regarding the gravamen of an FCA claim, namely the purported *submission of false claims* by First Tennessee to the government.

Indeed, Victor Bibby even concedes in his filing that he has "not been given or received any loan documents or information related to the allegations of this

---

[1]     First Tennessee submits contemporaneously herewith a Notice of Objections to the January 17, 2012 Declaration of Victor E. Bibby submitted in support of relator's Opposition (Docket No. 254).  Should this Court consider the Bibby Declaration in deciding this Motion, First Tennessee requests that such consideration be subject to a review and determination as to its Notice of Objections.

case from the Veterans Administration." January 17, 2012 Declaration of Victor

E. Bibby ("Bibby Decl.") (Docket No. 254) at ¶ 11. While Mr. Bibby intends this

statement to support the Court's jurisdiction over this case, it reveals the complete

lack of information in relators' possession regarding the submission of allegedly

false claims to the VA by First Tennessee. Whatever information relators have

appears to bear only, if at all, on the origination of VA IRRRLs, but they have no

information that bears on the crux of their claims, that is, the submission of claims

to the VA. In fact, even the one "example" loan that relators rely upon to prop up

their claim against First Tennessee demonstrates on its face that First Tennessee

*did not own the VA IRRRL* when the purported false claim was made to the VA.

The documents submitted by relators to the Court show that the loan was owned by

MidFirst Bank prior to the foreclosure of the mortgage.

       After six years and four bites at the apple, and having still failed to satisfy

their obligations to put First Tennessee on sufficient notice of its purported

wrongdoing and to provide the detail required by Rule 9(b), "[t]his misguided

journey must come to an end." *United States ex rel. Wilson v. Kellogg, Brown &*

*Root, Inc.,* 525 F.3d 370, 373 (4th Cir. 2008).[2]

## II.    ARGUMENT

### A.    Relators Have Not Pled Facts – Sufficient To Satisfy Either Rule 8(a) or 9(b) – That Would Show The Submission By First Tennessee To The VA Of A *Single* "False" VA IRRRL Claim.

"In the post-*Twombly* world, the complaint is judged as it is and not on whether a set of facts could be imagined that would support the claim." *In re Androgel Antitrust Litigation (No. II)*, 687 F. Supp. 2d at 1381.  Here, relators mistakenly believe that they can sustain an FCA claim by reciting factual allegations that purport to tell the first half of their story (as to the origination of VA IRRRLs) and by asking the Court to take a leap of faith with them as to what happens in the second half of the story (the submission of alleged false claims to the VA).  Unfortunately for relators, the "what happened next" is the crucial element of an FCA claim.

Specifically, 31 U.S.C. § 3729(a)(1)(A) and (B), the statutory provisions under which relators assert their claim, establish liability for any person who:

---

[2]    Because the purpose of a reply is not to restate arguments made in the first instance, this Reply Memorandum highlights the major failings of relators' Opposition but does not respond to every single one of relators' arguments.  First Tennessee does not concede those points.

(A) knowingly presents, or causes to be presented, a false
or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used,
a false record or statement material to a false or
fraudulent claim;

31 U.S.C. § 3729(a)(1).  Under any interpretation of the statute, the one element

that simply must be pled to sustain a cause of action pursuant to the FCA is the

submission of a "false claim" to the government.  *See id.; see also Stephens v.*

*Tissue Science Labs., Inc.*, 664 F. Supp. 2d 1310, 1315-16 (N.D. Ga. 2009);

*Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009).

While the SAC is replete with allegations of "dirty loans" and *ipse dixit*, a

well-pleaded complaint must rely on more than invective and speculation.  The

Supreme Court has demanded more:

Nor does a complaint suffice if it tenders "naked
assertion[s]" devoid of "further factual enhancement."
…
[W]here the well-pleaded facts do not permit the court to
infer more than the mere possibility of misconduct, the
complaint has alleged-but it has not 'show[n]-that the
pleader is entitled to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (internal citations and

quotations omitted).  Though relators appear to believe that notice pleading permits

them to sustain a cause of action by pleading whatever facts or conclusions they

want, regardless of basis, support, or sufficiency, what they have offered to the

Court does not satisfy the statutory text set forth above.  It could not be simpler: a claim pursuant to the *False Claims* Act requires allegations of an actual *false claim*, not amorphous suggestions of what "might" have occurred.  *See U.S.  ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002) (allegations that a false claim "must have been submitted" are insufficient to satisfy Rule 9(b)).

