# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| U.S. *ex rel.* BIBBY, *et al.*, | : | **CIVIL ACTION NO.** |
| Relators, | : | |
| | : | **1:06-CV-0547-AT** |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A., *et al.*, | : | |
| | : | |
| Defendants. | : | |

## – AMENDED –

## REPLY IN SUPPORT OF COUNTRYWIDE'S
## <u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>

Mark D. Hopson (PHV)
Robert J. Conlan, Jr. (PHV)
Mark P. Guerrera (PHV)
Sean C. Griffin (PHV)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000
(202) 736-8711 (fax)
mhopson@sidley.com
rconlan@sidley.com
mguerrera@sidley.com
sgriffin@sidley.com

Douglas A. Axel (PHV)
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000
(213) 896-6600 (fax)
daxel@sidley.com

Richard K. Hines, V
Ga. Bar No. 356300
NELSON MULLINS RILEY
& SCARBOROUGH LLP
201 17th Street NW
Suite 1700
Atlanta, GA 30363
(404) 322-6154
(404) 322-6050 (fax)
richard.hines@nelsonmullins.com

Defendant Countrywide Home Loans, Inc. ("CHL") respectfully submits the following Reply in support of its Motion to Dismiss, DE 166.

## I. THE SAC FAILS TO STATE A CLAIM UNDER RULE 12(b)(6).[1]

Relators suggest that CHL's motion is improperly denominated as one under Rule 12(b)(6), *see* Relators' Opposition ("Opp.), DE 235 at 1, and that CHL has mischaracterized the allegations of their SAC, *see, e.g.*, *id.* at 12. Neither is correct. The Court should consider not just the SAC, but also documents that are referenced therein or subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court also should reject the SAC's legal conclusions and bare assertions of fact. *Mamani v. Berzaín*, 654 F.3d 1148, 1153-54 (11th Cir. 2011). CHL asks only that this standard be followed. Materials properly before the Court fatally contradict (A) Relators' premise that, under VA rules, lenders are responsible for fees imposed by closing attorneys; (B) their theory that unallowable

---

[1] Relator Donnelly admits he failed to disclose his interest in this action during his bankruptcy, *see* Donelly Aff., DE 183-1 ¶¶ 3-5, which deprives him of standing and merits judicial estoppel. *U.S. ex rel. Gebert v. Transport Admin. Servs.*, 260 F.3d 909, 913-19 (8th Cir. 2001) (non-disclosing relator lacks standing and is estopped in light of the numerous disclosure options available to relators filing for bankruptcy). Relators respond that "Donnelly's Claim Is an Asset of his Bankruptcy Estate." *See* Relators' Opposition ("Opp.), DE 235 at 17. On this, the parties agree. Relators' own authority holds that "only the trustee . . . has standing" to pursue estate assets. *Parker v. Wendy's*, 365 F.3d 1268, 1272 (11th Cir. 2004). To participate in this case, the trustee must move to be substituted as the real party in interest. *Id.* at 1270; *see* Fed. R. Civ. P. 17(a)(1). The trustee has not done so. Moreover, if trustee files such a motion, judicial estoppel will limit any recovery to the amount needed to satisfy Donnelly's creditors; any more would be "an undeserved windfall" for the non-disclosing debtor. *Parker*, 365 F.3d at 1273 n.4.

fees are material to VA's decision to honor its guaranty; or (C) their assertion that the maximum lawful charge for a title search on a VA loan is $200.

### A. Lenders Neither Impose, Nor Certify To, The Fees Charged By Closing Attorneys.

The SAC turns on the theory that lenders are responsible for fees imposed by closing attorneys, but no authority creates such responsibility. CHL's Memorandum ("Mem."), DE 166-2 at 28-34. In response, Relators suggest that there "is no such animal" as a fee imposed by a closing attorney, Opp. at 14-15, and that lenders impose *every* closing cost, *id.* at 13-14. This is nonsense. A closing involves a host of different costs. *See, e.g.*, 24 C.F.R. § 3500.2(b) (defining 15 different kinds of "Settlement service[s]"). Some are imposed by lenders; others are not.[2]

