IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, VICTOR E. BIBBY and BRIAN J. DONNELLY, | * * * * | CIVIL ACTION FILE NO. 1:06-CV-0547-AT |
| RELATORS/PLAINTIFFS, | * * | |
| v. | * * | |
| WELLS FARGO BANK, NATIONAL ASSOCIATION (INC.), individually and as s/b/m with WELLS FARGO HOME MORTGAGE, INC., et al. | * * * * * | |
| DEFENDANTS. | * | |

JOINT STATEMENT OF UNITED STATES OF AMERICA
AND DEFENDANT PNC BANK REGARDING
PROPOSED TERMS OF SETTLEMENT AGREEMENT

Plaintiff United States of America and defendant PNC Bank, N.A., s/b/m with National City Real Estate Services, LLC, s/b/m with National City Mortgage, Inc., f/k/a National City Mortgage, Inc., which also did business as Commonwealth United Mortgage Company ("PNC Bank"), by and through their undersigned counsel, submit this joint statement regarding the status of discussions between the Government and PNC Bank on terms of a proposed agreement to resolve the

claims of Relators Victor E. Bibby and Brian J. Donnelly against PNC Bank in this civil action. Those discussions are scheduled to be addressed at a conference with the Court set for 11:00 a.m. on September 10, 2012.

## STATUS OF THE CASE

Relators Victor E. Bibby and Brian J. Donnelly ("Relators") have filed this action under the *qui tam* provisions of the False Claims Act ("FCA") , 31 U.S.C. 31 U.S.C. § 3729, *et seq.*, against defendants including PNC Bank. The Government previously has filed with the Court its notice that the Government is not intervening in this action at this time. [Doc. 59].

Although the Government has not intervened in this case at present, a *qui tam* action against a defendant may be dismissed only if the Court and the Government give their written consent to the dismissal. 31 U.S.C. § 3730(b)(1). Relators and PNC Bank have conducted negotiations to settle the claims in this *qui tam* action against PNC Bank. A proposed settlement agreement that is to be signed by Relators, PNC Bank and the Government has been presented for the Government's consideration in order to obtain the Government's written consent to the dismissal, with prejudice, of PNC Bank from this civil action.

As discussed below, the Government and PNC Bank have discussed three (3) issues relating to the scope of the release to be granted to PNC Bank in the settlement agreement that the Government has been requested to sign. Those three issues are:

   a. whether any release of liability of PNC Bank should include a release of that defendant's "attorneys and agents" from liability;

   b. the statutory and regulatory causes of action to be released; and

   c. whether claims should be released for any alleged failure of PNC "to conform to all VA regulations necessary to maintain the authority of PNC Bank and current and former affiliated entities, and any of its or their respective predecessors, successors or assigns, including, but not limited to, the former National City Bank and all its former affiliated entities, to close VA-guaranteed loans on an automatic basis."

PNC Bank and the Government anticipate that the issue of whether any release of PNC Bank should include a release of that defendant's "attorneys and agents" is approaching resolution.

In addition to discussions regarding those three (3) issues, PNC Bank and the U.S. Department of Veterans Affairs ("VA") have conducted discussions regarding potential administrative actions by the VA. As discussed below, a fourth issue which was discussed between the Government and PNC Bank concerned the drafting terms in the settlement agreement to resolve the status of potential administrative actions by the VA while not inadvertently creating a misimpression

that the Government is releasing civil claims beyond the scope of those raised in Relator's *qui tam* action. That fourth issue regarding terms in the settlement agreement to resolve the status of potential administrative actions by the VA also has been resolved.

At this time, the Government and PNC have not resolved: the statutory and regulatory causes of action to be released; and whether claims should be released for any alleged failure of PNC "to conform to all VA regulations necessary to maintain the authority of PNC Bank and current and former affiliated entities, and any of its or their respective predecessors, successors or assigns, including, but not limited to, the former National City Bank and all its former affiliated entities, to close VA-guaranteed loans on an automatic basis."

## DISCUSSION

I.    The JP Morgan Chase Consent Judgment

The respective positions of the Government and PNC Bank regarding the terms of any proposed settlement agreement are based upon various factors, including their interpretations of a prior consent judgment between the Government and JP Morgan Chase that included, but was not limited to, settlement of the claims against JP Morgan Chase in this *qui tam* action.

