IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.,* | * | |
| VICTOR E. BIBBY and BRIAN J. | * | CIVIL ACTION FILE NO. |
| DONNELLY, | * | |
| | * | 1:06-CV-0547-AT |
| RELATORS/PLAINTIFFS, | * | |
| | * | |
| v. | * | |
| | * | |
| WELLS FARGO BANK, NATIONAL | * | |
| ASSOCIATION (INC.), individually and | * | |
| as s/b/m with WELLS FARGO | * | |
| HOME MORTGAGE, INC.,, et al. | * | |
| | * | |
| DEFENDANTS. | * | |

## STATUS REPORT BY DEFENDANT WELLS FARGO BANK, N.A.

In accordance with the Court's September 28, 2012 Order, Wells Fargo Bank, N.A. ("Wells Fargo"), through undersigned counsel, submits this Status Report on its discussions with Relators regarding an attempted negotiated resolution of this matter:

1.      Wells Fargo and Relators attempted to file a Joint Status Report.  To that end, Wells Fargo's Georgia Counsel provided Relators' Counsel with a draft statement from Wells Fargo for inclusion in a Joint Report. Relators objected to Wells Fargo's statement. Wells Fargo made minor revisions to its statement and resubmitted it to Relators' Counsel at 3:31 p.m. today. Wells Fargo made no comments on Relators' draft statement, other than to add a paragraph at the end of Wells Fargo's section that addressed certain issues raised by Relators.  However, at approximately 4:20 this afternoon, Relators' Counsel informed Wells Fargo's Georgia Counsel that Relators would file a separate Status Report.

2.      Following is the statement circulated to Relators' Counsel by Wells Fargo's Counsel at 3:31 this afternoon, which Wells Fargo believes to be an accurate description of the communications with Relators and the reasons that Wells Fargo requests an early mediation:

**Wells Fargo statement:**

Counsel for Wells Fargo called Counsel for Relators to begin discussions related to a possible negotiated resolution about 4 weeks ago, prompted mostly by the Court's decision to open to non-involved parties the ongoing status conferences the Court was conducting related to various settlement discussions between Relators and other Defendants.

Prior to that, while Relators had made settlement inquiries to many other Defendants, there had been no such invitation extended to Wells Fargo.

Wells Fargo has advised Relators that their settlement template for Wells Fargo is not acceptable, and that Wells Fargo wishes to discuss Wells Fargo-specific facts on such matters as numbers of IRRRLs originated and Wells Fargo-specific default and foreclosure rates.

Wells Fargo has nonetheless also proposed a specific resolution number. Relators have indicated that Wells Fargo's proposed resolution number is not acceptable, and have not been inclined to engage in discussion of Wells Fargo-specific facts.

But, Wells Fargo believes that a resolution is potentially possible only if such Wells Fargo-specific matters are discussed by the parties in a format allowing for the open and confidential cross exchange of factual information. Thus, to facilitate such a process, Wells Fargo respectfully requests that the Court refer Wells Fargo and the Relators to a Court-appointed Mediator for a mediation to be conducted within the next 30-45 days, and that in the meantime the Court stay consideration of Wells Fargo's Motion to Dismiss.

Responding to Relators' points below, Wells Fargo believes a Court appointed Magistrate Judge as a mediator will be more effective in fostering thoughtful dialogue than any other mediator and that this will save several days time. After a short conversations with counsel for both the VA and the United States, Wells Fargo does not foresee difficulties in settlement documentation. However, there is no reason to establish any pre-conditions to mediation. Relators' assertion that Wells Fargo's settlement analysis is somehow discoverable is a new assertion that in Wells Fargo's view has no legal basis. Regardless, Wells Fargo remains optimistic that a mediation conducted in a short time frame as suggested may lead to a resolution to the case.

3.     So that the Court can put the final paragraph above in context, the draft Relators'

Statement to which the final paragraph of Wells Fargo's insert was responding is as follows:

**Relators response to Wells Fargo's statement:**

The first discussion by any Relators' counsel with any Wells Fargo counsel about the possibility of settlement occurred on Friday, September 7, 2012, in advance of the Court's scheduled in-person status conference set for September 10, 2012. Unlike other defendants, prior to that Wells Fargo had made no inquiry about possible settlement negotiations. Wells Fargo first made a settlement offer on Thursday, October 4, 2012, the day before the deadline for these parties to report to the Court per the Court's September 28 Order.

