E X H I B I T   A

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, | * | |
| VICTOR E. BIBBY and BRIAN J. | * | CIVIL ACTION FILE NO. |
| DONNELLY, | * | |
| | * | 1:06-CV-547-AT |
| RELATORS/PLAINTIFFS, | * | |
| | * | |
| vs. | * | |
| | * | |
| WELLS FARGO BANK, N.A., | * | |
| individually and as s/b/m with | * | |
| WELLS FARGO HOME MORTGAGE, | * | |
| INC., *et al.,* | * | |
| | * | |
| DEFENDANTS. | * | |

**RELATORS' SECOND INTERROGATORIES TO
DEFENDANT WELLS FARGO BANK, N.A.**

Relators request that Defendant answer in writing and under oath the following continuing Interrogatories.  In responding, Defendant is requested to furnish such information as is available to Defendant, and within the knowledge of any of Defendant's attorneys, investigators, agents, employees, and other representatives.  Each Interrogatory seeks information within the possession, custody, and/or control of Defendant, as that term is defined by law.  When a

question is directed to Defendant, the question is also directed to the aforementioned persons.

These Interrogatories shall be deemed to be continuing in nature, requiring a supplemental response upon the discovery of other or further information or documents affecting your response hereto. Each Interrogatory is addressed to the personal knowledge of the Defendant, as well as to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives. If Defendant is unable to answer a question completely, the question should be answered as fully as possible. When a question is directed to Defendant, the question is also directed to each of the aforementioned persons.

## PRELIMINARY INSTRUCTIONS ABOUT DISCOVERY IN THIS CASE

Defendant is hereby instructed not to make "general objections" based on privilege or work product claims, as such general objections do not specify that facts or documents exist which are subject to such claims, do not identify in any way the facts or documents to which privilege or work product is claimed, and do not provide anything to the Court for decision. If a particular Interrogatory does, in fact, encompass facts or documents, which you in good faith believe to be properly withheld from Relators, then you are instructed to so state. In the case of such withholding in response to any of these Interrogatories, you are instructed to

prepare responses to the Interrogatory, as asked, which include the information which you seek to withhold based on a claim of privilege or work product and submit that information on a privilege log as discussed in the Court's Guidelines to Parties and Counsel.  Failure to comply with these instructions will be deemed by Relators to be a failure to answer or respond under the Federal Rules of Civil Procedure.

      If Defendant believes that information responsive to these Interrogatories is somehow confidential because it contains trade secrets or allegedly proprietary business information, that belief provides no basis for withholding production of such information in a timely manner.  Relators have proposed a protective order to address such claims.  Relators request that Defendant simply identify the Interrogatory response or part thereof it deems õconfidentialö and Relators will treat the same as confidential pending entry of a protective order by the Court.

      It is improper for Defendant to attempt the following strategy:  wait until the time has run for responding to the Interrogatories, interpose general or boilerplate objections in its responses that a particular Interrogatory is overbroad, oppressive, or unduly burdensome (or similar such objections) and then fail to provide any substantive response to the Interrogatory in its responses.  If Defendant seeks to interpose boilerplate õburdenö objections in lieu of legitimate, substantive

responses to these Interrogatories, the law requires that Defendant file a motion for protective order prior to the running of the time for response to these Interrogatories, and in that motion explain the bases for the objections in a manner that satisfies the burden of proof which rests on Defendant to justify any such objections.  Moreover, the filing of any such motion for protective order does not excuse a failure to respond in a timely manner to these Interrogatories.

Relators request that Defendant take the time to accumulate all information, which is called for by these Interrogatories and to provide all such information in its initial written discovery responses.  If the time provided by law to respond to this written discovery does not provide you an adequate opportunity to do so, Relators will extend the time, provided the extension requested is not excessive.  If in responding to an Interrogatory you refer to documents produced pursuant to Relatorsø First Requests for Production of Documents, please identify the Request to which you refer, and identify the documents produced pursuant to that paragraph by Bates numbers.

