IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, VICTOR E. BIBBY and BRIAN J. DONNELLY, | * * * * | CIVIL ACTION FILE NO. 1:06-CV-0547-AT |
| RELATORS/PLAINTIFFS, | * * | |
| v. | * * | |
| WELLS FARGO BANK, N.A., | * * | |
| DEFENDANT. | * | |

### DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR AN ORDER IMPLEMENTING A PARTIALLY PHASED DISCOVERY PROCESS

Defendant Wells Fargo Bank, National Association ("Wells Fargo"), pursuant to Rule 26 of the Federal Rules of Civil Procedure, respectfully moves this Court for a Scheduling Order that permits the immediate or expedited briefing on the legal issue of whether a Notice of Default sent to the U.S. Veteran's Administration ("VA") constitutes a "claim" under the Civil False Claims Act ("FCA").[1] Wells Fargo requests that the Court stay discovery concerning individual IRRRL loans as to which a Notice of Default was issued *but no guaranty claim was submitted to the VA*, pending a determination of this issue. As

---

[1] For the purposes of this Motion, Wells Fargo leaves for another day the question of whether Relators will be able to prove that concealed unallowable fees were charged to veteran borrowers in circumstances where the FCA scienter and materiality requirements have been satisfied. The Court can decide what constitutes a "claim" for FCA purposes without regard to whether other required FCA elements can be proven by Relators.

discussed below, deciding this legal issue at this stage of the case may narrow the scope of the case significantly, promote the efficient completion of discovery and potentially avoid the unnecessary production of hundreds of thousands of pages of documents. If the Court stays this line of discovery pending its ruling on this legal issue, all other discovery can proceed while this issue is decided.

**Background**

As noted by the Court in its Nov. 19, 2012 Order on Wells Fargo's Motion to Dismiss [Doc. 317], Relators allege that the submission of a Notice of Default (or in recent years, an Electronic Default Notification)(collectively "NOD") constitutes a claim under the FCA. *See* Order at 7 n.2, citing to Relators' Second Amended Complaint ("SAC") ¶ 95.

Wells Fargo contends that a NOD does not meet the statutory definition of a FCA claim as set forth in 31 U.S.C. § 3729(c)(2008) (amended 2009) and as applied by the courts because – unlike a request for a payment on a VA guaranty-- there is no request to the VA for a payment associated with a NOD. *E.g., United States v. McNinch*, 356 U.S. 595, 597 (1958) ("the conception of a claim against the government normally connotes a demand for money or for some transfer of public property"); *United States v. Bradley*, 644 F.3d 1213, 1248 n. 77 (11th Cir. 2011) (the FCA's focus is "on the actual submission of a claim" and there must be evidence that the "false representation was included as part of a specific claim" for

payment); *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002) (liability does not exist under the FCA unless the defendant "knowingly asks the Government to pay amounts it does not owe") (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999)).  Consequently, NODs issued on IRRRL loans that never became the subject of a VA guaranty claim are irrelevant and there is no need for loan-level discovery as to such loans.  The only IRRRLs that are the potential subject of this action are those as to which an actual guaranty claim was submitted to the VA.

The potential discovery impact of this issue is significant.  Wells Fargo estimates that there were no more than 4,500 IRRRLs originated by Wells Fargo that resulted in VA guaranty claims being presented between March, 2000 and the present. These VA guaranty claims are submitted after the IRRRL goes through a liquidating event - typically a foreclosure or a deed in lieu or short sale transaction. In contrast, Wells Fargo estimates that there were more than 10,000 IRRRLs over the same period that were the subject of NODs but <u>never</u> resulted in a VA guaranty claim, typically because the borrower cured the payment default, refinanced the IRRRL, or sold the subject property and paid off the loan in full.

On November 29, 2012, Wells Fargo and Relators held their mandatory Early Planning Conference pursuant to LR 16.1 and Rule 26(f).  At that time, Wells Fargo proposed that the parties agree to a partially-phased discovery plan

under which the parties could conduct limited discovery, if needed, as to whether a NOD constitutes a claim under the FCA, but at the same time other discovery in the case could proceed.  Wells Fargo would then move for summary judgment on this NOD issue so that it could be decided early in the case.

