THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, VICTOR E. BIBBY and BRIAN J. DONNELLY, | * * * * | CIVIL ACTION FILE NO. 1:06-CV-547-AT |
| RELATORS/PLAINTIFFS, | * * | |
| vs. | * * | |
| WELLS FARGO BANK, N.A., individually and as s/b/m with WELLS FARGO HOME MORTGAGE, INC., *et al.*, | * * * * * | |
| DEFENDANTS. | * | |

**RELATORS' RESPONSE TO DEFENDANT
WELLS FARGO BANK, N.A.'S MOTION FOR AN ORDER
IMPLEMENTING A PARTIALLY PHASED DISCOVERY PROCESS**

Relators oppose Wells Fargo Bank, N.A.'s ("WF's") motion as an untimely and unwarranted motion for reconsideration. Frustrated one of its arguments on motion to dismiss was rejected by the Court, WF tries for another bite at the same apple, requesting this Court agree to a "scheduling order" that will allow WF to confuse and delay discovery while WF again attempts to get the Court to dismiss Relators' claim that defaults-without-foreclosure can create False Claims Act

liability if there is loss to the Government following the default.  That identical legal argument has already been made by WF and rejected by this Court.[1]  See Ex. A (providing excerpts from the motions to dismiss and response briefs addressing these same issues).

WF's "motion" truly is an odd duck.  The "motion" purports to be one for a "scheduling order," but WF seeks a "scheduling order" wherein the Court (1) "permits" WF to file a motion for partial summary judgment, Dkt. No. [333] at 1, regarding a subject WF claims is a purely "legal issue," id. at 2, (the very same legal issue which was already addressed on WF's Motion to Dismiss); and (2) "stays discovery" but grants WF unilateral permission to pick and choose which of Relators' discovery requests WF will deign to answer.  WF does not identify all the discovery items it deems related to the "legal issue" it identifies—and for good reason:  Relators' discovery was not broken down into discovery "related to false

---

[1] WF MTD, Dkt. No. [168-1] at 15-18; Rels.' Resp. to WF, Dkt. No. [238] at 23-24, & n.23; WF's Reply, Dkt. No. [257] at 8-13. See also JPMC MTD, Dkt. No. [174-1] at 18-21, 23-30; Rels.' Resp. to JPMC, Dkt. No. [240] at 18-24; JPMC Reply, Dkt. No. [259] at 9-13; PNC MTD, Dkt. No. [209-1] at 27-28; Rels.' Resp. to PNC, Dkt. No. [244] at 28-31; PNC Reply, Dkt. No. [260] at 15-16; SunTrust MTD, Dkt. No. [227-1] at 32-35; Rels.' Resp. to SunTrust, Dkt. No. [248] at 27-31; SunTrust Reply, Dkt. No. [268] at 16-19; CHL/BANA MTD, Dkt. No. [166-2] at 39 n.11; Rels.' Resp. to CHL/BANA, Dkt. No. [235] at 41 n.49; First Tenn. MTD, Dkt. No. [226-1] at 18-21; Rels.' Resp. to First Tenn., Dkt. No. [252] at 3 n.2; CMI MTD, Dkt. No. [232-1] at 30; Rels.' Resp. to CMI, Dkt. No. [261] at 22 n.17.

claims arising from foreclosures" and "false claims arising from default-without-foreclosure." Consequently, not only does WF seek permission to decide for itself which discovery items it will respond to, that exercise will indisputably lead to a confusing mess and further litigation about whether a particular discovery item is, or is not, specific to defaults-without-foreclosure and thus subject to being cut out by WF. WF's strategy remains what it has always been: delay.

Relators propose a different option: Let's accept the Court's rulings and get on with this case. There is just no need for the additional delay WF seeks by its largely undefined and confusing discovery plan. WF has had its chance to seek dismissal of the claims against it. Relators' Second Amended Complaint ("SAC") was unsealed over 15 months ago. Surely it is time for discovery in this case to proceed.

### A. Wells Fargo's Motion *Is* a Motion for Reconsideration.

Although WF tries to disguise its motion as a "discovery" motion,[2] the relief WF is requesting is in reality another prolonged delay of discovery so it can file an

---

[2] Even if the motion is correctly styled as a discovery motion, Relators note that Wells Fargo has failed to comply with the Court's Guidelines to Parties and Counsel in Cases Proceeding Before the Honorable Amy Totenberg. Section III.d provides that Wells Fargo should have contacted the Courtroom Deputy to request a conference with the Court before filing a formal motion. Dkt. No. [225] at 18. Of course, it is no accident that Wells Fargo ignored the Court's Guidelines since what it seeks is more delay.

