IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, VICTOR E. BIBBY and BRIAN J. DONNELLY,<br><br>RELATORS/PLAINTIFFS,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>DEFENDANT. | CIVIL ACTION FILE NO.<br><br>1:06-CV-0547-AT |

### WELLS FARGO BANK, N.A.'S REPLY TO RELATORS' RESPONSE TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR AN ORDER IMPLEMENTING A PARTIALLY PHASED DISCOVERY PROCESS

Wells Fargo Bank, N.A. ("Wells Fargo") respectfully submits this Reply to Relators' Response to Defendant Wells Fargo Bank, N.A.'s Motion for an Order Implementing a Partially Phased Discovery Process, filed Jan. 14, 2013 [Doc. 335]. Relators accuse Wells Fargo of failing to follow the rules and assert that this is a Wells Fargo effort to "confuse and delay discovery" on issues already decided by the Court.

Relators' accusations do not withstand scrutiny. Wells Fargo's Phased Discovery Motion [Doc. 333] represents a well-considered effort to obtain a Court

ruling on an important and previously-undecided legal issue: whether a Notice of Default ("NOD") in and of itself constitutes a "claim" for False Claims Act ("FCA") purposes. *See* 31 U.S.C. § 3729(b)(2) (defining "claim"). Relators now apparently concede this issue but assert that if employees of the Department of Veterans Affairs ("VA") devote any time to a defaulted loan, then a "claim" has been made under the FCA even if the VA does not receive any request or demand for payment or pay any funds to an outside party. If the Court rules in Wells Fargo's favor on this issue, it will significantly reduce the number of loans that need to be considered in this case, reduce discovery drastically and expedite the ultimate determination of this lawsuit.

During the relevant period,[1] there were no more than 4,500 Wells Fargo-originated IRRRLs that had actual guaranty claims filed with the VA using Form 26-1874 (Claim under Loan Guaranty) or its electronic equivalent.[2] Wells Fargo is gathering those loan files for review or production. Each of these files ranges in size from approximately 500 to 1,000 pages.[3]

---

[1] The relevant period for discovery purposes begins in March 2000, six years prior to Relators' filing of their initial complaint on March 8, 2006. *See* 31 U.S.C. § 3731 (b)(1) (six year statute of limitations).

[2] Wells Fargo continues its work to identify precisely IRRRLs with claims submitted to the VA since March 8, 2000. This is a difficult task due to the lack of some electronic information for the early part of this time period, but Wells Fargo has determined that the total number is no more than 4,500 and no less than 3,500 loans.

[3] These files can contain a combination of loan origination documents, servicing-related documents and claims-related documents.

Thus, Wells Fargo anticipates reviewing more than two million pages of documents as to those loans alone in order to identify documents and information that may be responsive to Relators' discovery requests.

In addition, there are approximately 10,000 IRRRLs that likely had NODs sent to the VA but as to which no VA guaranty claims ever were filed. Of these loans with NODs but no guaranty claims, the VA paid an incentive payment to a servicer on approximately 3,200. The review and production of documents from the approximately 6,800 additional loan files that had neither guaranty claims submitted nor incentive fees paid would entail another huge discovery effort, which Wells Fargo believes is outside the proper scope of this case.

In summary, there were four categories of loans that were initially the subject of the Second Amended Complaint ("SAC"). Wells Fargo's Motion For Partial Summary Judgment will further narrow the focus of the case, and Wells Fargo seeks to stay discovery only as to loan level requests pertaining to of the approximately 6,800 loans in categories (1) and (2) below.

(1) **Loans with a NOD only**: Relators have now conceded this is <u>not</u> a "claim";

(2) **Loans with a NOD and some internal "expenditure" due to VA employee activity (but no incentive fees and no guaranty claim)**: This category of loans is ripe for summary judgment;

(3) **Loans with Incentive Fees paid by the VA but no Guaranty Claims**: Wells Fargo will reserve summary judgment as to these

loans for later in the case, and discovery will proceed as to these loans;

(4) **Loans with Guaranty Claims**: Wells Fargo will reserve summary judgment as to these loans for later in the case, and discovery will proceed as to these loans.

