IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. VICTOR E. BIBBY AND | ) | |
| BRIAN J. DONNELLY, | ) | |
| | ) | |
| Plaintiff-Relators, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| WELLS FARGO BANK, N.A. | ) | 1:06-cv-0547-AT |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**STATUS REPORT RE: THE COURT'S SUGGESTIONS CONCERNING
THE POSSIBILITY OF COORDINATING AND/OR STREAMLINING
THE PROCESS BY WHICH THE PARTIES CAN SEEK INFORMATION
FROM THE NON-PARTY U.S. DEPARTMENT OF VETERANS AFFAIRS**

## I.   INTRODUCUTION AND BACKGROUND

1.     The United States of America, by and through the undersigned Assistant United States Attorney, presently files the instant Status Report Re: the Court's Suggestions Concerning the Possibility of Coordinating and/or Streamlining the Process by Which the Parties Can Seek Information from the Non-Party U.S. Department of Veterans Affairs.  On February 3, 2013, the Court requested that the United States Attorney's Office for the Northern District of Georgia ("U.S. Attorney's Office") assist the Court in exploring the possibility of coordinating the process by which the Parties in the related *Bibby* Actions – Nos. 1:06-cv-0547-AT and 1:12-cv-4020-AT – can request information from the United States Department of Veterans Affairs ("VA") – a non-party.[1]

2.     As an initial step towards assessing the Court's February 3, 2013 request, on February 21, 2013, the U.S. Attorney's Office requested that the Parties

---

[1] In the normal course, VA evaluates requests for agency information in accordance with its internal regulations.  *See, e.g.*, 38 C.F.R. §§ 14.800 – 14.810.  As noted by the Supreme Court in Touhy v. Ragen, 340 U.S. 462, 469-70 (1951), under the federal "housekeeping statute," 5 U.S.C. § 301, a federal agency is authorized to promulgate rules regarding the disclosure of agency information, including the procedures for responding to requests for documents and testimony.  The VA has enacted such regulations, and routinely applies them upon receipt of requests for agency information.  The only "remedy" with respect to VA's exercise of this authority is a collateral action in district court pursuant to the Administrative Procedure Act ("APA").  See, e.g., Teva Parenteral Medicines, Inc. v. U.S. Department of Health and Human Services, 2012 WL 4788053, *3-4 (D.D.C., October 9, 2012).  Under the APA, judicial review of an agency's decision is limited to determining whether such decisions were arbitrary, capricious or an abuse of discretion – a "highly deferential standard." *Id.* at *3.

provide a list of the documents and/or testimony topics that they felt were relevant to – and necessary to address – the claims and defenses at issue in the underlying litigation.  A true and correct copy of the February 21, 2013 email request from the U.S. Attorney's Office is attached hereto as Ex. 1.  In this request, while inviting the Parties to identify what information they felt was needed from VA, the U.S. Attorney's Office clarified that its request did not constitute a waiver of any VA regulation, or of any other VA right or prerogative.

3.      To date, all Parties have directed requests for information from VA to the U.S. Attorney's Office, which has forwarded such requests to, and discussed such requests with, VA.  First, on February 8, 2013, Defendant Wells Fargo forwarded a January 24, 2013 letter containing several FOIA requests (which were directed to VA) to the U.S. Attorney's Office.[2]  A true and correct copy of Wells Fargo's January 24, 2013 letter is attached hereto as Ex. 2.  Second, on February 15, 2013, Defendant MIC forwarded several requests for VA documents to the U.S. Attorney's Office.[3]  A true and correct copy of MIC's February 15, 2013 document requests are attached hereto as Ex. 3.  Third, on March 21, 2013, the

---

[2] Prior to the February 21, 2013 email request from the U.S. Attorney's Office, which requested that the Parties list what information they needed from VA, Wells Fargo had already attempted to obtain information from VA *via* its January 24, 2013 FOIA requests. These FOIA requests were forwarded to the U.S. Attorney's Office on February 8, 2013, and were treated as responsive to the February 21, 2013 email request from the U.S. Attorney's Office.

