# EXHIBIT 2

**Wynn, Paris (USAGAN)**

| | |
|---|---|
| **From:** | Williams, Amy <Amy.Williams@klgates.com> |
| **Sent:** | Friday, February 08, 2013 10:26 AM |
| **To:** | Wynn, Paris (USAGAN) |
| **Cc:** | 'Huddleston, Charles' |
| **Subject:** | FW: Expedited FOIA Request   / Bibby |
| **Attachments:** | 20130124_135642.PDF |

Paris, Following up on this week's conference and as requested, here is a copy of our FOIA request to the VA.  I have not heard anything from the VA in response to this request yet. Let me know if you have questions. Thanks. Amy

# K&L GATES

**Amy Pritchard Williams**
K&L Gates LLP
214 North Tryon Street
47th Floor
Charlotte, NC 28078
Phone: 704 331-7429
Fax: 704 353-3129
amy.williams@klgates.com
www.klgates.com

---

**From:** Williams, Amy
**Sent:** Friday, January 25, 2013 5:36 AM
**To:** 'foia.vbaco@va.gov'
**Cc:** 'Simpson, Joseph (OGC)'
**Subject:** Expedited FOIA Request

Please see the attached FOIA request pertaining to loan guaranty services documents.

# K&L GATES

**Amy Pritchard Williams**
K&L Gates LLP
214 North Tryon Street
47th Floor
Charlotte, NC 28078
Phone: 704 331-7429
Fax: 704 353-3129
amy.williams@klgates.com
www.klgates.com

This electronic message contains information from the law firm of K&L Gates LLP.  The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note

that any disclosure, copying, distribution, or use of the contents of this message is prohibited.  If you have received this e-mail in error, please contact me at **Amy.Williams@klgates.com**.

# K&L|GATES

January 24, 2013

Amy Pritchard Williams
D  704.331.7429
F  704.353.3129
amy.williams@klgates.com

**Via Electronic Submission to foia.vbaco@va.gov**

VBA FOIA Officer
U.S. Department of Veterans Affairs
Veterans Benefits Administration
Loan Guaranty Office
810 Vermont Ave NW
Mail Code 26
Washington, D.C.  20420

Re:     Expedited FOIA Request

Dear Sir or Madam:

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, and the Veterans Administration's implementing regulations, 38 C.F.R. § 1.550 *et seq.*

On behalf of my client, Wells Fargo Bank, N.A. ("Wells Fargo"), I request a copy of all of the documents listed in Document Requests 1-12 below.  Wells Fargo is willing to pay all fees for processing this request, and respectfully requests expedited service in processing this request.  This request arises out of ongoing litigation, *United States ex. rel., Victor E. Bibby and Brian J. Donnelly v. Wells Fargo Bank, N.A.*, Civ. No. 1:06-CV-0547-AT (N.D. GA).

Unless otherwise stated, this request relates to the time period **March 1, 2000** to the present. This FOIA request does **not** seek information pertaining to the identification of any individual veteran or any documents pertaining to any individual veteran borrower.

1.      All documents comprising or referencing the studies conducted by Bankrate.com concerning average title search/abstract and title insurance for each state that are referenced in Exhibit A to a February 28, 2011 letter from Dreama Walker of the Loan Guaranty Monitoring Unit in Nashville, Tennessee, to Mary Blue of Wells Fargo.  For your convenience, a redacted copy of the Feb. 28, 2011 letter is attached.

2.      All manuals, memos, policies, procedures, guidelines, directives, protocols, checklists or other documents relating to individual policies or policy exceptions utilized by the VA, including any Regional Loan Center or the Loan Guaranty Monitoring Unit, concerning permitted closing or settlement fees on VA guaranteed loans, including but not

CH-3151428 v2

# K&L|GATES

FOIA Officer
U.S. Department of Veterans Affairs
Veterans Benefits Administration
Loan Guaranty Office
January 24, 2013
Page 2

limited to policies and regional or state by state policy exceptions relating to the fees allowed to be charged to borrowers in connection with Interest Rate Reduction Refinance Loans ("IRRRLs").

      3.      All manuals, memos, policies, procedures, guidelines, directives, protocols, checklists or other documents used by the VA, including by any Regional Loan Center or the Loan Guaranty Monitoring Unit, in conducting audits of the fees (including settlement or closing fees) charged in connection with IRRRL loans.

      4.      All manuals, memos, policies, procedures, guidelines, directives, protocols, checklists or other documents located or used by the VA, including at any Regional Loan Center or the Loan Guaranty Monitoring Unit, applicable to VA's treatment of IRRRL loans as to which the VA determines that the borrower has been charged an unallowable fee, including any guidance as to refunds or principal reductions that might be required.

      5.      All manuals, memos, policies, procedures, guidelines, directives, protocols, checklists or other documents located or used by the VA, including at any Regional Loan Center or the Loan Guaranty Monitoring Unit, applicable to VA's treatment of IRRRL loans as to which the VA determines that the loan amount exceeded VA regulations or guidelines.