Having failed to satisfy the pleading requirements of Rule 8(a), it goes without saying that relators have not pled their claim with the particularity required by Rule 9(b).[3]  As set forth in more detail in First Tennessee's opening memorandum, Rule 9(b)'s particularity requirement "applies not only to the details of the false claim but to the submission or presentment of that claim to the United States" *Cade v. Progressive Community Healthcare, Inc.*, 2011 WL 2837648, at *3 (N.D. Ga. 2011).  It further extends to require specific details regarding the resulting *payment* by the United States.  *See Hopper*, 588 F.3d at 1328-29.  In their

---

[3]     Notably, relators' Opposition wholly fails to address First Tennessee's argument that they have improperly lumped the named defendants together and that Eleventh Circuit precedent requires that they inform each defendant, separately, of its purported wrongdoing.  *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).  In opposition to defendant PNC's motion to dismiss, however, relators responded to the same argument by stating that they should be excused from this requirement because meeting it would have made the SAC too long.  *See* Relator's Opposition to PNC Motion to Dismiss (Docket No. 244) at 20.  Such a position hardly merits a response other than to note that the Federal Rules of Civil Procedure are not optional.

Opposition, relators do not even argue that they have provided the date, time, place, amount, or substance of First Tennessee's submission of a false claim, let alone details as to a purported payment made by the government to First Tennessee.  Nor could they because the SAC is utterly void of such allegations.

Indeed, in lieu of alleging facts sufficient to meet the notice pleading requirements of Rule 8(a) or the particularity requirement of Rule 9(b), relators purport to rely instead on one "example" loan.  Specifically, Exhibit B to the SAC identifies one loan made by First Horizon Home Loan Corporation to borrowers David and Mandy Breeden.  Relators' Opposition attaches multiple documents regarding this loan, including the HUD-1 Settlement Statement and various title documents.  *See* January 17, 2012 Declaration of Samantha DiPolito ("Dipolito Decl.") (Docket No. 255-10) at Exhibits 12-16.  According to relators, these documents show that First Tennessee submitted a false claim to the VA. Specifically, relators allege that "[t]he Breeden loan was foreclosed and the VA bought the property with taxpayer money … In order to obtain payment under any guarantee, FTN and all lenders were required to submit to the Government VA Form 26-1874.  … It is hard to imagine clearer proof that a 'claim' was in fact 'submitted.'"  Opposition at 13-14.  Accordingly, relators' theory as to First Tennessee is that a "false claim" was submitted upon the foreclosure of the

Breeden property and the subsequent submission of VA Form 26-1874.  The
documents, on their face, illustrate no such thing.

Indeed, even assuming purely for the sake of argument that relators had a
valid underlying argument that First Tennessee had violated the VA guidelines in
connection with the origination of the loan, which it did not, the documents
submitted by relators show that First Tennessee *did not foreclose on the Breeden
property*.  Exhibit 14 to the DiPolito Declaration is the Corporate Assignment of
Deed of Trust by which First Tennessee *sold* the Breeden loan to MidFirst Bank on
July 3, 2008 "with all interest secured thereby, all liens, and any rights due or to
become due thereon."  Dipolito Decl. at Exhibit 14.  Exhibit 15 is the Substitute
Trustee's Deed by which the Trustee conveyed the property to the VA *from
MidFirst Bank* on October 17, 2008.  *Id.* at Exhibit 15.  As Midfirst Bank was the
owner of the property, VA Form 26-1874 on its face could not have been
submitted by First Tennessee because the form requires that the claimant certify
that it is the "owner of the loan."  *See* DiPolito Decl. at Exhibit 8.  Based on these
records – which relators have submitted for this Court's consideration – First
Tennessee made no "claim" to the VA in connection with the Breeden loan and
relators have offered no set of factual allegations that can be strung together to

support an FCA claim against First Tennessee.  *Bell Atl. Corp. v. Twombly,* 550

U.S. 544, 570 (2007).[4]

> **B.** **The Court Should Reject Relators' Attempt To Create, And Then Enforce, VA Guidelines Without The Authority Or Factual Support To Do So**.