The issue for the Court is whether any VA rule or form assigns to lenders responsibility for fees imposed by closing attorneys. In their brief, Relators abandon many materials cited in the SAC.[3] Instead, they open with an argument based on a

---

[2] No authority holds CHL responsible for every line of the HUD-1, especially not a fee imposed by an attorney selected by the borrower. *See* Griffin Decl. Exh. 2; *see also Rivers v. Credit Suisse Boston*, No. 05-6011, 2007 U.S. Dist. LEXIS 23621, at *17 (D.N.J. Mar. 30, 2007) (in a TILA lawsuit, acts of an attorney selected by the borrower "cannot be attributed to" the lender).

[3] Relators never mention two forms cited in the SAC: Form 26-6850a and 26-567. Relators mention three others only obliquely. They describe Form 26-8923 as a "certification," Opp. at 25 n.29, but that is not accurate, *see* Griffin Decl. Exh. M. They note that Form 26-6850 is used to assess compliance with VA's reporting requirements, Opp. at 20-21, but this refers only to the obligation to timely report defaults, *see* 38 C.F.R. § 36.4280(a). Relators also suggest that closing attorneys sign the HUD-1 on behalf of the lender, Opp. at 14 n.16, and that lenders must

regulation not mentioned in the SAC, which they would interpret as holding lenders responsible for every closing cost. Opp. at 19-20 (citing 38 C.F.R. § 36.4340); *see id.* at 31 n.40 (same). However, Relators fail to disclose that the regulation "do[es] not apply to loans guaranteed pursuant to 38 U.S.C. § 3710(a)(8)." *Id.* § 36.4340(a). That statute, § 3710(a)(8), is the source of IRRRL guarantees. Thus, Relators rely on a regulation that, per its express terms, does not apply to IRRRLs.[4]

Relators also fundamentally err when they assert that "whatever was charged the veteran" is the lender's responsibility. Opp. at 21. This new assertion is entirely unsupported. Relators note only that (1) loan applications are reviewed by VA-approved underwriters, and (2) lenders nominate their employees to obtain that approval. *Id.* at 21 & n.25; *see* Griffin Decl. Exh. L and Exh. K. Relators do not and cannot explain how the fact that VA-approved underwriters review applications leads to the conclusion that lenders have assumed responsibility for fees imposed by third parties. The conclusion does not follow. Relators concede – as they must –

---

certify as to its truth, *id.* at 23 & n.27. However, the closing attorney alone is responsible for the contents of the HUD-1, *see* 24 C.F.R. § 3500.8(b)(1), and VA requires only that lenders submit "a true copy." Griffin Decl. Exh. R.

[4] Relators' reliance on 38 C.F.R. § 36.4340 is also misplaced because their quotation is incomplete. They omit an entire sentence providing: "Lenders will affirmatively certify that loans were made in full compliance with the law and loan guaranty regulations *as prescribed in this section*." *Id.* § 36.4340(k) (emphasis added). That section establishes the underwriting standards "used to determine whether the veteran's present and anticipated income and expenses, and credit history are satisfactory." *Id.* § 36.4340(a). Relators thus omitted text showing that the certification addresses only underwriting.

that the decision to underwrite a loan is both distinct from, and prior to, the closing of the loan. *See, e.g.*, Compl., DE 1 at 21-22.

Relators also note that Form 26-8736 contains a promise to comply with all VA rules. This is irrelevant. First, Relators concede this is only "a condition to participation." Opp. at 24. "[C]ourts distinguish between 'conditions of participation' and 'conditions of payment'"; only violations of the latter are actionable. *U.S. ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 720 (N.D. Tex. 2011). Second, this form is remote from any loan or claim, and the SAC alleges no facts showing that CHL did not, at the time this form was signed, intend to comply with VA rules. Mem. at 29; *see U.S. ex rel. Parato v. Unadilla Health Care Ctr., Inc.*, 787 F. Supp. 2d 1329, 1339-40 (M.D. Ga. 2011)).[5] Third, a broad promise to comply with VA rules merely begs the question of what those rules require.[6]

The only actual requirement is found at 38 C.F.R. § 36.4313, which holds that borrowers "may pay" certain fees, *id.* § 36.4313(d)(1), and that lenders "may charge" an additional 1% origination fee, *id.* § 36.4313(d)(2). No other charges "shall be

---

[5] While Relators assert in their Opposition that CHL "never intended to comply with the rules," Opp. at 24, the SAC does not allege as much, nor does it allege when this certification was made, who made it, or facts showing that it was knowingly false.