As the Court previously has been advised, a consent judgment was entered on April 4, 2012, against JP Morgan Chase in resolution of a civil action filed in the U.S. District Court for the District of Columbia docketed as Civil Action 1:12-cv-00361-RMC. That consent judgment resolved claims against JP Morgan Chase by the United States and forty-nine (49) States for myriad alleged practices relating to the origination and servicing of residential mortgage loans. In Exhibit F to that consent judgment,[1] the claims against JP Morgan Chase in this *qui tam* action were discussed at pages F-19 and F-20. That paragraph of the consent judgment stated:

> Subject to the exceptions in Paragraph 11 (concerning excluded claims) below, for loans that closed before the date of this Agreement and are guaranteed by the Department of Veterans Affairs (VA), the United States fully and finally releases the COMPANY and any current or former affiliated entity (to the extent COMPANY retains liabilities associated with such former affiliated entity), and any of their respective successors or assigns, as well as any current or former director, current or former officer, current or former employee of any of the foregoing, individually and collectively, from any civil or administrative claims it has or may have based on Covered Origination Conduct that arises under the Financial Institutions Reform, Recovery and Enforcement Act, the False Claims Act, or the Program Fraud Civil Remedies Act to the extent such claims are based on: (i) fees, charges, or monies paid by borrowers in connection with the closing of Interest Rate Reduction Refinancing Loans other than those expressly permitted under 38 C.F.R. § 36.4313(a), (d) or (e) (formerly 36 C.F.R. §

---

[1] A copy of the consent judgment entered against JP Morgan Chase can be accessed online at http://www.justice.gov/opa/documents/chase-consent-judgement.pdf. A copy of that consent judgment shall be submitted to the Court on a disk that shall be delivered to chambers.

36.4312(a), (d) or (e)), (ii) the conduct alleged in United States ex rel. Bibby, et al. v. Wells Fargo, et al. No. 1:06-cv-0547-AT (N.D. Ga. filed March 8, 2006) relating to fees charged to borrowers in connection with Interest Rate Reduction Refinancing Loans, or (iii) any failure by the COMPANY or any current or former affiliated entity to conform to all VA regulations necessary to maintain the authority of the COMPANY or any current or former affiliated entity to close VA-guaranteed loans on an automatic basis.

In addition to that specific reference to claims raised in this civil action, the JP Morgan Chase consent judgment provided, at pages F-12 and F-13, the following general releases of "Covered Servicing Conduct":

> Subject to the exceptions in Paragraph 11 (concerning excluded claims) below, the United States fully and finally releases the COMPANY and any current or former affiliated entity (to the extent the COMPANY retains liabilities associated with such former affiliated entity), and any of their respective successors or assigns, as well as any current or former director, current or former officer, and current or former employee of any of the foregoing, individually and collectively, from any civil or administrative claims the United States has or may have, and from any civil or administrative remedies or penalties (expressly including punitive or exemplary damages) it may seek or impose, based on the Covered Servicing Conduct that has taken place as of 11:59 p.m., Eastern Standard Time, on February 8, 2012 (and, for the avoidance of doubt, with respect to FHA-insured loans, whether or not a claim for mortgage insurance benefits has been or is in the future submitted), under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), the False Claims Act, the Racketeer Influenced and Corrupt Organizations Act, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, the Truth in Lending Act, the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1691(d) ("Reason for Adverse Action") or § 1691(e) ("Appraisals"), sections 502 through 509 (15 U.S.C. § 6802-6809) of the Gramm-Leach Bliley Act except for section 505 (15 U.S.C. § 6805) as it applies to section 501(b) (15 U.S.C. § 6801(b)), or that the Civil Division

of the United States Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. § 0.45;

and "Covered Origination Conduct":

Subject to the exceptions in Paragraph 11 (concerning excluded claims) below, the United States fully and finally releases the COMPANY and any current or former affiliated entity (to the extent the COMPANY retains liabilities associated with such former affiliated entity), and any of their respective successors or assigns, as well as any current or former director, current or former officer, or current or former employee of any of the foregoing, individually and collectively, from any civil or administrative claims the United States has or may have, and from any civil or administrative remedies or penalties (expressly including punitive or exemplary damages) it may seek or impose, based on the Covered Origination Conduct that has taken place as of 11:59 p.m., Eastern Standard Time, on February 8, 2012, under the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Truth in Lending Act, 15 U.S.C. § 1691(d) ("Reason for Adverse Action") or § 1691(e) ("Appraisals"), or the Interstate Land Sales Full Disclosure Act.

The Government maintains that the plain meaning of the release for "Covered Origination Conduct" granted to JP Morgan Chase for claims relating to the closing of VA guaranteed IRRRLs in this lawsuit only released "Covered Origination Conduct that arises under the Financial Institutions Reform, Recovery and Enforcement Act, the False Claims Act, or the Program Fraud Civil Remedies Act" and did not release any other statutory causes of action.

Following entry of the consent judgment against JP Morgan Chase in the U.S. District Court for the District of Columbia and payment of $45 million to the Government to resolve the claims against it in this *qui tam* action, JP Morgan

7

Chase has been dismissed, with prejudice and with the consent of the Government, as a defendant in this *qui tam* action. [Doc. 272]

II.     Settlement Terms Proposed By PNC Bank And The Government

As stated above, Relators and PNC Bank have presented a draft settlement agreement to the Government. The Government has submitted its suggested revisions to that draft agreement.