Relators have used the same "settlement template" analysis for every defendant.  Since there has been no discovery, Relators used publicly available sources to attempt to do a very conservative analysis of each defendant's damages exposure, using the same approach for each defendant.  Some defendants have disagreed with one or another number used therein, as does Wells Fargo.  Relators have told Wells Fargo the same thing they told those other defendants: defendants have had 12 months since the Second Amended Complaint was unsealed and 7 months since the first defendant settled to conduct their own analysis of damages exposure, which Relators will gladly consider if the defendant chooses to share it.  Relators have told Wells Fargo that analysis will be discoverable.  To date, Wells Fargo has not shared its own damages exposure analysis. Relators have settled with six defendants by using Relators' settlement template, and the numbers agreed upon with those defendants have ranged between 40% and 64% of the damages exposure reflected on Relators' settlement templates for those defendants.  Wells Fargo's claimed disagreement with the damages exposure analysis reflected in Relators' settlement template is irrelevant: Relators will not settle with Wells Fargo outside that range.

Wells Fargo did, on Thursday, October 24, for the first time, make a settlement offer. That offer amounted to 5.3% of the damages exposure reflected on Relators' settlement template.  Relators do not consider that a serious offer.

Relators cannot know whether "a resolution" with Wells Fargo "is potentially possible": the only information Relators have is Wells Fargo's low offer, its stated disagreement with Relators analysis of its damages exposure, and the fact it has not shared its own damages exposure analysis.

As Relators did regarding every defendant who sought to negotiate a settlement after PNC and CHL, Relators have told Wells Fargo that the non-number terms must be agreed upon before the number is negotiated - to avoid the kind of delay that has occurred thus far.  Relators have asked Wells Fargo whether it intends to request either the VA-approved administrative relief sought

by defendant CHL or the VA-approved administrative relief sought by defendant PNC, and if so, what VA has told Wells Fargo about such request.   Relators made that inquiry because experience with the settling defendants has proved there's little point in discussing numbers until those answers are known.

As to Wells Fargo's proposal for a 30-45 day delay for mediation:

-       Relators do not want to appear over-confident about Wells Fargo's pending motion to dismiss (our views are fully briefed), and do not want to appear unreasonable (our willingness to settle claims has now been demonstrated six times in this case) but we do not want to be blamed for further delay - the Court has been exceedingly patient with the parties.  In addition, Wells Fargo has had ample time to negotiate prior to making its first offer on October 4, 2012. For all those reasons, Relators do not acquiesce to Wells Fargo's request for mediation but do not oppose that request.

-       Given the content of Wells Fargo's statement, Relators respectfully submit that prior to any mediation, Wells Fargo should share with Relators its own internal damages exposure analysis.  (Relators have shared their analysis with Wells Fargo, as Relators did with other defendants.)  If in fact  "Wells Fargo wishes to discuss Wells Fargo-specific facts" that would appear to be the only  way to do so.

-       If the Court grants Wells Fargo's request for a short stay for mediation, Relators note that mediators are available every day next week at Henning Mediation & Arbitration Service in Atlanta.

-       Relators do not agree to Wells Fargo's request that the Court appoint a mediator.  Counsel for Relators are experienced with mediation, and have uniformly found that parties truly interested in settlement can readily agree upon a mediator.

4.       Wells Fargo is filing this Status Report without having seen Relators' separate

Status Report, and will respond to Relators' Report if a response is required.

5.       Wells Fargo remains convinced that a Mediation with a Court-appointed

Magistrate Judge would be a productive investment of resources.

Respectfully submitted this 5th day of October, 2012.


s/Charles T. Huddleston
_____
Charles T. Huddleston
State Bar No. 373975

chuddleston@bakerdonelson.com
Baker, Donelson, Bearman, Caldwell
      & Berkowitz, P.C.
3414 Peachtree Road, Suite 1600
Atlanta, Georgia  30326
(404) 221.6536
(404) 238.9622 (facsimile)


s/ Linda Klein
Linda Klein
State Bar No. 425069
lklein@bakerdonelson.com
Baker, Donelson, Bearman, Caldwell
      & Berkowitz, P.C.
3414 Peachtree Road, Suite 1600
Atlanta, Georgia  30326
(404) 221.6530
(404) 238.9630 (facsimile)


s/ Amy Pritchard Williams
Amy Pritchard Williams
amy.williams@klgates.com
K&L GATES LLP
214 North Tryon Street
Charlotte, North Carolina  28202
(704) 331.7429
(704) 353.3129 (facsimile)


s/ Robert J. Sherry
Robert J. Sherry
robert.sherry@klgates.com
K&L GATES LLP
1717 Main Street
Suite 2800
Dallas, Texas  75201
(214) 939.4945
(214) 939.5849 (facsimile)


*Counsel for Defendant Wells Fargo Bank,
N.A.*