## **DEFINITIONS**

For the purposes of these Interrogatories, the following terms should be interpreted as follows:

1)      õDocumentö means every writing, printing, record, graphic,

photographic or sound reproduction of every type and descriptionô be it tangible

in the form of paper or intangible in the form of electronic data and/or

communicationsô that is in your possession, custody, or control, or the possession,

custody, or control of your agents, including but not limited to, correspondence,

electronic mail (õe-mailö), spreadsheets or information stored in databases,

memoranda of agreements, assignments, meeting minutes, memoranda,

stenographic or handwritten notes, diaries, notebooks, account books, orders,

invoices, statements, bills, checks (or check stubs or records), vouchers, purchase

orders, reports, studies, surveys, charts, maps, analyses, publications, books,

pamphlets, periodicals, catalogues, brochures, schedules, circulars, bulletins,

notices, instructions, manuals, journals, data sheets, work sheets, statistical

compilations, data processing cards, microfilms, computer records (including

printouts, floppy, or other magnetic storage media), tapes, photographs (positive or

negative prints), drawings, films, videotapes, pictures, voice recordings, every

copy of such writing or record when such copy contains any commentary or

notation whatsoever that does not appear on the original.  Relators expressly intend

for the term õDocumentö including any attachments or exhibits to the requested

document, or any other documents referred to in the requested document or
incorporated by reference.

2)      "Person" means any natural person, corporation, partnership,
proprietorship, association, entity, organization, group of persons, or any
governmental body or subdivision thereof.

3)      "Defendant," "Wells Fargo," "WF," "you," or "your" refers to Wells
Fargo Bank, N.A., individually and as s/b/m with Wells Fargo Home Mortgage,
and all of their operating divisions, business partners, assignees, custodians,
subsidiaries, agents, attorneys, and affiliates, both domestic and foreign.  This
definition also includes all of the entities you have purchased, acquired directly, by
subsidiary, or by merger, which have been involved in the business of IRRRLs.

4)      "Identification" refers to the following:

(a)      "Identify" with respect to any "person," or any reference to
stating the "identity" of any "person," means to provide the
name, home address, telephone number, business name, title,
business address, and business telephone number of such
person, and a description of each such person's connection and
knowledge regarding the issues referenced in the Second
Amended Complaint.

(b)     õIdentifyö with respect to any õdocumentö or any reference to

stating the õidentificationö of any õdocumentö means to provide

the title and date of each such document, the name and address

of the party or parties responsible for the preparation of each

such document, the name and address of the party who

requested or required the preparation of the document or on

whose behalf it was prepared, the name and address of the

recipient or recipients of each such document, and the names

and addresses of any and all persons who have custody or

control of each such document, or copies thereof.

(c)     õIdentifyö with respect to any õcommunicationö or any

reference to stating the õidentificationö of any

õcommunicationö means to provide the subject and date of each

such communication, the name and address of the party or

parties responsible for both making and receiving the

communication, the name and address of the party who

requested or required the communication, any witnesses to the

communication, and the information conveyed in the

communication.

5)      õClosing agentsö means the closing or settlement agent, or attorney or law firm, or title agent or company which closed the IRRRL, and includes such personøs and entitiesø staff.

6)      õHUDö means HUD-1 Settlement Statement.

## **INTERROGATORIES**

### **CONTENTIONS**

#### 1.

Do you contend that venue is improper in this Court, jurisdiction is lacking over you in this Court, you have not been properly named, or service of process has been deficient on you in this matter?  If so, please describe and state with specificity all factual and legal bases supporting any such contentions(s).

#### 2.

Do you contend that you are not liable for the damages arising from the claims alleged against you in the Second Amended Complaint because of any agreement by which you did not explicitly assume liability for any of your predecessor entities?  If so, please describe and state with specificity all factual and legal bases supporting any such contentions(s) and indicate the entities for which you dispute and do not dispute liability.