Wells Fargo made this proposal because it appeared, based on Relators' responses to certain motions to dismiss filed in this action, that Relators might contend that the question whether a NOD constitutes a FCA claim involves unresolved issues of fact.  *See, e.g.,* Relators' Resp. to JP Morgan's Mot. to Dismiss, at 17 [Doc. 240]; Relators' Resp. to PNC's Mot. to Dismiss, at 29 [Doc. 244] (stating that the question of whether NODs are claims is "an issue for a later day").  In light of Relators' then-stated position, Wells Fargo did not want to file an early motion for partial summary judgment only to have it met by a Rule 56(d) affidavit seeking additional factual discovery.

If, instead, Relators agree with Wells Fargo that the question whether a NOD constitutes a FCA claim is a legal one as to which no discovery is needed, then Wells Fargo will file its motion for partial summary judgment within two weeks of the Court's determination of this Motion.

Under Wells Fargo's proposal, all discovery other than requests directed to individual IRRRLs as to which a NOD was issued but no VA guaranty claim was made would proceed.  Such a phased discovery plan would allow the parties to

better define the scope of the case and avoid unnecessary interrogatories and document requests.

Relators declined to agree to Wells Fargo's proposal and, as a result, it was not included in the Joint Preliminary Report and Discovery Plan ("Joint Report"), filed December 5, 2012 [Doc. 325].  Wells Fargo stated expressly in the Joint Report (at pp. 13-14) that this Motion would follow.  Consequently, Wells Fargo files this Motion seeking a scheduling and discovery order by the Court that would allow an early decision on this important legal issue, expedite any needed discovery related to this issue, and stay discovery that will be moot if the Court concludes that a NOD is not a claim under the FCA.

**Argument**

I. Whether a NOD Constitutes a Claim Under the FCA is a Discrete Legal Question Ripe for Early Disposition.

To prove liability under 31 U.S.C. § 3729(a)(2), the plaintiff must show that the defendant: (1) knowingly made a false record or statement for the purpose of getting a false claim paid or approved by the government; and (2) that the defendant's false statement caused the government to actually pay a false claim, either to the defendant or to a third party. *See Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009); *see also Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671 (2008) (holding that knowingly false statements are only actionable under § 3729(a)(2) if the contractor used the statements "for the

purpose of getting 'a false or fraudulent claim paid or approved by the Government.')(quoting 31 U.S.C. § 3729(a)(2)). The actual submission of a claim to the Government for payment by either the defendant or a third party is a necessary element of a cause of action under the FCA. *See Clausen*, 390 F.3d at 1311 ("The submission of a claim is thus not . . . a 'ministerial act,' but the sine qua non of a False Claims Act violation.").[2] Thus, the IRRRL loans that were the subject of NODs but as to which no VA guaranty claim was ever submitted to the VA only become the subject of this FCA action if such NODs are determined to be claims under the FCA.

Wells Fargo views the question of whether a NOD constitutes a FCA claim as a legal issue, capable of early resolution in the case with no discovery. As set forth in greater detail below, early resolution of this question in Wells Fargo's favor will substantially reduce the number of individual IRRRLs originated by Wells Fargo that will need to be identified and as to which discovery may be needed. This, in turn, may reduce the amount of time needed for discovery in the case.

A NOD notifies the VA that the borrower is delinquent on the loan, but it does <u>not request any payment by the VA</u>. Wells Fargo does not believe that this

---

[2] In the November 19 Order on Wells Fargo's Motion to Dismiss, this Court stated: "To assert a False Claims Act violation based on use of a false document under 31 U.S.C. § 3729(a)(2) a relator must allege" that a defendant "made a false record or statement for the purpose of getting a false claim paid or approved by the government" and that the false statement "caused the government to actually pay a false claim, either to the defendant itself, or to a third party." [Doc 317 at 16, quoting *Hopper*.]