3

untimely and unwarranted motion for reconsideration of the order denying its Motion to Dismiss. The arguments WF seeks to raise in the motion for partial summary judgment are identical to those already addressed and rejected by the Court's November 19, 2012, Order.

After Relators' SAC was unsealed, eight defendants filed Motions to Dismiss, and one defendant filed a Motion for Summary Judgment. The Court carefully considered the arguments of all parties and entered a 34-page order denying the majority of WF's arguments, including the identical argument raised here.[3]

Under Local Rule 7.2(E), "[m]otions for reconsideration shall not be filed as a matter of routine practice," but only where "absolutely necessary." LR 7.2(E), NDGa; *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995) (O'Kelley, J.). "A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time," *Pres. Endangered Areas of Cobb's History, Inc.*, 916 F. Supp. at 1560, and it "may not be used to present the court with arguments already heard and dismissed or to *repackage familiar arguments* to test whether the court will change its mind."

---

[3] Wells Fargo itself admits that its motion requires no facts or discovery and is based only on legal issues. WF Mot., Dkt. No. [333] at 2, 4, 5, 6, 10, 13.

*Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003) (Martin, J.) (emphasis added). "Rather, the motion should be reserved for certain limited situations, namely the discovery of new evidence, an intervening development or change in the controlling law, or the need to correct a clear error or prevent a manifest injustice." *Pres. Endangered Areas of Cobb's History, Inc.*, 916 F. Supp. at 1560. WF's attempt to reargue the same points already decided in the Order on the motion to dismiss is improper.

To even be considered by the Court, a motion for reconsideration must be filed within 28 days after entry of the order at issue or it is *per se* improper. LR 7.2(E), NDGa ("Whenever a party or attorney for a party believes it is absolutely necessary to file a motion to reconsider an order or judgment, the motion shall be filed with the clerk of court within twenty-eight (28) days after entry of the order or judgment."). This Court denied WF's Motion to Dismiss on November 19, 2012, Dkt. No. [317], but Wells Fargo did not file its Motion until December 31, 2012, Dkt. No. [333], in violation of the Local Rules' 28-day filing deadline. The Court has already addressed and resolved the issues WF raises, and Relators should be allowed to pursue discovery unimpeded by WF's constant attempts at delay.

**B.    Wells Fargo's Question Whether a NOD Constitutes a Claim Under the FCA Is Irrelevant to Relators' Claims *and* Already Answered.**

Just like the WF Motion to Dismiss, WF's new motion misstates Relators' claims and narrowly defines the Court's Order as it attempts to pose an irrelevant question that has already been answered. As the Court understood and noted in its Order denying WF's Motion to Dismiss, "a Plaintiff must plead that a defendant 'made a false record or statement for the purpose of getting a false claim paid or approved by the government' and that the government did, as a result, pay or approve a claim to the defendant or a third party." Order, Dkt. No. [317] at 21; *see also id.* at 12 (collecting cases for the proposition that courts "find[] a viable FCA claim in situations where the defendant fraudulently submitted the paperwork necessary to obtain a government assurance and a subsequent default on the loan resulted in the government's expenditure of funds."). In other words, if Relators prove that a loan contains fraudulent charges *and* the Government makes an expenditure related to the fraudulently-obtained guaranty, Relators present a valid FCA claim.[4] Relators plan to do just as the Court instructed, and Relators' discovery is drafted narrowly with this goal in mind.

---

[4] Courts have expressly held that false statements inducing the Government to enter into a guaranty are choate when the fraudulently-procured guarantee causes the Government to expend money. In *United States v. Ekelman & Associates, Inc.*,

6

WF claims the "pivotal question" posed by its motion is:  "[W]hether a Notice of Default sent to the U.S. Veteran's [*sic*] Administration ("VA") constitutes a claim under the Civil False Claims Act ("FCA")." WF Mot., Dkt. No. [333] at 1.  That "question" is, simply put, nonsense.  Relators do *not* contend that the mere technical act of filing the NOD *alone* creates the choate False Claim.  The Court's Order denying WF's Motion to Dismiss recognized that was not Relators' claim—and WF knows it as well.  Instead, the NOD is what must first be filed, the filing of which may cause the Government to expend funds because the guaranty exists.  The next step is to identify the loans for which a NOD has been filed *and* the Government has then made an expenditure.  Looking at the loans for which a NOD has been filed allows Relators to identify those loans as to which the Government expended funds because of a fraudulent guaranty.  *Obviously,* it is not the mere filing of the NOD that creates the False Claim–it is the expenditure of funds by the Government *after WF files the NOD* that results in liability.