The approximate 6,800 loans that fall into categories 1 and 2 are outside the scope of this case because as a matter of law, they neither reflect nor contain "claims" for payment under the FCA. If that enormous additional review and production can be avoided, the benefits to the efficient resolution of this lawsuit are obvious: the legal issues will be narrowed in a meaningful way and discovery will ultimately take less time to complete. Contrary to Relators' intimations, then, Wells Fargo's proposed course of action is not designed to delay these proceedings, but, in fact, is designed to expedite them – with the added benefit of conserving both the Court's and the Parties' resources.

It is now clear, based on Relators' Response, that Relators do not contend that they need discovery to respond to the Motion for Partial Summary Judgment on the loans in categories 1 and 2. Relators do not assert a need for discovery in their Response, and in the Joint Preliminary Report and Discovery Plan, Relators stated that they "cannot imagine" what discovery would be needed in order to resolve this legal issue. [Doc. 325 at 14] Accordingly, taking Relators at their word, Wells Fargo will file the partial summary judgment motion within two

weeks. Meanwhile, Wells Fargo urges the Court to grant the Phased Discovery Motion and thus to stay loan level discovery as to the 6,800 loans in categories 1 and 2 until the Court rules on the Motion for Partial Summary Judgment.

1. <u>Relators' Have Narrowed Their "Claim" Theory Somewhat</u>

In the Phased Discovery Motion, Wells Fargo identified an important issue as being whether a NOD constitutes a claim under the FCA. [Doc. 333 at 1]. Relators stated in their Response that this was "nonsense" because they claim that they made no such contention. [Doc. 335 at 7]. Not so. In the Second Amended Complaint ("SAC") at ¶ 95, Relators asserted: "When a lender sends a NOD to the VA on a loan for which the guaranty was fraudulently obtained, the submission of a false claim occurs." Indeed, the Court, in ruling on Wells Fargo's Motion to Dismiss, focused on exactly this assertion, saying: "Relators allege that the submission of a Notice of Default, Form 26-6850(a), for a loan tainted by unauthorized closing costs constitutes a false claim. (2d Am. Compl. ¶ 95.)." [Doc. 317 at 7, n. 2]. So, both Wells Fargo and the Court read Relators' position the same, which disposes of the "nonsense" claim.

Relators now have clarified that they contend that a NOD constitutes a claim for FCA purposes only once the VA makes "an expenditure" after receipt of the NOD. [Doc. 335 at 7]. Relators do not precisely describe what they contend

constitutes an "expenditure," but it is possible to discern two circumstances where Relators assert an "expenditure" has been made: (a) when the VA begins monitoring the servicing of a loan after receipt of a NOD to ensure that its collateral is protected [Doc. 335 at 8]; and (b) when the VA makes a payment to a third party in the form of an incentive fee [Doc. 335 at 8]. Wells Fargo does not agree with Relators' new "claim" definition because, among other things, it ignores the statutory requirement that there be a "request or demand . . . for money or property . . . ." 31 U.S.C. § 3729(b)(2)(A). However, it is helpful that Relators have clarified their position, and as set forth in Point 6 below, a Motion for Partial Summary Judgment will further narrow the universe of loans potentially at issue in this case.

    2.    <u>Wells Fargo is Not Seeking Reconsideration of the Motion to Dismiss Ruling</u>

Relators contend that the Phased Discovery Motion is a disguised attempt by Wells Fargo to delay discovery so that it can seek an untimely reconsideration of the Court's motion to dismiss ruling via the partial summary judgment motion. [Doc. 335 at 3-11]. This is not true.

This Court is well familiar with Wells Fargo's Motion to Dismiss [Doc. 168-1] and its Reply [Doc. 257]. The Court thus knows that Wells Fargo moved to dismiss primarily because Relators failed to meet Rule 9(b) particularity

requirements by failing to identify any specific claim with the detail required by applicable precedents.  The Court agreed with this position as to the 31 U.S.C. § 3729(a)(1) "presentment" claim and granted the Motion to Dismiss as to that claim.  The Court concluded that the § 3729(a)(2) "use" claim had been pled sufficiently. [Doc. 317 at 20-24].