[3] Prior to the February 21, 2013 email request from the U.S. Attorney's Office, which requested that the Parties list what information they needed from the VA, MIC had already sent requests for VA documents to the U.S. Attorney's Office. These February 15, 2013 requests were considered responsive to the February 21, 2013 email request from the U.S. Attorney's Office.

Relators forwarded several requests for VA documents to the U.S. Attorney's Office.   A true and correct copy of the Relators' March 21, 2013 requests are attached hereto as Ex. 4.[4]

4.     Subject to its discretion and final review, as well as the Parties drafting an acceptable consent order (which is discussed more fully below in ¶¶ 5-7), that is submitted to – and approved by – the Court, VA will voluntarily make available certain material that has been requested by the Parties.[5]  In the interest of clarity, each request submitted by the Parties, as well as VA's response thereto, is set forth below.

5.     Several of the Parties' Requests seek material such as veteran names, addresses, loan numbers and other information, which constitutes private and/or personal identifying information that is subject to, and/or protected from disclosure by, the Privacy of 1974, 5 U.S.C. §552, and/or 38 U.S.C. §5701.  VA cannot voluntarily provide personal identifying information that is subject to the aforementioned statutes.   However, VA would comply with a consent order (as described below in ¶¶ 6-7) that is submitted by the Parties – and entered by the Court – that directed VA to produce such material.

6.     As noted above, VA's willingness to provide some of the material requested by the Parties is expressly conditioned on: (1) the Parties' joint execution

---

[4] Relators included a number of illustrative exhibits to their Requests, which have not been attached.

[5] To date, only Wells Fargo has requested that the VA make employees available for testimony.   However, Wells Fargo has not – and has stated that it cannot – identify the topics upon which testimony is sought absent its receipt and review of documents from the VA.   The VA will consider Wells Fargo's request for testimony once it identifies the topics upon which testimony is sought.

of a consent order (***that has first been reviewed and approved by VA***); (2) the submission of such consent order to the Court; and (3) the Court's entry of such consent order.

7.      Subject to the Court's review, the consent order shall: (1) direct VA to voluntarily provide certain loan level data, personal borrower information and other material that the Parties have requested and – in some instances – VA has agreed to provide; (2) restrict the use of all material provided by VA to the instant litigation; (3) provide for the timely destruction of all such material upon the resolution of the litigation; and (4) provide that the Parties shall reimburse VA for any unusual and/or excessive costs it incurs in providing the requested material.

8.      Should VA, after attempting to compile the material that it has agreed to provide in response to a particular request, determine and/or discover that it is impracticable and/or unduly burdensome to actually retrieve such material, VA will inform the requesting party that it will not provide such material and may afford the requesting party with the opportunity to amend the pertinent request.

9.      As reflected in the instant status report, VA – a non-party to the litigation – has taken substantial and meaningful steps to accommodate the Court's requests and suggestions regarding coordination and streamlining with respect to the Parties' need for information from VA.  Indeed, VA has agreed to voluntarily provide the bulk of the material requested by the Parties, and has not required the Parties to comply with VA regulations (*e.g.* 38 C.F.R. §§14.800 – 14.810), or even insisted that the Parties first demonstrate how the requested material is relevant to the claims and defenses at issue in the litigation.

10.      However, in some instances, the Parties' requests impose undue burdens on VA, and thus cannot be accommodated.  For instance, some requests

would require multiple VA employees – as well as contractors that would have to be hired by VA – to expend *scores* of hours (*e.g.*, over 100 hours, and in some instances, over 200 hours) responding to such requests.

11.    As a consequence of many factors – most notably the United States' recent and/or ongoing engagement in several large and intense armed conflicts around the world – VA should not be unduly diverted from carrying out its core mission of caring for the nation's veterans.   Nevertheless, VA has spent a considerable amount of time and resources assessing and responding to the Parties' requests, and will spend additional time compiling and providing certain material in response to the Parties' requests.