      6.      All manuals, memos, policies, procedures, guidelines, directives, protocols, checklists or other documents located or used by the VA, including at any Regional Loan Center or the Loan Guaranty Monitoring Unit, listing or describing the circumstances under which it is the VA's policy to treat the VA guaranty of a veteran's loan as void.

      7.      All documents relied upon by the VA, including at any Regional Loan Center or the Loan Guaranty Monitoring Unit, to determine what constitute reasonable and customary title charges on an IRRRL loan, including but not limited to all fee quotations, invoices or schedules and all industry surveys regarding title charges used by the VA.

      8.      All documents and communications exchanged between Jeff London of the VA and anyone affiliated with Wells Fargo.

      9.      All documents and communications exchanged between Bill White of the VA and anyone affiliated with Wells Fargo.

      10.      All documents and communications exchanged between Dreama Walker of the VA and anyone affiliated with Wells Fargo.

# K&L|GATES

FOIA Officer
U.S. Department of Veterans Affairs
Veterans Benefits Administration
Loan Guaranty Office
January 24, 2013
Page 3

  11. All manuals, memos, policies, procedures, guidelines, directions, protocols, checklists or other documents related to the practice or alleged practice by lenders and/or settlement agents to combine VA allowable closing charges (like title fees) with possible unallowable fees (like attorney fees to close an IRRRL). This practice is sometimes called "bundling."

  12. All manuals, memos, policies, procedures, guidelines, directions, protocols, checklists or other documents related to the use of offsets (such as lender credits or origination fees under 1%) to allow the charging of otherwise unallowable fees (like attorney fees to close an IRRRL) to a veteran borrower.

  Please note that this FOIA request is made without prejudice to Wells Fargo's right to utilize other discovery mechanisms in the case *United States ex. rel., Victor E. Bibby and Brian J. Donnelly v. Wells Fargo Bank, N.A.*, Civ. No. 1:06-CV-0547-AT, currently pending in the United States District Court for the Northern District of Georgia.

  Please do not hesitate to contact me with any questions. Thank you for your prompt attention to this request.

Sincerely yours,

Amy Pritchard Williams

cc: Joseph Simpson, VA Office of General Counsel (*via email only*)



**DEPARTMENT OF VETERANS AFFAIRS**
Loan Guaranty Service Monitoring Unit
3401 West End Avenue, Suite 760W
Nashville, TN 37203

February 28, 2011

Ms. Mary Blue                                                    In Reply Refer To: 101/264C
President                                                        Report #IR2010-012
Wells Fargo Bank, N.A.
2650 Wells Fargo Way, X9903-022
Minneapolis, MN 55467

Dear Ms. Blue:

In an effort to promote consistency and ensure that program participants adhere to VA requirements, we routinely audit lenders who deliver home loan benefits on our behalf. Audits are performed by VA's Loan Guaranty Service Monitoring Unit. During August 5-13, 2010, we conducted an audit of your firm's Interest Rate Reduction Refinance Loan (IRRRL) practices to assess your compliance with the laws, regulations, and policies governing this program.

### What Did We Find?

Some of the loans we reviewed during the audit did not adhere to our requirements. We have prepared the enclosed preliminary report detailing our findings and are providing your firm an opportunity to respond.

### What Should You Do and To Whom Should You Respond?

Please read our report and respond, within 45 days [Jeff: Do you think we should give them a little longer since we took some time getting the report out?] of the date of this letter, to any or all of the findings as appropriate.

Please provide your comments to:

    Department of Veterans Affairs
    Monitoring Unit (101/264C)
    ATTN: Dreama Walker
    3401 West End Avenue, Suite 760W
    Nashville, TN 37203

If you need additional time to respond, please contact Gerri Hosack at (615) 695-6404.

### What Will Happen After You Respond?

Upon receipt, we will consider your response, prepare a final report, and send it to our headquarters for review and signature by the Loan Guaranty Service Director. Our headquarters will provide you a copy of the final report at that time.

Sincerely,

Dreama L. Walker
Chief, Nashville Monitoring Unit

Enclosure:
Preliminary Report #IR2010-012

Cc: Diane Kobayashi

# *VA's Loan Guaranty Monitoring Unit*

*Preliminary Report #IR2010-012*
*February 28, 2011*
*Wells Fargo Bank, N.A.*
*Minneapolis, Minnesota*



## *Honoring a National Commitment*

EXHIBIT A

Based on a review of the HUD-1 Settlement Statement and/or an invoice, the following loans appear to show the veteran was charged above what would be considered "reasonable and customary" title search/abstract and title insurance fees. The actual charges as shown on the loan documentation were compared to 2009 Bankrate.com averages for the specific state where the property was located. Wells Fargo should explain and/or provide evidence supporting why the fees are above the average *or* refund the amount over Bankrate.com to the veterans.

(In order to determine what amounts are considered reasonable and customary, VA relied on studies conducted by Bankrate.com, which is a generally accepted practice by the mortgage industry. Additionally, VA used the Bankrate.com average for 2009 as this was the only year the data was broken down by specific charges for title search/abstract and title insurance.)

| Lender Loan # | VA Loan # | Veteran's Name | State | Total Title Costs | Bankrate Data | Amount over Bankrate |
|---|---|---|---|---|---|---|
| | | | | | | |

4