Relators do not deny that this case is based on their theory that any title

examination fee charged to a borrower above $200 is a *per se* violation of VA

Guidelines.  From there, relators allege that any claim submission based on a VA

IRRRL that included a title examination fee above $200 is "false" within the

meaning of the FCA.  The hitch for relators is that there is no $200 title

examination fee cap in the VA Guidelines.  By this lawsuit, relators attempt to

create such a cap, and then enforce it using the mantle of the *qui tam* procedural

device.  But, relators have cited no rule or legal authority – other than themselves –

for the proposition that a $200 title examination fee cap exists.  It doesn't.[5]

---

[4]     Relators' failed reliance on the Breeden loan to support its claim against First Tennessee distinguishes this Motion from those filed by other defendants in this matter.  As such, while many of the arguments made by First Tennessee are the same as other arguments made in support of dismissal, this Motion should be assessed independently.

[5]     Relators also erroneously suggest that closing attorneys only earn money on a transaction if they are paid a closing fee.  This is not true.  Closing attorneys, also acting as title agents, earn the majority of the title insurance premium as their commission.

Moreover, contrary to relators' suggestion, the Court's decision in *Brown v. First Tennessee Bank Nat'l Assoc.*, 753 F. Supp. 2d 1249 (N.D. Ga. 2009), does not provide relators with carte blanche to proceed with an FCA claim here.  To the contrary, as set forth by First Tennessee in its opening memorandum, Judge Beverly Martin's decision in *Brown* reflects why relators' claim for relief in this case is at odds with the purposes of the VA IRRRL program.  Failing to address this issue at all, relators instead simply say that, because Judge Martin noted the FCA as one option *for the VA* to enforce its guidelines, relators must be permitted to use the FCA here.  Not so.  Judge Martin noted that *the government*, not individuals without knowledge of the requisite facts, could utilize the FCA to enforce VA guidelines if appropriate.  *See Brown,* 753 F. Supp. 2d at 1256 ("The *VA* also has other remedies.  For instance, *the Secretary* might seek to debar or suspend a participant lender, revoke the lender's automatic processing authority, or even bring a false claims action against the lender") (emphasis added).

Judge Martin's recognition in *Brown* that the VA could have the legal and factual foundation upon which to bring an FCA claim does not translate into

relators here having the same adequate basis to sustain *this action*.[6]  And despite

many opportunities, relators here have demonstrated that they are certainly not in

possession of facts sufficient to pursue this lawsuit.  Having failed to allege the

facts necessary to pursue an FCA claim and enforce the VA guidelines standing in

the shoes of the VA, the SAC should be dismissed.

### C.      Relators Are Not Original Sources Of The Allegations Underlying The SAC.

In its Motion, First Tennessee argued that the SAC is barred by the public

disclosure doctrine, joining in PNC's Motion to Dismiss on this issue.  As set forth

in the respective motions, the public disclosure doctrine jurisdictionally bars FCA

claims that are based on information that was publicly available prior to the filing

of the action and where the relators are not otherwise original sources of that

information.  In response, relators attempt to dodge the issue by minimizing the

significance of publicly available information and by ignoring altogether multiple

examples of public investigations and audits regarding the very issues underlying

the SAC.  *See* PNC Motion at "Background" Section II.A (pp. 8-11) and

"Argument" Sections I.A and I.B (pp. 15-17, 19-20); First Tennessee Motion at

---

[6]      In *Brown*, plaintiff sought to enforce VA regulations against First
Tennessee, which Judge Martin determined he could not do.  *Brown,* 753 F. Supp.

Section IV.C; *see also* PNC Reply Memorandum (Docket No. 260).  Their

invective and decision to skirt the issue is no substitute for an opposition.

Moreover, relators *do not oppose* First Tennessee's argument that relators

simply are not original sources of the information underlying the SAC.   As set

forth more fully in First Tennessee's Motion, relators bear the burden of

demonstrating that they have "direct and independent knowledge" regarding the

facts underlying the SAC and that relators provided that information to the United

States prior to filing suit.  *See* 31 U.S.C. § 3730(e)(4)(A) - (B).  But as detailed

above, the SAC is strikingly void of any allegations of how exactly the defendant

lenders *actually submitted* false claims to the VA for payment.  This is because

relators *have no personal knowledge* of such submissions.

Relators do not allege that they have worked for defendant lenders.  They do

not allege that they have participated in the process of submitting VA claims on

behalf of defendant lenders.  They do not allege to have intercepted VA claims

from defendant lenders.  Neither do relators allege to be working internally with

the VA or to be receiving information on submissions from the VA.  In fact, relator

Victor E. Bibby has attested that he has "not been given or received any loan

---

2d at 1263.  *Brown* is instructive here where relators are essentially seeking to do
the same thing under a different theory of law.

documents or information related to the allegations of this case from the VA." *See* Bibby Decl. at ¶ 11.  In short, the SAC fails to allege a single fact that would suggest that relators have – or even could have – direct and independent knowledge of how, when, why, in what form, or even *if* false claims were ever submitted by defendants.