[6] Similarly, Relators note that VA Form 26-1874 states that the claim submitted is "correct and valid." Opp. at 24-25. This begs two questions: whether the lender's certification covered the fees imposed by third parties (as discussed in this section, it does not) and whether an inaccurate certification regarding closing costs voids VA's guaranty (as discussed below, *see infra* § I(B), it does not).

made against, or paid by" borrowers." *Id.* § 36.4313(a). This regulation restricts the fees that borrowers "may pay" to anyone—to lenders, brokers, appraisers, realtors, or closing attorneys. But the necessary *certification* is much narrower. A lender only certifies "that it has not imposed and will not impose any charges or fees against the borrower in excess of those permissible . . ." *Id.* § 36.4313(a); *accord* Griffin Decl. Exh. R at Item 24B ("The lender has not imposed and will not impose . . . ."). This language limits a lender's responsibility to the fees that *it* imposes. Mem. at 31-34.

Relators respond by revising the regulatory text. They claim lenders must represent "that unallowable costs . . . *had not been charged*." Opp. at 5; *id.* at 13-14 (lenders certify "that unallowable fees *would not be and were not charged*"); *id.* at 15 (lenders "are required to certify *regarding the fees charged*"); *id.* at 23 (lenders are "responsible for *what fees are charged*") (all emphases added). Their use of the passive voice creates the appearance of a broad certification covering any and all fees, but this is fantasy. The actual text endorsed by VA demands only a certification that "the lender has not imposed" unallowable fees.

Finally, Relators also argue that Items 24D, 24J and 24K of Form 26-1820 show that lenders are responsible "for the acts of any agents involved in the loan closing." Opp. at 22; *see id.* at 23; Bibby Decl. ¶ 11(b). Relators again ignore the actual text. In Item 24D, lenders confirm that the "information contained in the loan application" was collected directly from the borrower. Griffin Decl. Exh. R. In Item

24J, lenders identify any agents who assisted in that collection. *Id.* In Item 24K, lenders assume responsibility *only* for "agents identified in Item 24J," and then *only* "as to the functions with which they are identified." *Id.* Nothing in these Items can be read to include closing attorneys. *See* Mem. at 32-33.[7]

**B.    The SAC Does Not Allege Falsity, Let Alone Material Falsity.**

Even if a lender's certification did cover fees imposed by closing attorneys, the SAC would still fail to state a claim. To be "false" under the FCA, a claim must demand money that the government does not owe. *See* Mem. at 25-26. In addition, the alleged "falsity" must address a material condition of payment. *See id.* at 37-38. Relators cannot clear either hurdle.

The VA Servicer Guide specifically identifies the types of statements that VA deems material to its payment decision: only if a statement "affected VA's decision to guaranty the loan" does it "provide a basis for denial of liability by VA." Griffin Decl. Exh. W at 126. Unallowable fees do not make the cut. VA conducts several reviews to assess the fees paid by borrowers. Mem. at 10-13. VA does not cancel its guaranty when it finds unallowable fees; that occurs only if "the veteran, property or

_____

[7] Relators also point to the fact that Item 24L states that "the loan conforms" with applicable law. Opp. at 23. This suffers from the same circularity discussed above. *See supra* at 4 & n.6. Further, a general statement like Item 24L cannot be read to erase the specific limitations found in Item 24B. *See Universal Am. Mort. Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 825 (11th Cir. 2003) ("the more specific will control over the general").