The release in the draft agreement presented by PNC states:

> Subject to the exceptions in Paragraph 10 (concerning excluded claims) below, for loans that closed on or before the effective date of this Agreement and are guaranteed by the VA, and conditioned upon PNC Bank's full payment of the Settlement Amount, the United States fully and finally releases PNC Bank and all current or former affiliated entities, and any of its or their respective predecessors, successors or assigns, including, but not limited to, the former National City Bank and all its former affiliated entities, as well as any current or former director, officer, employee, attorney, or agent of any of the foregoing, individually and collectively, from any civil or administrative claims the United States has or may have, and from any civil or administrative remedies or penalties (expressly including, but not limited to, punitive or exemplary damages) it may seek or impose, under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617; the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(u); the Truth in Lending Act, 15 U.S.C. § 1691(d) ("Reason for Adverse Action") or § 1691(e) ("Appraisals"); the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-1720; the Financial Institutions Reforms, Recovery and Enforcement Act, 12 U.S.C. § 1833A; the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; 38 C.F.R. § 36.4340(k); any statutory provision for which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part 0, subpart I, 0.45(d); or the common law and equitable theories of fraud, payment by mistake, breach

of contract, disgorgement, rescission, and unjust enrichment, arising out of, or in any way related to:

   a. The charging of fees, charges, or monies paid by borrowers in connection with the closing of IRRRL loans other than those expressly permitted under 38 C.F.R. § 36.4313(a), (d) or (e) (formerly 36 C.F.R. § 36.4312(a), (d) or (e));

   b. The claims and allegations against PNC Bank in the Civil Action; and

   c. The failure by PNC Bank or current or former affiliated entities, and any of its or their respective predecessors, successors or assigns, including, but not limited to, the former National City Bank and all its former affiliated entities, to conform to all VA regulations necessary to maintain the authority of PNC Bank and current and former affiliated entities, and any of its or their respective predecessors, successors or assigns, including, but not limited to, the former National City Bank and all its former affiliated entities, to close VA-guaranteed loans on an automatic basis.

This conduct is hereinafter referred to as the "Covered Conduct."

In response, the Government has proposed that the release for claims raised against PNC Bank in this *qui tam* action provide that:

Subject to the exceptions in Paragraph 4 and 11 (concerning excluded claims) below, for IRRRLs that closed before the date of the Effective Date of this Agreement and are guaranteed by the Department of Veterans Affairs (VA), the United States fully and finally releases the PNC Bank and any current or former affiliated entity (to the extent PNC Bank retains liabilities associated with such former affiliated entity), and any of their respective successors or assigns, as well as any current or former director, current or former officer, current or former employee of any of the foregoing, individually and collectively, from any civil or administrative claims it has or may have under the Financial Institutions Reform, Recovery

and Enforcement Act, 12 U.S.C. § 1833A, the False Claims Act, 31 U.S.C. §§ 3729-3733, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, and the common law theories of breach of contract, breach of fiduciary duty, fraud, negligence, payment by mistake, unjust enrichment and fraud, to the extent such claims are based on: (i) fees, charges, or monies paid by borrowers in connection with the closing of Interest Rate Reduction Refinancing Loans other than those expressly permitted under 38 C.F.R. § 36.4313(a), (d) or (e) (formerly 36 C.F.R. § 36.4312(a), (d) or (e)), or (ii) the conduct alleged in United States ex rel. Bibby, et al. v. Wells Fargo, et al. No. 1:06-cv-0547-AT (N.D. Ga. filed March 8, 2006) relating to fees charged to borrowers in connection with Interest Rate Reduction Refinancing Loans.

This conduct is hereinafter referred to as the "Covered Conduct."

Those respective releases proposed by PNC Bank and the Government differ in three (3) material aspects.

First, the release proposed by PNC Bank provided for a release of "attorneys and agents." As stated above, PNC Bank and the Government anticipate that the issue of whether any release of PNC Bank should include a release of that defendant's "attorneys and agents" is approaching resolution.