3.

Do you contend that any other person or entity was guilty of or complicit in any act(s) or failure(s) to act that played any part in causing the damages or conduct complained of in this matter?  If so, please describe and state with specificity all factual and legal bases supporting any such contention.

## INTERNAL PROCESSES AND PROCEDURES

4.

From 2000 to the present, what did you do at the time each IRRRL was closed which you originated or funded to determine whether the HUD for that loan accurately reported the charging of fees in strict compliance with VA regulations?

5.

Describe the internal process for handling IRRRL refundings and conveyances from 2000 to the present.  If this process has changed by year, please indicate the years for which the process was in place and describe the differences and the years they occurred, and identify the employees most knowledgeable about the process.

6.

Describe how VALERI is and has been used by WF, and describe the process used by WF to train its employees to report to the VA using the VALERI system facts about IRRRLs which WF was required to report to the VA.

7.

State whether you are still in the business of funding, originating, underwriting, and/or purchasing IRRRLs.  If so, please describe the current activities in which you engage regarding IRRRLs.  If not, please provide the date on which you ceased such activity and the reasons for such stoppage.

8.

Have you conducted or caused to be conducted any surveillance on or investigation of the Relators since the day this lawsuit was filed in 2006 to date?  If so, describe in detail the surveillance or investigation conducted, including who instructed or requested whom to do so and who is in possession of any videos, reports, or documents relating thereto.

9.

Have you issued any internal memos, press releases, or conducted any interviews relating to the allegations made in the *Bibby* lawsuit?  If so, describe those in detail.

10.

Describe what the õLegal Servicing Departmentö is, and what duties it had with respect to IRRRLs.

## QUALITY CONTROL/AUDITING

11.

Have you at any point sought to determine the number and/or percentage of IRRRLs issued, originated, or funded by you from 2000 to the present that have attorneys fees or other unallowable charges bundled with allowable charges? If so, when and at the request of whom, and what was the number and percentage?

12.

Describe in detail the quality control program or programs utilized by WF regarding IRRRLs, and describe how that program or those programs changed, if at all, in the time period 2000 to the present.

13.

Please describe the function of your Fraud Risk Management (õFRMö) department from 2000 to the present, identify the division which includes said department, state whether such department in any way dealt with IRRRLs, and if so, in what way said department dealt with and/or evaluated IRRRLs.

14.

Please describe the function of your Quality Assurance (õQAö) department from 2000 to the present, identify the division which includes said department, state whether such department in any way dealt with IRRRLs, and if so, in what way said department dealt with and/or evaluated IRRRLs.

15.

With respect to reports from any fraud, risk management, quality assurance, or quality control departments issued to your management regarding IRRRLs, please describe the frequency with which such reports were made, the purpose of such reports, the requirements for such reports, to whom such reports were made and by whom they were reviewed, and the requirements imposed upon management to act upon such reports in some way.

16.

Was WF required to self-report violations of the IRRRL regulations and/or guidelines to the VA when it discovered such violations?  If your answer is in the affirmative, please identify the rules, regulations, and/or guidelines that required WF to self-report such violations.

17.

Did, in 2003 or at anytime, WF⊘s QA department conclude or state that the õoverall root causesö for high violation rates in underwriting across all business lines was õvolume, pressure to approve loans, and the experience levelsö of underwriters?  If so, please identify any documents relating thereto by Bates number, state to whom such documents were provided, and state what, if anything, was done in response to the sending of such document.

18.

Did, in 2003, WF⊘s QA department issue a report stating that õheavy volume, pressure to approve loans and meet acceptable turn times along with inexperienced staff are key contributing factors overall to the issues leading to material findingsö?  If so, was this description of the endemic problems with respect to the underwriters descriptive of all home mortgage loans, including IRRRLs?

## REASONABLE AND CUSTOMARY CHARGES

19.