fact is disputed, and the Court can see from the NOD Form 26-6850, a copy of which is attached as Exhibit 1, that this is the case.  Further, Relators do not allege that anyone submits a request for payment to the Government solely as a result of the issuance of a NOD.  Instead, Relators contend that when a servicer notifies the VA that a loan has gone into default, a claim is submitted for FCA purposes because the Government allegedly expends money by the involvement of its employees in trying to assist the borrower in curing the default, even when nothing is paid by the VA to any third party.  SAC at ¶ 28.  Relators' allegation of Government spending following a NOD submission stems from what they describe as the VA's "intervention approaches."  *Id.* at ¶¶ 73-74 (Cited examples of such intervention are: (1) curing the delinquency; (2) pursuing a forbearance, reamortization, modification and/or repayment; (3) providing "VA financial assistance"; (4) authorizing the private sale of the property; (5) obtaining a deed in lieu of foreclosure; or (6) authorizing the foreclosure of the property.)  Relators also allege that the VA reimburses the servicing lender "for costs incurred by the lender to protect the collateral during the default process."  *Id.* at ¶ 75.

Wells Fargo contends as a matter of law that even if VA employees spend time interacting with a borrower or a loan servicer to investigate and deal with a default, this does not constitute a claim for FCA purposes.  There simply are *no requests to the VA for payments by any third parties* triggered by the issuance of a

NOD.  Rather, a claim for FCA purposes is triggered *only* by the filing of a Form 26-1874, "Claim Under Loan Guaranty," a copy of which is attached as Exhibit 2.[3]  There is no contention that such VA guaranty claim is made or paid when a NOD is sent to the VA.

Relators appear to contend that no Form 26-1874 VA Loan Guaranty Claim (or its electronic equivalent) needs to be submitted in order to create a viable FCA claim.  Wells Fargo disagrees and submits that this is a discrete legal issue appropriate for early briefing and Court resolution.  Similarly, Relators may contend that certain servicing-related costs, like VA incentive payments, also constitute FCA claims.[4]  Wells Fargo again disagrees, and this issue as well is ripe for early resolution.

Wells Fargo is prepared to move for partial summary judgment on the issue of whether NODs constitute claims under the FCA and to submit the question to the Court for prompt and efficient resolution.  However, it is not clear whether Relators contend that they need some limited discovery on this issue.  In the Joint

---

[3] Form 26-1874 has been superceded by the electronic filing of guaranty claims.  This electronic claim filing, similar to the electronic NOD filing, does not change the fact that no guaranty claim is filed at the time of NOD submission.

[4] The VA Servicer Guide expressly states that in order to be paid any funds on account of a foreclosure, compromise sale (*i.e.* short sale), a deed in lieu transaction or a refunding, a servicer must file a claim.  *See* VA Servicer Guide Chapter 9; 38 C.F.R. § 4824.  In contrast, servicers make no request or demand for payment in connection with incentive payments made by the VA for the servicer's success in obtaining a repayment plan, special forbearance agreement or loan modification agreement from a borrower.  Rather, such incentive payments are initiated by the VA automatically when a servicer reports that it and the borrower have executed a repayment plan, special forbearance or loan modification agreement.  *See* VA Servicer Guide §§ 5.2.7.1-5.2.7.3.  The VA sets the amount of the incentive payment payable for each event on an annual basis and the amount of the flat fees are based solely on the type of agreement reached with the borrower and the servicing tier ranking of the servicer.  *See* VA Servicer Guide §5.2.7.2; 38 C.F.R. § 36.4819.

Report [Doc. 325], Relators objected to Wells Fargo's proposal and stated, among other things: "Relators' counsel cannot imagine what that "discovery" would be, *since the subject is a legal issue*, which the Court has already addressed, at least in part." (Joint Report, at 14; emphasis added).

The forgoing statement by Relators makes it clear to Wells Fargo that Relators do not contend that they need discovery on the issue of whether a NOD constitutes a claim for FCA purposes. If Relators confirm this position, Wells Fargo requests the Court to direct Wells Fargo to move for partial summary judgment within two weeks and to stay NOD discovery until the Court resolves the issue.