---

for instance, the Sixth Circuit affirmed the district court's conclusion that the Government had sufficiently alleged a violation of the False Claims Act by alleging:  1) the defendant fraudulently induced the government to issue a guaranty; and then 2) "when the mortgages went into default, the government incurred damages."  532 F.2d 545, 550 (6th Cir. 1976).  No discrete "request for payment" need be made.  *Id.; see also United States v. Goldberg,* 256 F. Supp. 540, 541 (D. Mass. 1966); *United States v. First Nat'l Bank of Cicero*, 957 F.2d 1362, 1373-74 (7th Cir. 1992).

WF knows that as soon as the NOD is filed the Government will start expending funds; WF knows that is the usual result of its filing a NOD. The SAC explains precisely why and how submission of the NOD renders the false claim choate—because it costs the taxpayers money. 2d Am. Compl., Dkt. No. [54] ¶¶ 5, 28, 32, 46, 49, 73-76, 81, 83, 111, 122. "According to the VA Director of Loan Guaranty Services, the average cost to the VA of a default on a loan exceeds $15,000 per loan, even when the VA is successful in avoiding foreclosure." *Id.* ¶¶ 81, 84.

Because of its exposure under the guaranty, as soon as a NOD is submitted on a guaranteed loan, the VA immediately begins monitoring the "servicing" of the loan to ensure that its collateral is protected. Amongst other things, WF's submission of NODs costs taxpayers via incentive payments the VA pays lenders in an attempt to keep the guaranteed loans out of foreclosure. *See* 38 C.F.R. § 36.4319(a) ("The Secretary will pay a servicer . . . an incentive payment for each of the following successful loss-mitigation options or alternatives to foreclosure completed. . . ."). WF admits this in its motion. WF Mot., Dkt. No. [333] at 8 n.4. The expenditure of taxpayer funds following the submission of an NOD is a direct and proximate result of the Government's exposure under the fraudulently

obtained guaranty. The fraudulent certifications are the integral part of the causal chain that results in loss to taxpayers.

WF wants to ignore all the payments the Government makes after the NOD is filed. WF is seeking, once again, just as was done in the motions to dismiss, to limit its liability to foreclosed loans—to limit the universe of loans with fraudulently-obtained guarantees for which WF is liable to those loans in which Claim Under Loan Guaranty Forms (VA Form 26-1874) were filed, or where WF asked for *formal* payment under the guaranty. Although the payments requested by a Claim Under Loan Guaranty are a *subset* of the Government losses Relators seek to recover, there are a variety of losses incurred by the Government *before* foreclosure occurs and a Claim Under Loan Guaranty is filed but *after* a NOD is filed. Relators also seek to recover Government losses on these defaulted-but-not-foreclosed loans, and Defendants' attempts to have that claim dismissed were squarely rebuffed by this Court.

WF's Motion argues that only those loans for which a Claim Under Loan Guaranty can be "claims" because the government payments for the defaulted-but-not-foreclosed loans are "automatic." This argument reflects an apparent misunderstanding or a misstatement of the incentive payments the VA pays if the lender cures default through a repayment plan, special forbearance, or loan

modification.  *See* WF Mot., Dkt. No. [333] at 8 n.4; Ex. B, VA Servicer Guide, July 2009 at 73, 88-89.  These payments are made after a Notice of Default has been filed but *without* WF ever filing a Claim Under Loan Guaranty; WF only reports a "Default Cured/Loan Reinstated" event in the VA's reporting service—VALERI—to receive these VA payments.  Ex. B at 88.[5]

WF's argument that these types of expenditures cannot constitute false claims because they are "initiated" by the VA "automatically" frankly makes no sense.  First, the reporting of a "Default Cured/Loan Reinstated" event *by the lender* is what initiates the incentive payments.  The VA does not make an incentive payment unless and until such an event is reported, Ex. B at 73, 88-89, and WF knows such a payment *will result* from reporting the "Default Cured/Loan Reinstated" event.  *See* WF Mot., Dkt. No. [333] at 8 n.4.  Second, there is no requirement under the FCA that the VA's decision to pay must involve the discretion of a VA officer and cannot occur "automatically" following a lender's triggering event to be actionable**.  The lender is only required to make a "call upon the government fisc" to create liability.**  *See United States v. Neifert-White Co.*, 390 U.S. 228, 233 (1968) ("This remedial statute reaches beyond 'claims'

---

[5] Notably, lenders can receive multiple incentive payments on the same loan if the loan defaults on more than one occasion and the lender successfully completes the above loss-mitigation events. Ex. B, VA Servicer Guide at 89.

which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money."); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999) ("[T]he False Claims Act at least requires the presence of a claim—a call upon the government fisc—for liability to attach."). *When* WF's filing of a NOD results in an incentive payment, there has indisputably been a "call upon the government fisc" by WF.