Wells Fargo did state in its Motion to Dismiss that it believes that a NOD, standing alone, does not constitute a claim for FCA purposes.  [Docs. 168-1 at 15-16; 257 at 10-12].  But Wells Fargo did not move to dismiss based on the NOD issue and even went to pains in its Reply Brief to make clear that while some other defendants made various arguments in their filings, Wells Fargo asked the Court to rule with respect to Wells Fargo's Motion solely on the basis of the Relators' failure to satisfy Rules 9 and 12:

> Wells Fargo recognizes that other defendants have proffered additional grounds for dismissal and Relators have responded with certain arguments not asserted in their Response.  Wells Fargo believes that its asserted Rule 9(b) and 12(b)(6) arguments are appropriate bases for dismissal without reaching any other issues.  Thus, Wells Fargo requests that the Court rule on Wells Fargo's Motion based on the stated grounds.

[Doc. 257 at 2, n. 2].[4]

---

[4] Thus, Relators' references to the filings of other Defendants [Doc. 335 at 2, n. 1] are irrelevant.

Most important, and contrary to the assertion by Relators [Doc. 335. at 6], the Court did not resolve the NOD issue in its Order ruling on Wells Fargo's Motion to Dismiss. The Court did note that there is an issue related to what constitutes a "claim" for FCA purposes and cited to decisions of "[o]ther circuit courts" on this issue. [Doc. 317 at 12-13]. The Court then proceeded to rule on the Motion to Dismiss on the basis of its "presentment" and "use" analyses, without addressing whether a NOD (with or without a VA "expenditure") constitutes a "claim" for FCA purposes.

3. Wells Fargo Did Not Violate the Court's Guidelines

Relators assert that the Phased Discovery Motion is improper because Wells Fargo should have contacted the Courtroom Deputy before filing the Motion. [Doc. 335 at 3, n. 2]. Wells Fargo disagrees. The Guidelines are intended to apply to active discovery disputes, such as a potential motion to compel or an issue arising at a deposition. This is quite different. In this instance, the Parties discussed this issue and identified the need for a motion in their Joint Report and Discovery Plan. [Doc. 325] Indeed, Relators said in that Report: "[t]o have the Court address such legal argument, Wells Fargo should file a motion, to which Relators can respond." [Doc. 325 at 14]. It is inconsistent for Relators to urge the

filing of the Phased Discovery Motion in the Joint Report and then to contend that the Motion is improper.[5]

### 4. Relators' Scienter Argument Should be Rejected

Relators contend that even if Wells Fargo is correct on the claims definition, they should still have the right to examine all NOD loans, regardless whether guaranty claims have been filed or incentive fees were paid, because such a review of NOD loans with allegedly bundled fees will be relevant to evidence of Wells Fargo's scienter. [Doc. 335 at 12]. Relators' argument ignores the requirement under Rule 26(b)(2)(C) that discovery be limited where the burden or expense of discovery outweighs its likely benefit considering the needs of the case, amount in controversy, resources of the parties, importance of the issues and the importance of the discovery in resolving the issues. Relators will receive documents (including HUD-1s, the document that Relators contend is "key" (SAC ¶ 53)) from approximately 7,700 IRRRL loan files on which either actual VA guaranty claims were filed or incentive fees were paid. Do Relators truly contend that they need to review an additional 6,500 IRRRL files to see if there is alleged evidence of

---

[5] Wells Fargo also observes that Relators filed their Motion for Leave to Serve Additional Interrogatories [Doc. 326] without seeking a conference. Wells Fargo did not object because this too was a matter that had been addressed in the Joint Report and as to which there was a disagreement. [Doc. 325 at 18, noting that Relators would file their interrogatory motion].

scienter? Just stating the proposition demonstrates its absurdity, and the additional burden cannot possibly be justified.