12.    In view of these considerations, VA cannot – on a rolling basis in connection with this litigation – divert additional time (*e.g.,* hundreds of work hours) and resources (*e.g.,* numerous VA employees and contractors) away from the agency's primary mission in order to field requests from the Parties.   Going forward, VA asks that the Parties not direct additional requests to VA absent a showing of substantial need.

## II.    THE PARTIES' REQUESTS AND NON-PARTY VA'S RESPONSES

### Wells Fargo's Requests for Documents
### Submitted By K&L Gates LLP

### Wells Fargo Request No. 1:

All documents comprising or referencing the studies conducted by Bankrate.com concerning average title/search/abstract and title insurance for each state that are referenced in Exhibit A to a February 28, 2011 letter from Dreama Walker of the Loan Guaranty Monitoring Unit in Nashville, Tennessee; to Mary Blue of Wells Fargo.

**VA's Response To Request No. 1:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA will voluntarily provide certain documents responsive to Wells Fargo Request No. 1.

**Wells Fargo Request No. 2:**

All manuals, memos, policies, procedures, guidelines, directives, protocols, checklists or other documents relating to individual policies or policy exceptions utilized by VA, including any Regional Loan Center or the Loan Guaranty Monitoring Unit, concerning permitted closing or settlement fees on VA guaranteed loans, including but not limited to policies and regional or state by state policy exceptions relating to the fees allowed to be charged to borrowers in connection with Interest Rate Reduction Refinance Loans ("IRRRLs").

**VA's Response To Request No. 2:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA will voluntarily provide certain documents responsive to Wells Fargo Request No. 2.

**Wells Fargo Request No. 3:**

All manuals, memos, policies, procedures, guidelines, directives, protocols, checklists or other documents used by VA, including by any Regional Loan Center or the Loan Guaranty Monitoring Unit, in conducting audits of the fees (including settlement or closing fees) charged in connection with IRRRL loans.

**VA's Response To Request No. 3:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA will voluntarily provide certain documents responsive to Wells Fargo's Request No. 3.

**Wells Fargo Request No. 4:**

All manuals, memos, policies, procedures, guidelines, directives, protocols, checklists or other documents used by VA, including at any Regional Loan Center or the Loan Guaranty Monitoring Unit, applicable to VA's treatment of IRRRL loans as to which VA determines that the borrower has been charged an unallowable fee, including any guidance as to refunds or principal reductions that might be required.

**VA's Response To Request No. 4:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA will voluntarily provide certain documents responsive to Wells Fargo's Request No. 4.

**Wells Fargo Request No. 5:**

All manuals, memos, policies, procedures, guidelines, directives, protocols, checklists or other documents located or used by VA, including at any Regional Loan Center or the Loan Guaranty Monitoring Unit, applicable to VA's treatment of IRRRL loans as to which VA determines that the loan amount exceeded VA regulations or guidelines.

**VA's Response To Request No. 5:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA will voluntarily provide certain documents responsive to Wells Fargo's Request No. 5.

**Wells Fargo Request No. 6:**

All manuals, memos, policies, procedures, guidelines, directives, protocols, checklists or other documents located or used by VA, including at any Regional Loan Center or the Loan Guaranty Monitoring Unit, listing or describing the circumstances under which it VA's policy to treat VA guaranty of a veteran's load as void.

**VA's Response To Request No. 6:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA will voluntarily provide certain documents responsive to Wells Fargo's Request No. 6.

**Wells Fargo Request No. 7:**

All documents relied upon by VA, including at any Regional Loan Center or the Loan Guaranty Monitoring Unit, to determine what constitute reasonable and customary title charges on an IRRRL loan, including but not limited to all fee quotations, invoices or schedules and all industry surveys regarding title charges used by VA.

**VA's Response To Request No. 7:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA will voluntarily provide certain documents responsive to Wells Fargo's Request No. 7.