Relators provide no response to this argument, *see* Opposition at 18-19, and having failed to satisfy *their burden* to demonstrate that their claim is not barred by the jurisdictional public disclosure doctrine, the SAC should be dismissed.

**D.    Because Relators' 151-Page Opposition Fails to Allege Sufficient Facts To Sustain A Claim Against First Tennessee, Leave To Amend Should Be Denied As Futile.**

Relators' Opposition marks their fourth attempt to set forth facts sufficient to sustain their FCA claim against First Tennessee.  Indeed, as noted above, the 151-page Opposition is comprised in large part of declarations and exhibits that are not referenced in or attached to the SAC.  Even considering these submissions, however, relators have still fallen far short of satisfying their obligations pursuant to Rules 8(a) and 9(b).  Having now submitted hundreds of pages of allegations and documentation in an effort to support their claim, and having still failed to succeed in doing so, it is clear that relators simply are not in possession of facts sufficient to sustain this action and further leave to amend is not appropriate.  *See*

*Kellogg, Brown & Root, Inc.,* 525 F.3d at 373; *see also Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1014 (11th Cir. 2005) (denial of leave to amend appropriate in light of "repeated failure[s] to cure deficiencies").[7]

## III.   CONCLUSION

For the reasons set forth herein and in First Tennessee's Memorandum of Law in Support of its Motion to Dismiss, First Tennessee respectfully requests that the Court grant its Motion to Dismiss Relators' Second Amended Complaint as to First Tennessee, in its entirety and with prejudice, and grant such other relief as this Court deems just and appropriate.

---

[7]   Leave to amend should also be denied because relators have failed to move this Court for leave to amend and have not submitted any detail regarding what amendments it proposes to make to cure the deficiencies. *Ferrell v. Durbin*, 311 Fed. Appx. 253, 259 (11th Cir. 2009) (denying leave to amend where "request to amend in their response in opposition to defendants' motion to dismiss failed to adequately apprise the district court of the substance of allegations that would satisfy the particularity requirements"); *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 (11th Cir. 2006) (same) (*citing Long v. Satz,* 181 F.3d 1275 (11th Cir.1999)).

Respectfully submitted,

FIRST TENNESSEE BANK NATIONAL
ASSOCIATION S/B/M TO FIRST HORIZON
HOME LOAN CORPORATION

*/s/ Irene C. Freidel*

Christopher S. Anulewicz (GA Bar No. 020914)
Geremy Gregory (GA Bar No. 885342)
Balch & Bingham LLP
30 Ivan Allen, Jr. Blvd., NW, Suite 700
Atlanta, GA 30308
Telephone: (404) 962-3562
Facsimile:  (866) 320-6758
canulewicz@balch.com
ggregory@balch.com

Irene C. Freidel (*pro hac vice*)
Jennifer J. Nagle (*pro hac vice*)
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone:  (617) 261-3100
Facsimile:  (617) 261-3175
irene.freidel@klgates.com
jennifer.nagle@klgates.com

Dated:  January 31, 2012

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULES 5.1 AND 7.1

I hereby certify that the foregoing brief has been prepared in Times New Roman 14 point font as required by Local Rules 5.1 and 7.1.

*/s/ Irene C. Freidel*

Irene C. Freidel (*pro hac vice*)
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone:  (617) 261-3100
Facsimile:  (617) 261-3175
irene.freidel@klgates.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 31, 2012, I electronically filed the foregoing Reply Memorandum in Support of First Tennessee Bank National Association's Motion to Dismiss Relators' Second Amended Complaint with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