purpose of the loan is clearly ineligible."  Griffin Decl. Exh. G. at 12-11.[8]  In

contrast, if unallowable fees "were charged to the veteran," *id.* at 12-12, VA contacts

the lender to resolve the issue, *id.* at 12-13.  The expected resolution is a refund of

the fee.  *Id.* at 13-23.  If a lender refuses to provide a requested refund, VA may

withdraw the lender's authority to process VA loans.  *Id.*

This longstanding – and publicly documented – practice precludes liability

under the FCA.  VA knows full well that unallowable fees are sometimes paid, but

the agency does not void its guaranty when that occurs.  Mem. at 10-13.  As a result,

Relators cannot show either falsity or materiality, both of which are elements of FCA

liability.  *Id.* at 26-27 (citing *U.S. v. Southland Mgmt. Corp.*, 326 F.3d 669 (5th Cir.

2003)); *id.* at 38-39 (citing *U.S. v. Intervest Corp.*, 67 F. Supp. 2d 637 (S.D. Miss.

1999)).  Relators notably fail to address either *Southland Management* or *Intervest*.

The recent *Wall* decision provides another apt analogy.  There, the relator sued over

alleged Medicare violations.  778 F. Supp. 2d at 720-21.  The court found those

violations immaterial because a Medicare manual instructed Medicare staff not to

deny payment on the basis of the alleged violation.  *Id.*

Relators argue that it is "not 'up to' the VA to 'decide' whether a guaranty is

_____

[8] Relators feign indignation that Exhibit G did not include the entirety of VA Manual
26-1.  Opp. at 47.  However, that the exhibit consists of "excerpts" is noted on its
cover sheet.  DE 166-4 at 283.  CHL disclosed the same in its papers and provided a
hyperlink to the VA website hosting the manual.  DE 166-3 ¶¶ 6, 8(g).  Moreover,
nowhere in their lengthy brief do Relators suggest that any other portion of VA
Manual 26-1 is relevant to the Court's analysis.

void or not" because "federal law" answers that question for the agency.  Opp. at 45.

This is meritless.  The law in question is a VA regulation.  *Id.* (citing 38 C.F.R.

§§ 36.4313(a)).[9]  Courts must defer to VA's interpretation of its own regulation

absent plain error.  *See U.S. Steel Mining Co. v. Dir., Office of Workers' Comp.*, 386

F.3d 977, 985 (11th Cir. 2004).  Deference is owed to both VA's written guidance

and its longstanding practices.  *See Bradberry v. Dir., Office of Workers' Comp.*, 117

F.3d 1361, 1366 (11th Cir. 1997).

     The regulation states that "no loan shall be guaranteed . . . unless the lender

certifies . . . ."  38 C.F.R. § 36.4313(a).  The only condition that this regulation

places on VA's authority to guaranty a loan is obtaining a certification.  Even if that

certification could be construed to cover fees imposed by third parties (it cannot),

this *VA regulation* does not prevent *VA* from determining the consequences that

should flow from an unallowable fee.  As discussed, VA has decided that the

appropriate consequences are a refund and the possible loss of authority to process

loans going forward.  Mem. at 10-13.  VA's decision to address unallowable fees

"through administrative mechanisms" instead of treating them as a condition of

payment precludes FCA liability.  *Wall*, 778 F. Supp. 2d at 720.  It also makes

perfect sense.  By curing unallowable fees without voiding its guaranty, VA ensures

---

[9] Relators' citation, Opp. at 45-46, to 38 C.F.R. § 36.4328(a)(1) is a red herring.
That regulation merely states that a "*material* misrepresentation or fraud" relieves
VA of liability.  38 C.F.R. § 36.4328(a)(1) (emphasis added).  Defining what is
material is left to VA guidance.  *See, e.g.*, Griffin Decl. Exh. W at 126.

that more loans are guaranteed, which ensures that as many veterans as possible receive their benefit.  *See* Mem. at 26-27.

## C.  "Reasonable and Customary" Is Not Limited To Just $200.

The SAC also turns on Relators' definition of the reasonable and customary charge for title searches.  Relators allege that "[t]he actual cost . . . ranges from . . . $125.00 to $200.00 . . . according to regional and national data."  SAC ¶ 61.  They also allege that the $125-$200 range defines the limit of what is "reasonable and customary" under VA rules.  *See, e.g.*, *id.* ¶ 99.  Both propositions fail.