Second, the release proposed by PNC Bank includes a release of the following statutory causes of action that were listed in the general releases of statutory causes of action for "Covered Origination Conduct" in the JP Morgan Chase consent judgment but were not included in the specific release of JP Morgan Chase from liability for claims in this case: the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617; the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-

1681(u); the Truth in Lending Act, 15 U.S.C. § 1691(d) ("Reason for Adverse Action") or § 1691(e) ("Appraisals"); the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-1720.  Further, the release proposed by PNC Bank includes a release of the following regulatory cause of action that were listed in the general releases of causes of action for "Covered Servicing Conduct" in the JP Morgan Chase consent judgment but was not included in the specific release of JP Morgan chase from liability for claims in this case: any statutory provision for which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part 0, subpart I, 0.45(d).  PNC Bank maintains that such releases are appropriate on the ground that the allegations against PNC Bank in this action concern a type of "Covered Origination Conduct" which was within the scope of the releases granted in the JP Morgan Chase consent judgment.  As stated above, the Government maintains that the plain meaning of the release from statutory causes of action in the paragraph of the JP Morgan Chase consent judgment that specifically released that defendant's liability in this case was limited to "Covered Origination Conduct that arises under the Financial Institutions Reform, Recovery and Enforcement Act, the False Claims Act, or the Program Fraud Civil Remedies Act" and did not release any other statutory causes

of action. Accordingly, the Government maintains that releases of statutory and regulatory causes of action granted to PNC Bank should be limited accordingly.

Third, PNC Bank is seeking a release from liability for claims arising from the failure by PNC Bank to conform to regulations necessary to maintain the authority of PNC Bank to close VA guaranteed Interest rate Reduction Refinancing Loans on an automatic basis. PNC maintains such a release from liability was granted to JP Morgan Chase in the paragraph of the consent judgment at page F-20, in which JP Morgan Chase was granted its release from liability for claims in this case.

The Government maintains that such release of JP Morgan Chase does not address claims within the scope of this lawsuit and is not a proper term of a settlement agreement to resolve claims against PNC Bank in this case. In support of its position, the Government has reviewed the terms of other consent judgments entered against four (4) other financial institutions contemporaneously with the consent judgment entered against JP Morgan Chase in the U.S. District Court for the District of Columbia. Two of those consent judgments were entered against Wells Fargo and Bank of America . As stated in Exhibit F at pages F-19 and 20 to the Wells Fargo and Bank of America consent judgments,[2] a release from liability

---

[2] A copy of Exhibit F to the consent judgments entered against Wells Fargo and

was provided for certain claims based on "Covered Origination Conduct" to the extent those claims are based upon a failure to conform to all VA regulations necessary to maintain the authority of Wells Fargo and Bank of America to close VA-guaranteed loans on an automatic basis. The Government construes that release, which has been granted to a co-defendant in this action which has not settled the claims against it, to be for matters not at issue in this case. PNC Bank notes that pursuant to paragraph 11 of those Releases, the conduct in Bibby is exempted from that Release.

III. Proposed Settlement Terms For VA Administrative Remedies

Finally, PNC Bank and the VA have been engaged in discussions regarding the terms of the settlement agreement that address potential administrative actions to be taken by the VA. The Government and PNC Bank have agreed to terms of regarding potential administrative actions taken by the VA to avoid any uncertainty as to the claims that are the subject of any settlement agreement between the Government and PNC Bank.

---

Bank of America can be accessed online at http://www.justice.gov/opa/documents/bank-of-america-consent-judgement.pdf and http://www.justice.gov/opa/documents/wellsfargo-consent-judgement.pdf. A copy of Exhibit F to those consent judgments entered against Wells Fargo and Bank of America shall be submitted to the Court on a disk that shall be delivered to chambers.

WHEREFORE, the Government and PNC Bank respectfully submit this summary of their discussions to the Court to facilitate conduct of the conference with the Court set for September 10, 2012, at 11:00 a.m. PNC Bank shall be submitting a separate addendum to this Joint Statement. [Doc. 301].

Respectfully submitted

| | |
|---|---|
| Sally Quillian Yates<br>United States Attorney | M. Robert Thornton<br>Georgia Bar No. 710475<br>bthornton@kslaw.com |
| */s/ Daniel A. Caldwell*<br>Daniel A. Caldwell<br>Assistant U.S. Attorney<br>Georgia Bar No. 102510<br>dan.caldwell@usdoj.gov | */s/ Christopher C. Burris*<br>Christopher C. Burris<br>Georgia Bar No. 097404<br>cburris@kslaw.com |
| 600 Richard. B. Russell Building<br>75 Spring Street, S.W.<br>Atlanta, Georgia 30303<br>Telephone: 404-581-6224 | KING & SPALDING LLP<br>1180 Peachtree Street<br>Atlanta, Georgia 30309-3521<br>Telephone: 404-572-4600 |
| Counsel for the United States | Counsel for PNC Bank |

CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies, pursuant to LR 7.1.D, NDGa., that the foregoing Memorandum was prepared in Times New Roman 14 point font.

>*/s/ Daniel A. Caldwell*_____
>DANIEL A. CALDWELL
>ASSISTANT U.S. ATTORNEY

CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the within and foregoing Joint Statement of the United States of America and PNC Bank using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

This 7th day of September, 2012

*/s/ Daniel A. Caldwell*_____
DANIEL A. CALDWELL
ASSISTANT U.S. ATTORNEY