What is the reasonable and customary fee by year and by state from 2000 to the present for the fees that are to be reported on the following lines on the HUDs for IRRRLs?  For each, describe the basis you used for determining that number.

13

a)    Line 1100

b)    Line 1101

c)    Line 1102

d)    Line 1103

e)    Line 1104

f)    Line 1105

g)    Line 1106

h)    Line 1107

i)    Line 1108

j)    Line 1109

k)    Line 1110

l)    Line 1111

m)    Line 1112

n)    Line 1113

20.

Do you contend the reasonable and customary charges for the fees listed in response to Interrogatory 19 are different for VA purchase loans or conventional purchase or refinance loans?  If so, for the different fees charged for VA purchase loans or conventional purchase or refinance loans, please provide a schedule

14

similar to that provided in response to Interrogatory 19, state the amount for each fee, and explain why the reasonable and customary charges for those fees are different for VA purchase loans or conventional purchase or refinance loans.

## WITNESSES

21.

Please identify the ten individuals who either signed or whose name appeared most often during the time period 2000 to the present on line 26B of the forms known as VA Form 26-1820 (also known as VA Report and Certification of Loan Disbursement Form) for IRRRLs issued, originated, or funded by you. Please also provide the current job title and description of said individuals, and if any are not currently employed by you, please provide the former employee's telephone number, last known address, and any other contact information you possess for that former employee.

22.

For each year from 2000 to the present, please identify the individuals, by name, current job title and description, and present employment status, who were authorized to certify and who certified any IRRRL as required by 38 C.F.R. § 36.4340(k).  If not currently employed by WF, please provide this former

employee's telephone number, last known address, and any other contact information you possess for that former employee.

23.

For each state, identify the ten settlement/closing agents or attorneys (or law firms) who have closed the largest volume of IRRRLs for you from 2000 to the present.

24.

Identify the settlement/closing agents or attorneys (or law firms) from 2000 to the present who you have requested the VA recognize as having an ongoing relationship as described in Chapter 1 at section 1.08 of VA Pamphlet 26-7.

25.

For your ten offices which processed the largest number of IRRRLs per year from 2000 to the present, identify any and all employees in the jobs listed below. For each, please indicate the name of the employee or former employee, his/her current job title, and state whether that individual is still employed with WF or any of its related entities.  If not currently employed with WF, please provide this former employee's telephone number, last known address, and any other contact information you possess for that former employee.

a)      VA underwriter;

16

b)      Closer who worked on VA loans;

c)      Post-closer who worked on VA loans;

d)      Direct supervisor of each employee identified in Items (a)-(c) above;

e)      Manager of the department of each employee identified in Items (a)-(c) above; and

f)      Employee who trained each employee identified in Items (a)-(c) above.

## RELATED LAWSUITS

### 26.

State whether WF used the same underwriters for IRRRLs that it used for FHA guaranteed loans.

### 27.

Describe any differences between the job or duties of WF loan underwriters for IRRRLs and the job or duties of WF loan underwriters for FHA guaranteed loans.

### 28.

Describe any differences between the quality control program or programs utilized by WF regarding IRRRLs and the quality control program or programs utilized by WF regarding FHA-guaranteed loans.

17

29.

What was the total amount you paid *to claimants* as a result of the settlement of claims made in *Gaston v. Wells Fargo* and as a result of the settlement of claims made in *Wynn v. Wells Fargo*?

30.

Identify by name, address, and telephone number, the potential claimants to whom notice was provided of the settlements in *Gaston v. Wells Fargo* and/or *Wynn v. Wells Fargo*.

31.

Identify by name, address, and telephone number, the claimants to whom checks were sent for the settlements in *Gaston v. Wells Fargo* and/or *Wynn v. Wells Fargo*.

**JOINT DEFENSE AGREEMENT**

32.