In the event Relators have a different position and contend that they need discovery, Wells Fargo requests that the Court enter a Scheduling Order setting a limited time frame for expedited and focused discovery that Relators contend is necessary to address the question of whether a NOD constitutes a claim under the FCA. In addition, the Scheduling Order should set a briefing schedule for the partial summary judgment motion.

II. The Court Has Discretion to Implement a Phased Discovery Plan and to Order Early Resolution of Discrete Issues.

In instances where a key issue can be determined early in the case with limited discovery, phased discovery to address that pivotal question is appropriate. *See* Manual for Complex Litigation § 11.422 (4th ed. 2004) ("Targeted discovery

may be nonexhaustive, conducted to produce critical information rapidly on one or more specific issues. . . . Where the scope of the litigation is in doubt at the outset . . . the court should consider limiting discovery . . . until the relevance of expanded discovery has been established."); 6 Patrick E. Higginbotham, *Moore's Federal Practice* § 26.60(6) (2012).  The Court has broad discretion to manage discovery as it sees fit to promote the efficient resolution of the case. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 593-94, 593 n.13 (200) (Stevens, J., dissenting) (emphasizing the importance of the district court's role in managing discovery and noting the district courts' "broad discretion to control . . . the sequence in which discovery devices may be deployed; and the limitations imposed upon them").

As set forth below, if a NOD is not a claim under the FCA, then the number of individual IRRRLs that will have to be identified and as to which detailed loan-level discovery may need to occur will be tremendously reduced.  The question is a discrete legal issue that can be decided by the Court without addressing other legal or factual issues that will be decided later in the case.  Therefore, the Court should exercise its discretion to promote the early resolution of this critical issue, and potentially reduce the scope of discovery significantly.

III.  The Court Should Direct Resolution of the NOD Question Now Because Doing so Will Substantially Reduce the Burden of and Time Needed for Discovery.

Federal Rule of Civil Procedure 26(b) limits discovery to matters relevant to a party's claims or defenses. The Federal Rules also require that discovery be limited when the burden outweighs the benefit of such discovery. Fed. R. Civ. P. 26(b)(2)(C)(iii). Here, Wells Fargo submits that the identification of individual IRRRL loans that were the subject of a NOD but as to which no guaranty claim was submitted to the VA is beyond the scope of relevant discovery if those loans do not involve a "claim" under the VA guaranty for FCA purposes. As a result, production of loan-level information and documents concerning such loans do not fall within the scope of Rule 26 because no claim for payment was submitted to the Government in connection with those loans.

On December 5, 2012, Relators sent Defendant's counsel a draft of their proposed discovery requests that will be served upon Wells Fargo on January 16, 2013. Included in those proposed requests are a number of interrogatories and document requests that would require Wells Fargo to identify and then produce a significant volume of documents for IRRRLs that were the subject of a NOD but not a VA guaranty claim. Wells Fargo estimates that in the period since 2000, more than 10,000 IRRRLs originated by Wells Fargo would meet this criterion. In contrast, Wells Fargo estimates that fewer than 4,500 actual VA guaranty claims have been submitted to the VA during that time frame in connection with Wells Fargo originated IRRRLs.

For example, Interrogatory 3 of Relators' proposed First Set of Interrogatories seeks 15 different data points for each IRRRL that was the subject of a NOD, regardless whether the IRRRL later had a VA guaranty claim. A copy of Interrogatory 3 is attached as Exhibit 3. These data points are not all tracked electronically. In order to find all of them or to respond in accordance with Rule 33(d), Wells Fargo will have to find and review or produce not only the file created at the origination of the loan but also files pertaining to the servicing of the loan and any claim made on the guaranty.