Relators' discovery is drafted so WF does *not* have to produce documents for *all* of its loans. Instead, WF is asked to produce the HUDs for all loans for which a NOD was filed, limited to a specific period of time. Relators can then (1) examine the HUDs to determine if the loan's guaranty is void, and (2) determine whether the Government made expenditures as a result of the void guaranty. Relators will contend an FCA claim exists only as to those loans for which both (1) and (2) are present. Relators' discovery and plan is entirely consistent with the SAC and this Court's Order denying WF's Motion to Dismiss.

The parties already made their arguments on this exact issue in the Motions to Dismiss and Responses, and the Court's Order has already provided direction on this point. WF's attempt to have this Court belatedly reconsider its prior order so WF can circumvent its duty to comply with its discovery obligations should be denied.

11

### C.    Discovery as to Dirty Loans that Went to Default-But-Not-Foreclosure Is Also Relevant to WF's Scienter.

Not only can dirty loans that went to default but not foreclosure create False Claims Act liability if the Government expended funds following the lender's notice of default, but within those loan files will be found evidence otherwise relevant to the Relators' claims.  For example, systemic regulatory non-compliance by WF against all IRRRL borrowers demonstrates WF's illegal practices were not accidental and, at a minimum, constituted deliberate indifference to its regulatory obligations.  *See* 31 U.S.C. § 3729(b)(1) (defining "knowingly" to include "deliberate ignorance of the truth or falsity of the information").  Such documents have *already* surfaced in deal files attached to Defendant Countrywide Home Loans, Inc.'s ("CHL") Motion to Dismiss.  *See* Rels. Resp. to CHL's Mot. for Leave, Dkt. No. [283] at 2-8.  Such documents are obviously relevant to: proving WF's *scienter*, identifying additional witnesses with knowledge of WF's scheme to defraud, and establishing WF's knowing violation of its own policies and procedures.  In other words, information regarding "dirty" loans for which a NOD has been filed is discoverable for reasons other than those relating to WF's proposed motion for partial summary judgment.

### D.  Wells Fargo's Proposed "Phased" Discovery Notion Will Cause Confusion and Delay.

WF's proposal would result in a disjointed discovery process that would only cause more discovery disputes and additional delay.  WF claims it is willing to engage in "limited" discovery while its motion is pending, but WF does not identify *any* specific discovery items it wants stayed or *any* discovery items to which it is willing to provide answers or responses.  Clearly WF intends to decide for itself which discovery items it must respond to, and when.  It is certain WF will make those decisions to foment further delay and to evade discovery.  It is a dead certainty Relators will disagree.  Thus does WF spawn further litigation, under the guise of supposedly simplifying the case.

Because Relators' claims against WF have survived WF's Motion to Dismiss, Relators are entitled to discovery on those claims without further delay.

*[signatures continued on next page]*

Respectfully submitted this 14th day of January, 2013.

| | |
|---|---|
| BUTLER, WOOTEN & FRYHOFER, LLP | WILBANKS & BRIDGES, LLP |
| | |
| BY: s/ James E. Butler, Jr. | BY: s/ Marlan B. Wilbanks |
| JAMES E. BUTLER, JR. | MARLAN B. WILBANKS |
|   jim@butlerwooten.com |   mbw@wilbanks-bridgeslaw.com |
|   Georgia Bar No. 099625 |   Georgia Bar No. 758223 |
| LEIGH MARTIN MAY | TY M. BRIDGES |
|   leigh@butlerwooten.com |   tmb@wilbanks-bridgeslaw.com |
|   Georgia Bar No. 473389 |   Georgia Bar No. 081500 |
| BRANDON L. PEAK | 3414 Peachtree Street, N.E., Ste. 1075 |
|   brandon@butlerwooten.com | Atlanta, Georgia 30326 |
|   Georgia Bar No. 141605 | (404) 842-1075 |
| 2719 Buford Highway | (404) 842-0559 Fax |
| Atlanta, Georgia 30324 | |
| (404) 321-1700 | PHILLIPS & COHEN |
| (404) 32101713 Fax | |
| | BY: s/ Mary Louise Cohen |
| | MARY LOUISE COHEN |
| |   mlc@phillipsandcohen.com |
| |   DC Bar No. 298299 |
| | TIMOTHY McCORMACK |
| |   tmccormack@phillipsand cohen.com |
| |   DC Bar No. 493692 |
| | 2000 Massachusetts Avenue, N.W. |
| | Washington, DC 20036 |
| | (202) 833-4567 |
| | (202) 833-1815 Fax |
| | |
| | Attorneys for Relators/Plaintiffs |

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in Times New Roman, 14 point font.