5. <u>The Phased Discovery Motion Will Not Cause Confusion or Delay</u>

Relators make the unsupported assertion that the Phased Discovery Motion will cause confusion and delay. [Doc. 335 at 13]. That is untrue. In its Motion, Wells Fargo detailed specific examples of proposed discovery requests that should be held in abeyance until the Motion for Partial Summary Judgment is resolved. [Doc. 333 at 11-13].[6] Relators do not address a single one of the points made by Wells Fargo, instead just saying that confusion and delay will ensue. Respectfully, Wells Fargo submits that it has made a strong showing on how the grant of the Phased Discovery Motion is likely to lead to far more focused discovery; in response, Relators offer no analysis at all.

6. <u>The Phased Discovery Motion and a Motion for Partial Summary Judgment Make Sense</u>

Relators' Response makes it all the more clear that the NOD issue is one that merits resolution promptly. It is helpful to re-state what is and is not in dispute at this point. First, Relators' now agree that a NOD standing alone does not

---

[6] Relators have now served their first set of discovery. As set forth in the Motion, Interrogatory 3 and Document Requests 21, 24, 25, 28, 32 and 112 should be stayed pending a resolution of the partial summary judgment motion *to the extent that they pertain to NOD loans without incentive fees or VA guaranty claims*. Interrogatories 4 and 5 are directed to the same set of loans as Interrogatory 3 and should also be stayed to the same extent.

constitute a FCA claim. [Doc. 335 at 7]. Second, Wells Fargo agrees that where an IRRRL has been the subject of a VA guaranty claim or where incentive fees have been paid by the VA, then discovery should move forward as to those loans and the question whether Relators can prove the elements of a § 3729(a)(2) "use" claim is for a later day.[7] Thus, Wells Fargo is proceeding to gather data concerning these approximately 7,700 loans.

Based on Relators' Response, there remains an issue that can be decided at this juncture as a matter of law in a Motion for Partial Summary Judgment. Relators contend that the fact that a VA employee, on receipt of a NOD, may spend employee time related to the IRRRL, is sufficient to constitute a FCA claim due to an internal "expenditure" of funds for the employee's wages or salary, despite the lack of any request or demand for payment from any outside party. [Doc. 335 at 7]. Wells Fargo disagrees and will submit a motion focused on the contention that no FCA "claim" exists in such a circumstance.

This Reply is not the time to address the FCA claim definition in detail. However, because Relators address this legal issue in their Response [*e.g.*, Doc.

---

[7] Relators do not support their contention that the devotion of time by VA employees to a NOD loan is sufficient to constitute a claim, but devote significant attention in their Response [Doc. 335 at 8-11] to the alternate position that when there is some VA payment to the servicer via an incentive fee, then a "claim" exists for FCA purposes, even though this is a servicer fee and not a fee paid pursuant to the VA guaranty. Wells Fargo will defer seeking summary judgment on these incentive fee loans until later in discovery, but notes that Relators have made no allegation that any false statements were made for the purposes of getting a servicer incentive fee paid by the VA. *See Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009).

335 at 6, n. 4, 10-11], Wells Fargo notes the following. First, Wells Fargo is unaware of any court decision finding a FCA "claim" to exist based solely on internal government "expenditures". Thus, this appears to be an issue of first impression. Relators maybe intent on transforming the FCA into an all-purpose anti-fraud statute, but courts repeatedly have rejected such a construction of the FCA. *Allison Engine Co. v. United States ex rel. Sanders,* 553 U.S. 662, 671 (2008) (the FCA is not "an all-purpose antifraud statute"); *Hopper v. Solvay Pharm, Inc.*, 558 F.3d 1813, 1328 (11th Cir. 2009) ("because the Act protects the government from loss due to fraud, and it is not 'an all-purpose antifraud statute,' the relators must show that the government paid a false claim to prove a violation of subsection § 3729(a)(2)") internal citation omitted).

Second, Relators avoid citation to controlling Eleventh Circuit decisions that have emphasized the need for the actual submission of a claim. *E.g.*, *United States v. Bradley*, 644 F.3d 1213, 1248 n. 77 (11th Cir. 2011) (the FCA's focus is "on the actual submission of a claim" and there must be evidence that the "false representation was included as part of a specific claim" for payment).