**Wells Fargo Request No. 8:**

All documents and communications exchanged between Jeff London of the VA and anyone affiliated with Wells Fargo.[6]

**VA's Response To Request No. 8:**

The VA will not provide any material responsive to Wells Fargo's Request No. 8, as the Request is unduly burdensome.

**Wells Fargo Request No. 9:**

All documents and communications exchanged between Bill White of the VA and anyone at Wells Fargo.[7]

---

[6] Prior to the instant Status Report, Wells Fargo had withdrawn Request No. 8.

[7] Prior to the instant Status Report, Wells Fargo had withdrawn Request No. 9.

**VA's Response To Request No. 9:**

The VA will not provide any material responsive to Wells Fargo's Request No. 9, as the Request is unduly burdensome.

**Wells Fargo Request No. 10:**

All documents and communications exchanged between Dreama Walker of the VA and anyone affiliated with Wells Fargo.[8]

**VA's Response To Request No. 10:**

The VA will not provide any material responsive to Wells Fargo's Request No. 10, as the Request is unduly burdensome.

**Wells Fargo Request No. 11:**

All manuals, memos, policies, procedures, guidelines, directives, protocols, checklists or other documents related to the practice or alleged practice by lenders and/or settlement agents to combine VA allowable closing charges (like title fees) with possible unallowable fees (like attorney fees to close an IRRRL).  This practice is sometimes called "bundling."

**VA's Response To Request No. 11:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA will voluntarily provide certain documents responsive to Wells Fargo's Request No. 11.

**Wells Fargo Request No. 12:**

All manuals, memos, policies, procedures, guidelines, directives, protocols, checklists or other documents related to the use of offsets (such as lender credits or origination fees under 1%) to allow the charging of otherwise unallowable fees (like attorney fees to close an IRRRL) to a veteran borrower.

---

[8] Prior to the instant Status Report, Wells Fargo had withdrawn Request No. 10.

**VA's Response To Request No. 12:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA will voluntarily provide certain documents responsive to Wells Fargo's Request No. 12.

**Mortgage Investors Corporation Requests
Submitted By Weiner Brodsky Kider PC**

**MIC's Request No. 1:**

A list of all IRRRLs originated by Mortgage Investors for which a claim has been submitted to the VA, anytime from 2000 to the present, including: (1) the loan number; (2) the borrower name; (3) the address of the property; (4) the VA case number; and (5) the amount and date of the claim.

**VA's Response To Request No. 1:**

Subject to (1) VA's review for privileged, confidential, proprietary or otherwise sensitive information; (2) the Parties' joint execution and submission of a consent order – which has been pre-approved by VA – directing VA to provide the Parties with the personal information and loan level details requested in MIC's Request No. 1; and (3) the Court's entry of such consent order, VA will provide certain documents responsive to MIC Request No. 1.

**MIC's Request No. 2:**

A list of all IRRRLs originated by Mortgage Investors for which a Notice of Default ("NOD") or Electronic Default Notification ("EDN") was issued anytime from 2000 to the present, including:  (1) the loan number; (2) the borrower name; (3) the address of the property; (4) the VA case number; (5) the date on which the NOD or EDN was sent to the VA; and (6) the complete VA Loan Electronic Reporting Interface ("VALERI") reports available for such loans.

**VA's Response To Request No. 2:**

Subject to (1) VA's review for privileged, confidential, proprietary or otherwise sensitive information; (2) the Parties' joint execution and submission of

a consent order – which has been pre-approved by VA – directing VA to provide the Parties with the personal information and loan level details requested in MIC's Request No. 2; and (3) the Court's entry of such consent order, VA will provide certain documents responsive to MIC Request Nos. 2(1), 2(2), 2(3), 2(4) and 2(5) only.  The VA will not provide any material in response to MIC Request No. 2(6), as it is technically infeasible and unduly burdensome.