| *Attorneys for the United States of America* | |
| --- | --- |
| Amy L. Berne<br>Daniel A. Caldwell, III | Amy.Berne@usdoj.gov<br>Dan.Caldwell@usdoj.gov |
| *Attorneys for Relators* | |
| James Edward Butler , Jr.<br>Brandon L. Peak<br>Leigh M. May<br>Samantha DiPolito<br>Marlan Bradley Wilbanks<br>Tyrone M. Bridges<br>Mary Louise Cohen<br>Timothy P. McCormack | jim@butlerwooten.com<br>brandon@butlerwooten.com<br>Leigh@butlerwooten.com<br>samantha@butlerwooten.com<br>mbw@wilbanks-bridgeslaw.com<br>tmb@wilbanks-bridgeslaw.com<br>mlc@phillipsandcohen.com<br>tmccormack@phillipsandcohen.com |
| *Attorneys for Mortgage Investors Corporation (Ohio)* | |
| David M. Souders<br>Michael Y. Kieval<br>Mitchel H. Kider<br>Scott D. Burke<br>Matthew Robert Rosenkoff | souders@wbsk.com<br>kieval@wbsk.com<br>kider@wbsk.com<br>burke@wbsk.com<br>mrosenkoff@taylorenglish.com |
| *Attorneys for Bank of America Corporation* | |
| Asher L. Rivner<br>Jonathan Rosenberg<br>William J. Sushon<br>Nancy H. Baughan<br>Robert M. Brennan<br>Scott Eric Zweigel | arivner@omm.com<br>jrosenberg@omm.com<br>wsushon@omm.com<br>nbaughan@phrd.com<br>bbrennan@phrd.com<br>szweigel@phrd.com |

| *Attorneys for New Freedom Mortgage Corporation* | |
|---|---|
| Aaron Paul Michael Tady<br>Thomas M. Barton | atady@colesbarton.com<br>tbarton@colesbarton.com |

| *Attorneys for Wells Fargo Bank, National Association (Inc.)* | |
|---|---|
| Robert J. Sherry<br>Amy P. Williams<br>David Lewis Balser | robert.sherry@klgates.com<br>amy.williams@klgates.com<br>dbalser@mckennalong.com |

| *Attorney for PNC Bank, National Association* | |
|---|---|
| Martin Robert Thornton<br>Christopher C. Burris<br>Catherine M. O'Neil<br>Jonathan R. Chally | bthornton@kslaw.com<br>cburris@kslaw.com<br>coneil@kslaw.com<br>jchally@kslaw.com |

| *Attorneys for First Tennessee Bank National Association (Inc.)* | |
|---|---|
| Irene C. Freidel<br>Jennifer J. Nagle<br>Christopher Scott Anulewicz<br>Geremy Gregory | irene.freidel@klgates.com<br>jennifer.nagle@klgates.com<br>canulewicz@balch.com<br>ggregory@balch.com |

| *Attorneys for SunTrust Mortgage, Inc.* | |
|---|---|
| Michael L. Brown<br>Van A. Anderson<br>William H. Jordan | mike.brown@alston.com<br>van.anderson@alston.com<br>bjordan@alston.com |

| *Attorney for GMAC Mortgage Corporation* | |
|---|---|
| Harold Wayne Phears | wphears@mcguirewoods.com |

| *Attorneys for CitiMortgage, Inc.* | |
|---|---|
| Christopher J. Willis<br>Burt M. Rublin<br>Diana L. Spagnuolo | willisc@ballardspahr.com<br>rublin@ballardspahr.com<br>spagnuolod@ballardspahr.com |

| *Attorney for JP Morgan Chase Bank* | |
|---|---|
| William V. Custer, IV<br>Courtney M. Dankworth<br>Mary Beth Hogan | bill.custer@bryancave.com<br>cmdankwo@debevoise.com<br>mbhogan@debevoise.com |
| *Attorneys for Countrywide Home Loans, Inc. and Bank of America, N.A.* | |
| Douglas A. Axel<br>Mark P. Guerrara<br>Mark D. Hopson<br>Meghan D. Berroya<br>Robert J. Conlan, Jr.<br>Sean C. Griffin<br>Richard K. Hines, V | daxel@sidley.com<br>mguerrara@sidley.com<br>mhopson@sidley.com<br>mberroya@sidley.com<br>rconlan@sidley.com<br>sgriffin@sidley.com<br>richard.hines@nelsonmullins.com |

I further hereby certify that I have mailed the foregoing document to the following non-CM/ECF participants by United States Postal Service, postage-prepaid:

| *Attorneys for JP Morgan Chase Bank* | |
|---|---|
| Andrew J. Ceresney<br>Debevoise & Plimpton, LLP<br>919 Third Avenue<br>New York, NY 10022 | Shannon Rose Selden<br>Debevoise & Plimpton, LLP<br>919 Third Avenue<br>New York, NY 10022 |

/s/ Jennifer J. Nagle
Jennifer J. Nagle (*pro hac vice*)
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone:  (617) 261-3100
Facsimile:  (617) 261-3175
jennifer.nagle@klgates.com