In their brief, Relators do not identify the "data" underlying their "actual cost" allegation.  *Compare* Mem. at 35, *with* Opp. at 34-35.  Bibby elsewhere indicates the source to be Bankrate.  DE 186-1 ¶ 23.  Bankrate directly contradicts the SAC. Bankrate's 2003 survey (the year at issue here) reported that title searches ranged from $25 to $625 and averaged $200.  Second Griffin Decl. Exh. 7.  Relators have taken an *average* and labeled it the *upper limit of a range* even though a larger range was published.  The Court should not accept their revisionism.  *Dost v. Nw. Trustee Servs.*, 11-0270, 2011 U.S. Dist. LEXIS 150517, at *25 (D. Or. Dec. 21, 2011) ("The court need not accept as true allegations . . . that contradict these sources.").

Relators also offer no support for their assertion that $200 is the limit of what VA views as reasonable or customary.  In fact, VA guidance holds that a cap of $240 *does not* define reasonable and customary and that borrowers in Louisiana may pay

9

title costs totaling up to 1% of the loan.  Griffin Decl. Exh. V.  Here, ALC charged less than 1% of the loan.  Mem. at 37.  Relators do not acknowledge the existence of this guidance, let alone show that VA does (or could) apply a different standard in Georgia.  *Cf.* 5 U.S.C. § 706(2)(A) (prohibiting arbitrary or capricious action).

Relators' diatribe, Opp. at 35-37, about the 2008 HUD Report highlights the weakness of their position.  Their accusations are baseless[10] and miss the point.  Relators assume that VA evaluates each line of the HUD-1 separately.  VA does not.  *See* Griffin Decl. Exh. V.  HUD regulations also indicate that all of the 1100 lines should be evaluated together.  24 C.F.R. § 3500.7(e)(2)(ii).  In any event, CHL will meet Relators' request for a study addressing just the cost of title examinations.  In 1972, HUD and VA wrote to Congress that:

> About 38 percent of all HUD insured or VA guaranteed cases surveyed in March 1971 reported a charge for title examination (separate and apart from a charge for title insurance)  . . .  The average cost of title examination in these cases . . . was about $116 and ranged from $5 to $475.

*Mortgage Settlement Costs*, at 7 (1972), *reprinted in* 2 *Real Estate Settlement Costs: Hearings Before the Subcommittee on Housing of the House Comm. on Banking and Currency*, 92nd Cong., 2d Sess., 743 (1972).  Relators cannot plausibly argue that the lawful limit for a title exam was, in 2003, less than half of what HUD and VA

---

[10]The Court can quickly dispose of Relators' complaint that Exhibit U is not a HUD report.  *Compare* Opp. at 35, *with* CHL Reply on Judicial Notice, DE 233 at 11-14, *and* *id.* at 12 n.7.  The same is true of Relators' later complaint about Exhibit C.  *Compare* Opp. at 46-47, *with* DE 233 at 8-10.

borrowers actually paid during the Nixon administration. *Cf. Jacobs v. Tempur-Pedic Int'l*, 626 F.3d 1327, 1342 (11th Cir. 2010) (if a claim "makes no economic sense" the plaintiff "must come forward with more persuasive evidence to support [its] claim than would otherwise be necessary").

## II.   THE SAC SEPARATELY FAILS SCRUTINY UNDER RULE 9(b).

Relators suggest that they can plead an FCA case consistently with Rule 9(b) simply by filling out the form for fraudulent conveyances. *See* Opp. at 9.[11]  Not so. For nearly a decade, it has been the law of this Circuit that *qui tam* relators must plead all elements of their cause with particularity, including the specific dates and amounts of "at least some" allegedly false claims. *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1302-03 (11th Cir. 2010); *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358 (11th Cir. 2006); *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1314 n.25 (11th Cir. 2002).  Relators have not done so.