Are you or have you been a party to one or more joint defense agreements or joint confidentiality agreements in the defense of the above-captioned case or related litigation? This includes oral as well as written agreements. If so, please identify all such agreements, and for each agreement, identify the parties to that agreement and state:

a)      Whether the agreement was made in writing or orally;

b)      Whether the costs of attorneys fees or litigation are shared among the parties, and if so, how they are shared;

c)      Which law firms and/or lawyers are deemed to represent each defendant;

d)      What mutual or common interests underlie the making of such agreement;

e)      Whether defendants' duties to search for and/or produce documents in response to discovery requests are shared, and if so, how they are shared;

f)      Whether the agreement specifies any defenses or positions that the parties to it may or may not take in the above-captioned or related litigation;

g)      Whether you have withheld any documents pursuant to your participation in the agreement.  If so, please identify every such document by producing a privilege log, or if the document has been previously logged, by identifying every such entry with specificity;

h)      What information, strategies, and/or documents must be kept confidential under the agreement; and

i)    Whether the agreement was made with the intent to benefit one or more of the parties, and if so, please state the names of those parties.

## FINANCIAL AND CORPORATE STRUCTURE

### 33.

For 2000 to the present, what has been your profit by year and by state for the VA loan part of your business, including the amount attributable to IRRRLs?

## EMPLOYEE COMPENSATION

### 34.

From 2000 to the present, describe how WF employees are compensated for soliciting and closing veterans' loans and/or reducing the costs paid by WF for veterans' loans.

## DOCUMENT STORAGE AND RETENTION

### 35.

Please state how the information requested in First Interrogatories Nos. 3, 4, and 5 is maintained in the ordinary course of your business.  For example, is the information stored electronically or in hard copy?  If electronically, what is the name of the computer system?

### 36.

Describe your document retention policy as it relates to the length of time

you maintain your documents and under what conditions your documents should, or may, be destroyed or deleted from the place where the documents are stored, either electronically or as hard copies.  The scope of this Interrogatory pertains to any document potentially responsive to Relators' discovery requests in this case.

*[signatures continued on next page]*

Respectfully submitted this _____ day of _____, 2012.

BUTLER, WOOTEN & FRYHOFER, LLP

WILBANKS & BRIDGES, LLP

_____

_____

JAMES E. BUTLER, JR.
  jim@butlerwooten.com
  Georgia Bar No. 099625
LEIGH MARTIN MAY
  leigh@butlerwooten.com
  Georgia Bar No. 473389
BRANDON L. PEAK
  brandon@butlerwooten.com
  Georgia Bar No. 141605
2719 Buford Highway
Atlanta, Georgia  30324
(404) 321-1700
(404) 32101713 Fax

MARLAN B. WILBANKS
*[signed by Leigh Martin May with express permission]*
  mbw@wilbanks-bridgeslaw.com
  Georgia Bar No. 758223
TY M. BRIDGES
  tmb@wilbanks-bridgeslaw.com
  Georgia Bar No. 081500
3414 Peachtree Street, N.E., Ste. 1075
Atlanta, Georgia 30326
(404) 842-1075
(404) 842-0559 Fax

PHILLIPS & COHEN

_____

MARY LOUISE COHEN
*[signed by Leigh Martin May with express permission]*
  mlc@phillipsandcohen.com
  DC Bar No. 298299
TIMOTHY McCORMACK
  tmccormack@phillipsand cohen.com
  DC Bar No. 493692
2000 Massachusetts Avenue, N.W.
Washington, DC 20036
(202) 833-4567
(202) 833-1815 Fax

Attorneys for Relators/Plaintiffs

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in Times New Roman, 14 point font.

---

JAMES E. BUTLER, JR.
   jim@butlerwooten.com
   Georgia Bar No. 099625
LEIGH MARTIN MAY
   leigh@butlerwooten.com
   Georgia Bar No. 473389
BRANDON L. PEAK
   brandon@butlerwooten.com
   Georgia Bar No. 141605
Butler, Wooten & Fryhofer, LLP
2719 Buford Highway
Atlanta, Georgia  30324
(404) 321-1700
(404) 321-1713 Fax