Relators also seek the production of documents relating to NOD loans, including the HUD-1 for "each IRRRL for which you were the originating or funding lender and for which a [NOD] was issued anytime from 2000 to the present." *See* Document Requests 21 and 28. Document requests 24 and 25 request copies of all draft HUD-1s for all IRRRLs with a NOD where there was a change in the listed amount on lines 1101 or 1107 of the HUD-1. Document request 26 requests all documents relating to payments made to the closing agent or attorney for all NOD loans. Document request 32 requests the "complete VA Loan Electronic Reporting Interface reports" for every NOD loan. Document request 112 requests the 38 C.F.R. § 36.4340(k) certifications produced for all NOD loans. (Documents requests Nos. 21, 24, 25, 26, 28, 32 and 112 are attached as Exhibit 4). The foregoing requests cover all of the approximately 15,000

IRRRL loans as to which NODs were issued regardless of whether VA guaranty claims were ever made on those loans.

The foregoing summary of certain interrogatories and document requests makes clear that Relators seek a large amount of data and documents concerning all loans with a NOD. If a NOD without a VA guaranty claim is a FCA claim, then upwards of 15,000 IRRRLs must be searched. If the claim definition is restricted such that only loans with actual VA guaranty claims can constitute FCA claims, the IRRRL population is expected to be 4,500 or less. This will still be a major discovery burden, involving the search of multiple locations for various data. But the burden will be far greater if 15,000 IRRRLs or more need to be searched.

The determination that NODs do not constitute a claim for FCA purposes will significantly reduce the burden of discovery and allow parties to focus on the remaining issues in this case. Thus, a phased discovery plan is appropriate.

## IV. CONCLUSION

Wells Fargo respectfully requests that the Court enter an Order implementing a partially-phased discovery plan that sets forth a schedule that permits Relators to decide whether discovery on the NOD question is needed to oppose a partial summary judgment motion by Wells Fargo; sets a time frame for any limited discovery necessary to address the legal question of whether a NOD constitutes a claim under the FCA; sets a deadline for Wells Fargo to file a partial

summary judgment motion; and stays discovery requests that would require Wells Fargo to identify all of the IRRRLs that were the subject of a NOD only or to produce loan level documents or information concerning such loans.

This 31st day of December, 2012.

Respectfully Submitted,

s/ Charles T. Huddleston
Charles T. Huddleston
Georgia Bar No. 373975
Baker, Donelson, Bearman,
  Caldwell & Berkowitz, P.C.
3414 Peachtree Road
Suite 1600
Atlanta, GA  30376

s/ Amy Pritchard Williams
Amy Pritchard Williams
K&L Gates LLP
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, NC  28202

s/ Robert J. Sherry
Robert J. Sherry
K&L Gates LLP
1717 Main Street
Suite 2800
Dallas, TX  75201

***Attorneys for Defendant Wells Fargo Bank, National Association***

## **CERTIFICATION OF FONT**

I hereby certify that the foregoing document has been prepared in 14-point Times New Roman font and complies with LR 5.1(B), NDGa.

This 31st day of December, 2012.

/s/Charles T. Huddleston<br>
Charles T. Huddleston<br>
Georgia Bar No. 373975

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**
Suite 1600, Monarch Plaza
3414 Peachtree Rd. NE
Atlanta, Georgia 30326
Phone: 404-577-6000
Fax: 404-221-6501
Email: chuddleston@bakerdonelson.com

## CERTIFICATE OF SERVICE

I have this day served upon all necessary parties of record a copy of the foregoing **DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR AN ORDER IMPLEMENTING A PARTIALLY PHASED DISCOVERY PROCESS** by the ECF online filing system with U.S. District Court for the Northern District of Georgia.

I certify I have served this document on the following via e-mail:

*United States of America:*
Alan S. Gale
United States Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Alan.Gale@usdoj.gov

-and-
Paris Wynn
Assistant U.S. Attorney
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
Paris.Wynn@usdoj.gov

This 31st day of December, 2012.

/s/Charles T. Huddleston
Charles T. Huddleston
Georgia Bar No. 373975

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**
Suite 1600, Monarch Plaza
3414 Peachtree Rd. NE
Atlanta, Georgia 30326
Phone: 404-577-6000
Fax: 404-221-6501
Email: chuddleston@bakerdonelson.com