                                            s/ James E. Butler, Jr.
                                            JAMES E. BUTLER, JR.
                                              jim@butlerwooten.com
                                              Georgia Bar No. 099625
                                          Butler, Wooten & Fryhofer, LLP
                                          2719 Buford Highway
                                          Atlanta, Georgia  30324
                                          (404) 321-1700
                                          (404) 321-1713 Fax

# CERTIFICATE OF SERVICE

    This is to certify that on January 14, 2013, I electronically filed RELATORS' RESPONSE TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR AN ORDER IMPLEMENTING A PARTIALLY PHASED DISCOVERY PROCESS with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

*Bank of America Corporation:*
Nancy H. Baughan
Robert M. Brennan
Scott E. Zweigel
Parker, Hudson, Rainer
    & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, GA  30303
-and-
Jonathan Rosenberg
William J. Sushon
Asher L. Rivner
O'Melveny & Myers LLP
7 Times Square
New York, NY  10036

*CitiMortgage:*
Christopher J. Willis
Burt M. Rublin
Diana L. Spagnuola
Ballard Spahr LLP
999 Peachtree Street, Suite 1000
Atlanta, GA 30309

*Countrywide and Bank of America, N.A.*
Richard K. Hines V
Nelson Mullins Riley & Scarborough
201 17th Street, Suite 1700
Atlanta, Ga. 30363
-and-
Robert J. Conlan, Jr.
Mark P. Guerrera
Mark D. Hopson
Sean C. Griffin
Meghan D. Berroya
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC  20005
-and-
Douglas A. Axel
Sidley Austin LLP
555 West Fifth Street
Los Angeles, CA  90013

*SunTrust:*
William H. Jordan
Michael L. Brown
Van A. Anderson
Alston & Bird LLP
1201 West Peachtree St,
Atlanta, GA 30309

*First Tennessee:*
Irene Freidel
Jennifer J. Nagle
K&L Gates LLP
One Lincoln Street
Boston, MA  02111
-and-
Christopher S. Anulewicz
Geremy Gregory
Balch & Bingham LLP
30 Ivan Allen, Jr. Blvd., N.W.
Suite 700
Atlanta, GA  30308

*GMAC:*
H. Wayne Phears
McGuire Woods LLP
Suite 2100, Promenade II
1230 Peachtree Street NE
Atlanta, GA 30309

*New Freedom:*
Thomas Barton
Aaron P.M. Tady
Coles Barton LLP
9 Lumpkin Street, Suite 200
Lawrenceville, GA  30046

*PNC:*
M. Robert Thornton
Christopher C. Burris
Catherine M. O'Neil
Jonathan R. Chally
King & Spalding
1180 Peachtree Street, N.E.
Atlanta, GA  30309

*Wells Fargo:*
Linda Klein
Charles T. Huddleston
Baker, Donelson, Bearman,
   Caldwell & Berkowitz, PC
Suite 1600, Monarch Plaza
3414 Peachtree Rd., NE
Atlanta, GA  30326
-and-
Amy P. Williams
K & L Gates, LLP
214 North Tryon Street, 47th Floor
Charlotte, NC 28202
-and-
Robert J. Sherry
K & L Gates, LLP
1717 Main Street, Suite 2800
Dallas, TX  75201


I certify I have served this document on the following via e-mail:

*United States of America:*
Alan S. Gale
United States Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, DC  20044
  *Alan.Gale@usdoj.gov*

-and-
Paris Wynn
Assistant U.S. Attorney
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA  30303
   *Paris.Wynn@usdoj.gov*

This 14th day of January, 2013.

                              BY: s/ James E. Butler, Jr.
                              JAMES E. BUTLER, JR.
                                Georgia Bar No. 099625
                              LEIGH MARTIN MAY
                                Georgia Bar No. 473389
                              BRANDON L. PEAK
                                Georgia Bar No. 141605
                              Butler, Wooten & Fryhofer, LLP
                              2719 Buford Highway
                              Atlanta, Georgia 30324
                              (404) 321-1700
                              (404) 321-1713 Fax