Relators rely instead on *United States v. Ekelman & Associates, Inc.,* 532 F.2d 545, 550 (6th Cir. 1976), for the proposition that "Courts have expressly held that false statements inducing the Government to enter into a guaranty are choate

when the fraudulently-procured guaranty causes the Government to expend money." [Doc. 335 at 6, n.4]. This is not an accurate summary of the *Ekelman* ruling and, indeed -- as this Court has recognized -- the *Ekelman* court made clear that a claim for FCA purposes is not triggered "until the mortgage holder presents a claim to the VA or FHA for payment on the guaranty or insurance." 532 F.2d at 552; Doc. 317 at 12 (quoting *Ekelman,* 532 F.2d at 550-51). Further, in *Ekelman,* the expenditures at issue (the "reasonable expenses and repair costs incurred by the government in preserving the mortgaged property") were discussed as part of the damages that the Government might be entitled to collect. 532 F.2d at 547. But these were expenses incurred *after* the foreclosure in a case in which a *VA guaranty claim had been filed*. *Ekelman* does not stand for the proposition that government employee time spent reviewing a loan with no guaranty claim and no third party payment might trigger application of the FCA.

Wells Fargo respectfully submits that now is the time to address the "claim" issue. No discovery is needed. Wells Fargo will submit its Motion for Partial Summary Judgment promptly -- two weeks or less from today. While the Court considers that Motion, Wells Fargo respectfully asks that the relief requested in the Phased Discovery Motion be granted and that the Court stay loan level discovery

requests as to IRRRLs with NODs but no incentive payments and no VA guaranty claims.

This 28th day of January, 2013.

                                      Respectfully Submitted,

                                      s/Charles T. Huddleston
                                      Charles T. Huddleston
                                      Georgia Bar No. 373975
                                      Baker, Donelson, Bearman,
                                        Caldwell & Berkowitz, P.C.
                                      3414 Peachtree Road
                                      Suite 1600
                                      Atlanta, GA  30376


                                      s/Amy Pritchard Williams
                                      Amy Pritchard Williams
                                      K&L Gates LLP
                                      Hearst Tower, 47th Floor
                                      214 North Tryon Street
                                      Charlotte, NC  28202


                                      s/Robert J. Sherry
                                      Robert J. Sherry
                                      K&L Gates LLP
                                      1717 Main Street
                                      Suite 2800
                                      Dallas, TX  75201

                                      ***Attorneys for Defendant Wells Fargo***
                                      ***Bank, National Association***

## CERTIFICATION OF FONT

I hereby certify that the foregoing document has been prepared in 14-point Times New Roman font and complies with LR 5.1(B), NDGa.

This 28th day of January, 2013.

/s/Charles T. Huddleston
Charles T. Huddleston
Georgia Bar No. 373975

**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, PC**
Suite 1600, Monarch Plaza
3414 Peachtree Rd. NE
Atlanta, Georgia 30326
Phone: 404-577-6000
Fax: 404-221-6501
Email: chuddleston@bakerdonelson.com

## CERTIFICATE OF SERVICE

I have this day served upon all necessary parties of record a copy of the foregoing **WELLS FARGO BANK, N.A.'S REPLY TO RELATORS' RESPONSE TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR AN ORDER IMPLEMENTING A PARTIALLY PHASED DISCOVERY PROCESS** by the ECF online filing system with U.S. District Court for the Northern District of Georgia.

I certify I have served this document on the following via e-mail:

*United States of America:*
Alan S. Gale
United States Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
*Alan.Gale@usdoj.gov*

-and-
Paris Wynn
Assistant U.S. Attorney
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
*Paris.Wynn@usdoj.gov*

This 28th day of January, 2013.

/s/Charles T. Huddleston
Charles T. Huddleston
Georgia Bar No. 373975

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**
Suite 1600, Monarch Plaza
3414 Peachtree Rd. NE
Atlanta, Georgia 30326
Phone: 404-577-6000
Fax: 404-221-6501
Email: chuddleston@bakerdonelson.com