**MIC's Request No. 3:**

With respect to each loan listed in response to the questions above, all "Notice of Default" ("NODs") documents, also known as VA Form 26-6850; "Electronic Default Notifications" ("EDNs"), and/or any electronic or other reporting to the VA of the same or similar information; all "Notice of Default and Intention to Foreclose" documents, also known as VA Form 26-6850(a), and/or any electronic or other reporting to the VA of the same or similar information; all "Claim Under Loan Guaranty" documents, also known as VA Form 26-1874, and/or any electronic or other reporting to the VA of the same or similar information; all "Status of Loan Account-Foreclosure or Other Liquidation" documents, also known as VA Form 26-567 and/or VA Form FL26-567, and/or any electronic or other reporting to the VA of the same or similar information; and all "Status of Loan Account-Foreclosure or Other Liquidation" documents, also known as VA Form 26-567 and/or VA Form FL26-567, and/or any electronic or other reporting to the VA of the same or similar information.

**VA's Response To Request No. 3:**

MIC's Request No. 3 is vague and ambiguous, overbroad and unduly burdensome.  The VA will not provide any material in response to MIC's Request No. 3 as it no longer uses the referenced forms.  Although some of the information associated with these discontinued forms may exist electronically *via* VA's VALERI and/or WebLGY systems, it would be technically cumbersome and unduly burdensome for VA to attempt to retrieve such electronic data.  Any search for surviving electronic data would be well outside of VA's normal program activities, and would require that multiple VA employees divert their attention from their primary responsibilities in order to devote scores of hours to such an undertaking.  For instance, VA estimates that searching for data associated with MIC's Request No. 3 would require 3-5 employees to expend *at least* 120 hours for a universe of loans not exceeding 100 to 200 loan files.

**Relators' Requests[9]**
**Submitted By Butler, Wooten & Fryhofer, LLP**

**Relators' Requests Regarding VA Forms**:

A.    <u>VA Forms:</u>

1.    VA Form 26-1820:    "Report and Certification of Loan Disbursement"

2.    VA Form 26-6850: "Notice of Default"

3.    VA Form 26-6850a:    "Notice of Default and Intention to Foreclose"

4.    VA Form 26-1874: "Claim Under Loan Guaranty"

5.    VA Form 26-567:  "Status of Loan Account – Foreclosure or Other Liquidation"

**VA's Response**:

The VA will not provide any material in response to Relators' "VA Forms" Request No. A1, as VA does not retain such material.[10]   Similarly, VA will not provide any material in response to Relators' "VA Forms" Requests Nos. A2, A3, A4 and A5, as it no longer uses these forms.  Although some of the information associated with these discontinued forms may exist electronically *via* VA's

---

[9]    According to Relators, the documents they have requested are only needed in connection with the <u>specific loans</u> that they intend to identify as having unallowable charges.  Relators will identify these loans after Defendants produce the relevant HUD-1s for review.   According to Relators, if complete and responsive information is provided by Defendants, Relators may not need all of the documents they have requested from the VA.  <u>See</u> Ex. 4.

[10] Pursuant to 38 C.F.R. 36.4333, lenders are required to maintain such records for 3 years.

VALERI and/or WebLGY systems, it would be technically cumbersome and unduly burdensome for VA to attempt to retrieve such electronic data. Any search for surviving electronic data would be well outside of VA's normal program activities, and would require that multiple VA employees divert their attention from their primary responsibilities in order to devote scores of hours to such an undertaking. For instance, VA estimates that searching for data associated with "VA Forms" Requests A2-A6 would require 3-5 employees to expend at least 120 hours for a universe of loans not exceeding 100 to 200 loan files.