*First*, the SAC pleads only the number, amount, and date of a single loan. Mem. at 18-19.  In their brief, Relators state when the loan was foreclosed and when title passed to VA.  Opp. at 39 & n.50.  Obviously, adding new facts in an opposition to a motion to dismiss is improper. *See, e.g., Lee v. Sec. Check, LLC*, No. 09-421,

---

[11] Relators state that if "'Form 21 suffices to plead a fraudulent-conveyance claim, then the Complaint here must similarly pass muster.'" Opp. at 9 (quoting *U.S. v. Bame*, 778 F. Supp. 2d 988, 991 (D. Minn. 2011)).  Of course, Relators neglect to mention that the *Bame* court drew an analogy to Form 21 because *Bame* actually involved "a fraudulent-conveyance claim."  778 F. Supp. 2d at 991.

2009 U.S. Dist. LEXIS 104499, at \*3-5 (M.D. Fla. Nov. 9, 2009) (granting motion to strike). Regardless, referencing the date of the foreclosure or transfer does not provide the date or amount of any *claim*.[12]

*Second*, Relators hope to establish the submission of claims by pointing to various VA forms. Opp. at 38-39; *id.* at 40-41. Relators are merely *inferring* that, claims *must have been* submitted. Such inferences fail under Rule 9(b). *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005) ("submission must be pleaded with particularity and not inferred from the circumstances").

*Third*, Relators hinge their claims against CHL on one loan. Opp. at 30 n.37; *id.* at 33-34. However, Rule 9(b) requires "at least some" examples. *Sanchez*, 596 F.3d at 1302-03. Relators' own authority holds that "examples" (plural) suffice "only to the extent that [they] are *representative samples* of the broader class of claims." *U.S. ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 510 (6th Cir. 2007) (emphasis in *Bledsoe*). Here, Relators do not allege the example to be representative

---

[12] Relators assert in their brief that "[d]emand was made for payment," Opp. at 39, citing DiPolito Decl. Ex. 18. That exhibit is dated February 2006—two months prior to the date Relators now provide for the loan's foreclosure—and merely states the amount of VA's guaranty. It does not show a demand for payment, let alone the date or amount of any such demand. In any event, the Court should either disregard or strike all of the new allegations and exhibits discussed in Relators' brief. *See, e.g.*, *Lee*, 2009 U.S. Dist. LEXIS 104499, at \*3-5. This is particularly true with respect to DiPolito Decl. Exh. 11 and Bibby Decl. Exh. 1. The two Exhibits are the same and of questionable authenticity. Bibby describes his exhibit as "a document faxed to me" by ALC, DE 235 ¶ 10, yet the fax stamp shows that each exhibit consists of just pages 1, 5, and 6 of a six-page transmission.

of any class of claims.  *See* SAC ¶ 99.  It is certainly not representative of "all other

IRRRL loans" with allegedly unallowable fees.  *Id.* ¶ 108.

> *Fourth*, Relators invoke the Rule 9(b) exception for information uniquely

possessed by defendants.  Opp. at 27 n.31.  However, the information at issue is not

uniquely held by CHL.  As Relators concede, that information is also available from

the VA.  *See* DE 177 at 7 & n.13.  Relators "stand in the government's shoes" and

must provide the same level of particularity.  *Atkins*, 470 F.3d at 1360 ("we cannot

furnish a *qui tam* relator with an easier burden than the government would bear").

> *Fifth*, Relators argue that Rule 9(b) should be relaxed because they are

"insiders to the industry."  Opp. at 42-43 (citing *U.S. ex rel. Walker v. R&F Props.*,

433 F.3d 1349 (11th Cir. 2005); *Hill v. Morehouse Med. Assocs.*, No. 02-14429,

2003 WL 22019936 (11th Cir. 2003)).  To the extent that *Walker* and *Hill* can be

read to endorse a relaxation of Rule 9(b),[13] they apply only in cases where the

relators are *corporate* insiders with personal knowledge of their former employer's

processes. These Relators played no role in the loan at issue, *see* Mem. at 21, and do

---

[13] The precedential value of *Walker* and *Hill* is questionable.  Both have been limited
by subsequent panels of the Eleventh Circuit, while the latter is unpublished.  *See*
*Sanchez*, 596 F.3d at 1303 n.4; *Atkins*, 470 F.3d at 1358 & n.15.