**Relators' Requests Regarding VALERI**:

      B.    <u>VALERI Fields/Events (see Exhibit B for excerpts of the VALERI Servicing Systems Interface Document ("VSSID") and VA Servicer Guide with highlighting of requested information – the items and references below come directly from Exhibit B)</u>:

    <u>Basic Loan Information</u>:

      1.    Loan Identification Number [VSSID Sequence ("Seq.") No. 05]

      2.    Servicer Loan Number [VSSID Seq. No. 09]

      3.    Date of the Loan [VSSID Seq. No. 06]

      4.    Original Loan Amount [VSSID Seq. No. 07]

      5.    Current Servicer Identification Number [VSSID Seq. No. 08]

      6.    Property Address, Unit, City, State and Zip Code [VSSID Seq. Nos. 19, 20, 21, 22, 23, 25]

**VA's Response**:

With respect to post-2008 documents and loans, subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA – after the Relators identify the specific loans at issue – will voluntarily provide certain documents responsive to Relators' "Basic Loan Information" Requests Nos. B1,

B2, B3, B4, B5 and B6.  However, pre-2008 documents responsive to Relators' "Basic Loan Information" Requests Nos. B1, B2, B3, B4, B5 and B6 are not available.

<u>Delinquency Fields:</u>

    1.    Electronic Default Notification [VSSID Ex. B No. 11]

    2.    Expenses Incurred to Date (any costs paid by the servicer that can be charged to the loan [VSSID Seq. No. 60]

**VA's Response:**

With respect to post-2008 documents and loans, subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA – after the Relators identify the specific loans at issue – will voluntarily provide certain documents responsive to Relators' "Delinquency Fields" Requests Nos. B1 and B2.  However, pre-2008 documents responsive to Relators' "Delinquency Fields" Requests Nos. B1 and B2 are not available.

<u>Incentive Payments:</u>

    1.    Default Cured/Loan Reinstated [VSSID Ex. B No. 19]

    2.    Compromise Sale Complete [VSSID Ex. B No. 31]

    3.    Deed-In-Lieu Complete [VSSID Ex. B. No. 34]

**VA's Response:**

With respect to post-2008 documents and loans, subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA – after the Relators identify the specific loans at issue – will voluntarily provide certain material responsive to Relators' "Incentive Payments" Requests Nos. B1, B2 and B3.  However, material from February 20, 2008 through November 18, 2008 is incomplete (due to the transition to VALERI).  Finally, pre-February 20, 2008

material responsive to Relators' "Incentive Payments" Requests Nos. B1, B2 and B3 is not available.

Foreclosures:

1.  Foreclosure Date of Sale [VSSID Seq. No. 108]

**VA's Response:**

With respect to post-2008 documents and loans, subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA – after the Relators identify the specific loans at issue – will voluntarily provide certain documents responsive to Relators' "Foreclosure" Request No. B1. Pre-2008 documents responsive to Relators' "Foreclosure" Request No. B1 are not available.

Claims:

1.  Basic Claim Events [VSSID Ex. B No. 46]

2.  Supplemental Claim Events [Servicer Guide at 115]

3.  VALERI Calculation of Claim Payment [Servicer Guide at 116]

4.  Refunding Settlement [VSSID Ex. B No. 47]

**VA's Response:**

With respect to post-2008 documents and loans, subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA – after the Relators identify the specific loans at issue – will voluntarily provide certain documents responsive to Relators' "Claims" Requests Nos. B3 and B4. However, pre-2008 documents responsive to Relators' "Claims" Requests Nos. B3 and B4 are not available. The VA will not provide any material in response to Relators' "Claims" Requests Nos. B1 and B2 as such requests – as drafted – are unduly

burdensome.[11]   Pre-2008 material that is responsive to Relators' "Claims" Requests Nos. B1 and B2 is not available.

Election to Convey:

1.      Transfer of Custody [VSSID Ex. B No. 41]

**VA's Response:**

With respect to post-2008 documents and loans, subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA – after the Relators identify the specific loans at issue – will voluntarily provide certain documents responsive to Relators' "Election to Convey" Request No. B1.  Pre-2008 documents responsive to Relators' "Election to Convey" Request No. B1 are not available.