not claim to have worked at – or even with – CHL.[14]

*Sixth*, Relators' use of group pleading undermines even their description of the "how" of the alleged fraud.  Mem at 19-20.  Relators suggest each instance of "defendants" or "lenders" should be read to mean "CHL."  *See* Opp. at 25.  But it has been shown (twice now) that Relators do not mean "*all* defendants" when they say "defendants."  *See* Mem. at 20; *supra* n.14.  Painting broadly with generic terms is no substitute for particularized allegations concerning each defendant.

*Seventh*, Relators' own authority holds that their failure to identify any CHL employees is "relevant" under Rule 9(b).  *Bledsoe*, 501 F.3d at 509.  Relators also three times invoke *U.S. ex rel. Lemmon v. Envirocare, Inc.*, 614 F.3d 1163 (10th Cir. 2010) as the standard for a well-pled claim.  Opp. at 10, 11, 26.  The SAC falls well short of the *Lemmon* standard.  The relator there provided names of the employees involved and their supervisors; the dates of the violations; and the dates and amounts of the claims.  614 F.3d at 1172.  These Relators allege none of the above.

**WHEREFORE**, and for those reasons given in its opening papers, CHL respectfully requests that the SAC be dismissed with prejudice.

---

[14] Relators claim to have worked with six defendants.  DE 254-1 ¶ 6; DE 253-1 ¶ 6. They specifically claim to have originated IRRRLs with each of First Tennessee, DE 254-1 ¶ 9; SunTrust, DE 250-1 ¶ 6; PNC, DE 245-1 ¶ 9; and Wells Fargo, DE 180-1 ¶ 17.  Relators make no similar claim with respect to CHL.  They cannot paint experience with other lenders as personal knowledge of CHL.

Respectfully submitted this 6th day of June, 2012.

By: /s/Richard K. Hines, V
Ga. Bar No. 356300
Attorney for Countrywide Home Loans, Inc.
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street NW, Suite 1700
Atlanta, GA  30363
(404) 322-6154
(404) 322-6050 (fax)
richard.hines@nelsonmullins.com

Mark D. Hopson (PHV)
Robert. J. Conlan, Jr. (PHV)
Mark P. Guerrera (PHV)
Sean C. Griffin (PHV)
Attorneys for Countrywide Home Loans, Inc.
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
(202) 736-8000
(202) 736-8711 (fax)
mhopson@sidley.com
rconlan@sidley.com
mguerrera@sidley.com
sgriffin@sidley.com

Douglas A. Axel (PHV)
Attorney for Countrywide Home Loans, Inc.
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA  90013
(213) 896-6000
(213) 896-6600 (fax)
daxel@sidley.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the

foregoing **AMENDED REPLY IN SUPPORT OF COUNTRYWIDE'S**

**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** complies

with the applicable font and size requirements and is formatted in Times New

Roman, 14 pt font.


By:_____/s/Richard K. Hines, V_____
Ga. Bar No. 356300
Attorney for Countrywide Home Loans, Inc.
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street NW, Suite 1700
Atlanta, GA  30363
(404) 322-6154
(404) 322-6050 (fax)
richard.hines@nelsonmullins.com

## CERTIFICATE OF SERVICE

I hereby certify that on 6th day of June, 2012, I electronically filed the foregoing **AMENDED REPLY IN SUPPORT OF COUNTRYWIDE'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| *Attorneys for the United States of America* | |
| Amy L. Berne<br>Daniel A. Caldwell, III | Amy.Berne@usdoj.gov<br>Dan.Caldwell@usdoj.gov |
| *Attorneys for Relators Bibby and Donnelly* | |
| James Edward Butler , Jr.<br>Brandon L. Peak<br>Leigh M. May<br>Samantha DiPolito<br>Marlan Bradley Wilbanks<br>Tyrone M. Bridges<br>Mary Louise Cohen<br>Timothy P. McCormack | jim@butlerwooten.com<br>brandon@butlerwooten.com<br>leigh@butlerwooten.com<br>samantha@butlerwooten.com<br>mbw@wilbanks-bridgeslaw.com<br>tmb@wilbanks-bridgeslaw.com<br>mlc@phillipsandcohen.com<br>tmccormack@phillipsandcohen.com |
| *Attorney for Washington Mutual Home Loans and JPMorgan Chase Bank, N.A.* | |
| William Vance Custer, IV | bill.custer@bryancave.com |