**Relators' Requests Regarding WebLGY:**

C.      WebLGY Reports:

1.      Lender Loan Search Report by Lender from 2000-present  [see Exhibit C for example]

**VA's Response:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA – after the Relators identify the specific loans at issue – will voluntarily provide certain documents responsive to Relators' Request No. C.1, *only* concerning Wells Fargo and MIC.

2.      Loan History Report by Borrow from 2000-present with veteran name, social security number, and date of birth redacted [see Exhibit D for example]

---

[11] With respect to Relators' "Claims" Requests, the VA can provide information concerning how much the VA paid on a particular claim.  However, as drafted, the Requests seem to have a broader scope, which implicates difficult technical issues and entails lengthy and time consuming review processes.

**VA's Response:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA – after the Relators identify the specific loans at issue – will voluntarily provide certain documents responsive to Relators' Request No. C.2.

      3.    Loan Guaranty Certificates from 2000-present [see Exhibit E for example]

**VA's Response:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA – after the Relators identify the specific loans at issue – will voluntarily provide certain documents responsive to Relators' Request No. C.3.

    D.    <u>Payments to Servicer and Lenders by Loan:</u>

      1.    Incentive Payments

      2.    VA Purchase Post-Foreclosure

      3.    Refundings

      4.    Foreclosure Claims

      5.    Deeds-in-Lieu of Foreclosure Claims

      6.    Compromise Sale Claims

      7.    Reimbursement of Third-Party Fees/Administrative Costs

**VA's Response:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA – after the Relators identify the specific loans at issue – will voluntarily provide certain material responsive to Relators' "Payments to Servicer and Lenders by Loan" Request Nos. D1 through D6.  With respect to pre-2008 loans, VA will not provide any material responsive to Relators' "Payments to Servicer and Lenders by Loan" Request No. D3, as this would be unduly burdensome.  The VA will not provide any material in response to Relators' "Payments to Servicer and Lenders by Loan" Request No. D7, as the Request is unduly burdensome.[12]

     E.    Certifications:

          1.    List of Defendants' Representatives Authorized to Sign Line 26B of VA Form 26-1820 or Authorized to Provide Certifications Pursuant to 38 C.F.R. 36.4340(k).

**VA's Response:**

The VA does not retain the material sought by Relators' "Certification" Request No. E.1.[13]

     F.    Additional Information:

          1.    All Regional Manuals, Guidelines, Memos, etc. regarding IRRRLs from 2000-present.

---

[12] Moreover, the costs associated with D7 are included in the foreclosure claim amount in D4.

[13] While the VA does not retain the records sought by this Request, pursuant to 38 C.F.R. 36.4333, lenders *are* required to keep such records for 3 years. Additionally, upon information and belief, only the lenders would have a list of authorized signers.

**<u>VA's Response</u>:**

Subject to its review for privileged, confidential, proprietary or otherwise sensitive information, VA will voluntarily provide certain material responsive to Relators' Request No. F1.


Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

<u>/s/ Paris A. Wynn</u>
PARIS A. WYNN
Ga. Bar No. 933549
ASSISTANT U.S. ATTORNEY
600 Richard B. Russell Federal Bldg.
75 Spring Street, S.W.
Atlanta, Georgia 30335
Telephone: (404) 581-6302
Facsimile: (404) 581-6181
E-mail: Paris.Wynn@usdoj.gov


May 3, 2013

<u>CERTIFICATE OF COMPLIANCE</u>

I certify that the documents associated with this certificate were prepared using one of the font and point selections approved by the Court in Local Rule 5.1B for documents prepared by computer.

<u>/s/ Paris A. Wynn</u>
PARIS A. WYNN
Ga. Bar No. 933549
ASSISTANT U.S. ATTORNEY

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day electronically filed the foregoing Status Report, using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

This 3rd day of May, 2013.

<u>/s/ Paris A. Wynn</u>
PARIS A. WYNN
Ga. Bar No. 933549
ASSISTANT U.S. ATTORNEY