| | |
|---|---|
| *Attorneys for Mortgage Investors Corporation (Ohio)* | |
| David M. Souders | souders@wbsk.com |
| Michael Y. Kieval | kieval@wbsk.com |
| Mitchel H. Kider | kider@wbsk.com |
| Scott D. Burke | burke@wbsk.com |
| Matthew Robert Rosenkoff | mrosenkoff@taylorenglish.com |
| *Attorneys for CitiMortgage Inc.* | |
| Burt M. Rublin | rublin@ballardspahr.com |
| Diana L. Spagnuolo | spagnuolod@ballardspahr.com |
| Christopher J. Willis | willisc@ballardspahr.com |
| *Attorneys for Bank of America Corporation* | |
| Asher L. Rivner | arivner@omm.com |
| Jonathan Rosenberg | jrosenberg@omm.com |
| William J. Sushon | wsushon@omm.com |
| Nancy H. Baughan | nbaughan@phrd.com |
| Robert M. Brennan | bbrennan@phrd.com |
| Scott Eric Zweigel | szweigel@phrd.com |
| *Attorneys for New Freedom Mortgage Corporation* | |
| Aaron Paul Michael Tady | atady@colesbarton.com |
| Thomas M. Barton | tbarton@colesbarton.com |
| *Attorneys for Wells Fargo Bank, National Association (Inc.)* | |
| Amy Pritchard Williams | amy.williams@klgates.com |
| Robert J. Sherry | robert.sherry@klgates.com |
| Charles T. Huddleston | chuddleston@bakerdonelson.com |
| Linda Ann Klein | lklein@bakerdonelson.com |

| Attorneys JPMorgan Chase Bank, N.A. | |
|---|---|
| Courtney M. Dankworth<br>Mary Beth Hogan | cmdankwo@debevoise.com<br>mbhogan@debevoise.com |
| Attorney for PNC Bank, N.A. | |
| Catherine M. O'Neil<br>Christopher Cullom Burris<br>Jonathan R. Chally<br>Martin Robert Thornton | coneil@kslaw.com<br>cburris@kslaw.com<br>jchally@kslaw.com<br>bthornton@kslaw.com |
| Attorneys for First Tennessee Bank National Association (Inc.) | |
| Irene C. Freidel<br>Jennifer J. Nagle<br>Christopher Scott Anulewicz<br>Geremy Walden Gregory | irene.freidel@klgates.com<br>jennifer.nagle@klgates.com<br>canulewicz@balch.com<br>ggregory@balch.com |
| Attorneys for SunTrust Mortgage, Inc. | |
| Michael L. Brown<br>Van A. Anderson<br>William H. Jordan | mike.brown@alston.com<br>van.anderson@alston.com<br>bjordan@alston.com |
| Attorney for GMAC Mortgage Corporation | |
| Harold Wayne Phears | wphears@mcguirewoods.com |

I hereby certify that on 6th day of June, 2012, I caused to be mailed by express delivery the foregoing **AMENDED REPLY IN SUPPORT OF**

**COUNTRYWIDE'S MOTION TO DISMISS THE SECOND AMENDED**

**COMPLAINT** to the following non-CM/ECF participants:

> Andrew J. Ceresney
> Shannon Rose Selden
> Debevoise & Plimpton, LLP
> 919 Third Avenue
> New York, NY 10022
> *Attorneys for JPMorgan*
> *Chase Bank, N.A.*

By:\_\_\_\_\_/s/Richard K. Hines, V_____
Ga. Bar No. 356300
Attorney for Countrywide Home Loans, Inc.
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6154
(404) 322-6050 (fax)
richard.hines@nelsonmullins.com