THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, | * | |
| VICTOR E. BIBBY and BRIAN J. | * | CIVIL ACTION FILE NO. |
| DONNELLY, | * | |
| | * | 1:06-CV-547-AT |
| RELATORS/PLAINTIFFS, | * | |
| | * | |
| vs. | * | |
| | * | |
| WELLS FARGO BANK, N.A., | * | |
| individually and as s/b/m with | * | |
| WELLS FARGO HOME MORTGAGE, | * | |
| INC., *et al.,* | * | |
| | * | |
| DEFENDANTS. | * | |

**RELATORS' REPLY TO WF'S RESPONSE IN OPPOSITION TO
RELATORS' MOTION TO DETERMINE SUFFICIENCY OF WF'S
OBJECTIONS AND TO COMPEL DISCOVERY RESPONSES**

WF's response completely ignores the issue before the Court. Relators'

Motion is not "moot," nor are Relators asking the Court for any decision on the

merits of Relators' FCA claims against WF. All of the points made by WF in its

response are meant to distract the Court from the purpose of this Motion.

The purpose of Relators' Motion is to address WF's "objections" and

improper responses to Relators' discovery requests for the 13 loans at issue.

WF is trying to dodge the problems with its responses to Relators' discovery requests by declaring that Relators' Motion is "moot."  WF has still failed to adequately respond to Relators' discovery requests as to the 13 loans subject to this Motion, even after purportedly withdrawing its clearly baseless "objections" that these loans were "not a part of this case."

WF at first refused completely to respond to Relators' Requests for Admission and Interrogatories regarding these 13 loans.  Relators raised the issue at the June 22 Hearing and in Relators' portion of the Joint Submission (Doc. 562 at 20-23) because WF's responses were clearly a "discovery issue" that needed to be addressed by the Court.  The Court agreed with Relators and directed WF to withdraw its objections and to provide full responses to these discovery requests. Doc. 572 at 3 ("Wells Fargo SHALL respond, by July 17, 2015, to the RFAs and Interrogatories regarding the 13 loans of the initial 100 sample, where Wells Fargo is not the lender listed on the relevant loan documents.").

At the time Relators were required to file this Motion addressing WF's objections,[1] WF had not yet served amended responses for these 13 loans.  Relators had no way of knowing whether WF would fully comply with the Court's

---

[1] Doc. 572 at 4 ("Relators shall file this brief within ten (10) calendar days of the filing on the record of the transcript of the June 22, 2015 conference.").

directives and what other obstructions WF would use to avoid providing complete, unqualified responses to Relators' discovery requests.

As it turns out, WF did fail to fully comply with the Court's directives and still continues to provide inadequate responses to Relators' discovery requests. WF served "amended" answers to Relators' discovery requests for these 13 loans the same day WF filed its response to this Motion.  Docs. 583, 585, and 586. Although WF does not "object" in its "amended" responses, WF still failed to explain the bases for its denials that these loans were "not originated by Wells Fargo" and "not a part of this case."[2]

If WF claims that a loan was not issued, originated, or funded by WF, or that the fee violation is not the responsibility of WF, then WF's response should explain, in detail as called for by the Federal Rules and the request itself, the basis for that denial.[3]  FED. R. CIV. P. 37, cmt. ("evasive or incomplete disclosures and

_____

[2] WF's "amended" responses for these 13 loans are attached hereto as Exhibits 1 and 2.

[3] Relators' Second Interrogatory No. 1 states: "For each loan with respect to which Wells Fargo has responded to Relators' Third Requests for Admission by denying that any violation of VA regulations occurred, please explain the basis for Wells Fargo's denial and explain the reason Wells Fargo contends the loan did not violate VA regulations."  Second Interrogatory No. 2 states: "For each loan with respect to which Wells Fargo has responded to Relators' Third Requests for Admission by denying that any violation of VA regulations occurred, please identify the

responses to interrogatories and production requests are treated as failures to disclose or respond.  Interrogatories and requests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions under subdivision (a).") (1993); *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616-17 (5th Cir. 1977) ("Discovery by interrogatory requires candor in responding. . . . The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information.  A partial answer by a party reserving an undisclosed objection to answering fully is not candid.  It is evasive.").

WF's assertion that a "loan-by-loan analysis" will need to be done at some unspecified time in the future does not satisfy WF's discovery obligations.  If WF contends now, in response to these 13 loans or any others, that a loan was not issued, originated, or funded by WF, or the fee violation is not the responsibility of WF, then WF is obligated to explain the bases for those denials in response to the interrogatories.

WF's "amended" responses for these 13 loans fail to do so.  Either WF has

documents by Bates Number that support Wells Fargo's denial and explain the reason Wells Fargo contends the loan did not violate VA regulations."

4

totally withdrawn its baseless contentions that these loans are "not a part of this case" – which were absolutely proven baseless by the evidence submitted with Relators' Motion – or WF's responses for these 13 loans completely fail to explain at all why WF contends one or more of these loans was not issued, originated, or funded by WF, or the fee violation is not the responsibility of WF.

It is vitally important that this Court address WF's responses regarding these 13 loans, because WF will continue to avoid fully explaining the bases of its denials unless the Court directs WF to answer otherwise.  This particular dodge by WF was used for 13% of the sample loans.  There remain 3100 loans at issue which Relators have already identified as dirty.  There are another 4500 loans to be reviewed.  The 3200 dirty loans already identified came from a universe of 8000 loans.  That's a dirty rate of 40%.  There is no reason to think the rate will change for the additional 4500 loans to be reviewed.  If the rate remains the same, it is anticipated that Relators will contend 1800 of those loans are also dirty.  3100 plus 1800 is 4900 loans.  WF can be expected to try the same dodge regarding those 4900 loans.  13% of those 4900 loans is 637 loans.  This Court can *resolve* the issues regarding the 13 loans from the sample and another 637 loans *right now*. That would be a very good thing to do, Relators believe.

Because it is certain that in the future WF will respond regarding other loans by similarly claiming that some of them (likely 13% or more) were not issued, originated, or funded by WF, or are not the responsibility of WF, then WF *should be told, now, that it must explain in detail the bases for such claims in its interrogatory responses*.

*Why* is that so important?  Because Relators are convinced that those claims by WF are baseless, which means that if WF must state the bases for such claims in detail, it cannot.  That in turn means that WF will have to relent, and its liability for the subject 13 loans and for some 637 additional loans can be resolved, now, by the simple expedient of making WF do what the law requires that it do:  answer the interrogatories and respond fully to the RFAs in order to eliminate issues that this Court might otherwise be required to address.

Unless and until WF does what is required of it and details the bases for its denials as to these 13 loans, neither the Court nor Relators can evaluate WF's claims.  WF is clearly dawdling.  The reason WF dodges Relators' discovery is to load as much on this Court as it possibly can, for all the obvious reasons.  This is a classic and purposeful breakdown in discovery.

I.     **WF's responses to Relators' discovery requests are still inadequate and this motion is not "moot":**

When WF first responded to Relators' discovery as to these 13 loans, WF *totally refused* to provide an answer.  In its RFA response to Loan No. 10, for example, WF stated:  "Wells Fargo objects to answering whether loan number 10 in Relators' Exhibit A violated VA regulations for any of the reasons identified by Relators in Request 1 because the loan was not originated by Wells Fargo and is not a part of this case."  (June 12, 2015 WF Response to 3rd RFA 1, Loan No. 10).

WF's interrogatory response for this loan completely failed to explain the basis for that denial.  WF did not explain in any detail why WF contended the "loan was not originated by Wells Fargo" and how the loan was "not a part of this case."  Instead, WF just flatly stated that "Relators' own chart" did not list WF as the lender and WF refused to answer further.[4]  At the very least, when WF issues a 'ruling' (e.g. "not part of this case" or not the "responsibility" of WF), it should be

---

[4] June 12, 2015 WF Response to 2nd Interrogatory 1, Loan No. 10 ("Wells Fargo denies that loan number ▮▮▮▮▮, originated on March 22, 2002 (Loan No. 10 in Relators' Ex. A), violates VA regulations for any of the reasons identified in RFA 1 of Relators' Third Requests for Admissions.  Wells Fargo did not originate this loan.  Relators' own chart identifies the lender as Key Financial Corporation.  Accordingly, the RFA regarding this loan is not reasonably calculated to lead to the discovery of admissible evidence and Wells Fargo objects to answering it, as Wells Fargo did not originate the loan.  Accordingly, any violations of VA regulations are the responsibility of an entity other than Wells Fargo.  In the even that its objection is overruled, Wells Fargo denies this RFA.").

7

required to explain that ruling.  This Court explains *its* rulings.

Even now that the Court has directed WF to substantively respond with respect to these 13 loans, WF has failed to do so.  Doc. 572 at 3.  WF's "amended" response to the RFA for Loan No. 10 now states:  "Wells Fargo denies that the loan violated VA regulations for any of the reasons identified by Relators in Request 1."  (July 17, 2015 WF Response to 3rd RFA 1, Loan No. 10).

WF's "amended" response to the interrogatory explaining its denial for Loan No. 19 now states:

> Wells Fargo denies that loan number ███████, originated on March 22, 2002 (Loan No. 10 in Relators' Ex. A), violates VA regulations for any of the reasons identified in RFA 1 of Relators' Third Requests for Admissions.  There is no evidence of Wells Fargo instructing a settlement or closing agent to reallocate an unallowable fee into an otherwise allowable title fee on the HUD-1.  There is no evidence of an unallowable fee appearing on a preliminary HUD-1 that was subsequently improperly included in an allowable fee.  There is no evidence that allowable fees on the final HUD-1 were inflated to conceal an unallowable fee bundled into allowable fees.  There is no evidence that the borrower was charged an unallowable fee in excess of a 1 % origination fee.

(July 17, 2015 WF Response to 2nd Interrogatory 1, Loan No. 10).

If WF still contends that Loan No. 10 "was not originated by Wells Fargo," the loan is "not a part of this case," or the fee violation is not the "responsibility" of WF, then WF's "amended" interrogatory response totally fails to explain the

8

factual bases for those denials.  It is not clear from WF's response at all whether WF still contends that the "loan was not originated by Wells Fargo" and that the loan is "not a part of this case."  If those are WF's contentions for Loan No. 10, then WF has completely failed to respond to the interrogatory.

So, when overruling WF's baseless objections to these 13 loans and directing WF to provide complete answers to Relators' discovery requests, Relators ask that the Court direct WF to respond as follows:

If WF, for these 13 loans or any additional loans to which WF responds in the future, contends that the loan was not issued, originated, or funded by WF, or that the fee violation is not the responsibility of WF, WF must explain, in detail, the bases for those denials and assertions in response to Relators' discovery requests.  WF should also identify, in response to Second Interrogatory No. 2, the documents which support, in detail, those denials aside from the HUD or other mortgage documents which might list another entity as the lender.  If the HUD and other mortgage documents are the only ones cited in response to this interrogatory, WF should be directed to explain, in detail, how those documents support WF's contention that the loan was not issued, originated, or funded by WF, or the fee violation is not the responsibility of WF.

WF has the loan files; it can provide the above information.  Then, if and when it does, Relators can know whether WF is right, or not.  If WF is right, then Relators can withdraw the subject loan from contention.  If WF cannot state a basis for its claims, then presumably WF won't prevaricate further in response to such a Court Order, and will have to agree that it is responsible for the dirty loan.  It is highly unlikely that there will remain a dispute about such loans – if WF is ordered to state the bases for its claims, in detail.  Of course, it may be that in response to such a Court Order, WF prevaricates again.  If so, that conduct can be added to the growing list of reasons case-dispositive sanctions should be imposed.

## II.   Relators are not trying to "expand the scope" of this case to what WF refers to as "correspondent" loans:

Contrary to WF's representation to this Court, Relators are not trying to "expand the scope"[5] of this case or bring loans into the case that were not issued, originated, or funded by WF.  The 13 loans subject to this motion clearly were issued, originated, or funded by WF and are part of the case – despite WF's attempted 'ruling' otherwise.  That is why WF's objections were baseless and

---

[5] There has been an continuous problem in this case because of WF's attempts to 'rule' what is or is not within "the scope" of this case, and what is or is not "part of this case."   That was the core problem with the August 16, 2013 meet & confer, as shown by that transcript:  Ms. May did not accept Ms. Williams's 'rulings' in that regard.

should be overruled.  If WF contends one of these loans or some loan it responds to in the future was not issued, originated, or funded by WF, then WF must explain that denial in detail in its interrogatory response.

Relators used the term "correspondent" to refer to these 13 loans in their Motion because Relators understood that these 13 loans may have been what WF considers a "correspondent" loan.  Apparently WF does not use the term "correspondent" to describe loans that were issued, originated, or funded by WF but closed in the broker's name, as is the case with the 13 loans described in this Motion.  But the point about whether these 13 loans are "correspondent" loans as that term is used by WF is irrelevant.  The loans were issued, originated, or funded by WF and are part of the case.  Any similar such loans involving a broker that were issued, originated, or funded by WF are also part of the case.

In fact, WF admits that these 13 loans were issued, originated, or funded by WF:

> The 13 loans as to which Wells Fargo objected are not loans acquired through its correspondent line of business.  Instead, they were loans originated by others and either **table-funded by Wells Fargo** or purchased by Wells Fargo shortly after closing, but pursuant to a hybrid arrangement, rather than pure correspondent arrangement in that **it appears that Wells Fargo submitted the loan to the VA for guaranty** despite the fact that for 10 loans the Form 26-1820s (the lender's certification for IRRRLs) are not in the name of Wells Fargo.

11

Doc. 586 at 7 (emphasis added).

If a loan was issued, originated, and funded by another lender, guaranteed by the VA, and then sold in an arm's length transaction to WF for servicing only, *then* Relators *do not* contend that such loan is "part of this case." If "correspondent" is the term WF uses to describe such loans, then that term does not apply to the 13 loans addressed by this Motion.

Relators are not trying to "increase the scope of this case" as represented by WF. Doc. 586 at 10. WF made improper objections to these 13 loans, which Relators *have proved* were WF IRRRLs. This argument about what "correspondent" means to WF is totally irrelevant and does not excuse WF's deficient discovery responses.[6]

**III. WF's discovery responses fail to explain why WF contends VA regulations do not hold WF responsible for the fee violations, or why WF is not responsible for the acts of the Broker:**

WF is responsible for the 13 loans addressed by this Motion under VA regulations and principles of agency. This is why those 13 loans are "part of this case." WF's discovery responses fail to explain why WF contends otherwise.

---

[6] At some point in this case Relators believe it will be necessary to put an end to the word games WF continually plays. The Eleventh Circuit is intolerant of such word games. *See Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993); *Malautea v. Suzuki Motor Co., Ltd.*, 142 F.R.D. 362 (S.D. Ga 1991) (*affirmed* 987 F.2d 1536 (1993)).

If WF denies that it is responsible for the fee violation or that the broker or settlement agent was not acting at WF's direction, then WF's interrogatory responses should explain why WF believes it is not responsible for the broker or agent that closed the loan on WF's behalf or why WF believes VA regulations do not hold WF responsible for the acts of that broker or agent.

WF's current discovery responses for these 13 loans still fail to do so. Relators' discovery requests clearly ask WF to explain, in detail, the bases for WF's denials. If the grounds for WF's denial are that VA regulations do not hold WF responsible for the acts of some other entity, then WF should explain the basis for that denial in response to the interrogatory.

WF complains that Relators' motion seeks a decision "on the merits." Doc. 586 at 2, 3, 7, 12, 17, 19. That requiring WF to do what the rules require – explain the bases for its denials – may in fact force a decision on the merits if, as Relators suspect, there is no basis for the denials and WF can't make one up, is no defense to Relators' Motion at all. To the contrary, one of the finest functions of written discovery, RFAs in particular, is to so require parties to identify bases for claims so that some claims can be eliminated and the issues can be narrowed.

That is, of course, why WF is dodging so much. The simple fact is the law requires that WF provide complete answers to Relators' discovery requests. That

13

doing so will, or may, eliminate loans at issue is not an argument against doing so. *McKesson Information Solutions LLC v. Epic Systems Corp.*, 242 F.R.D. 689, 692 (N.D. Ga. 2007) ("Nowhere in the Federal Rules of Civil Procedure is it required that a party who carries the ultimate burden on an issue at trial must establish a *prima facie* case before it is entitled to discover information the other party may use to rebut the *prima facie* case. Quite the opposite, the rules contemplate that a party receive this information up front, during discovery, so that when the time comes to discharge its burden it has the ammunition necessary to do so."); *see also Donahay v. Palm Beach Tours & Transp., Inc.*, 242 F.R.D. 685, 688 (S.D. Fla. 2007).

If WF contends it is a "defense" that some loan appears not to have been issued, originated, or funded by WF, or that WF is not responsible for a broker or agent under VA regulations, then its discovery responses should explain those denials or "defenses" as required by the Federal Rules and the discovery requests.

## IV.   CONCLUSION

The purpose of Relators' Motion challenging WF's objections and asking the Court to compel discovery responses was to show WF's objections lacked merit and should be overruled. The purpose of that Motion was also to compel WF to provide complete, non-evasive answers to Relators' discovery requests that

14

explain WF's denials, including the bases of any denial that the loan was issued, originated, or funded by WF, or that WF is not otherwise responsible for the fee violation.  WF has failed to do so in its "amended" responses.  WF should be directed to provide complete responses explaining its denials for the remaining loans at issue, as well as further amended responses for these 13 loans to the extent WF's answers fail to explain its denials.

*[signatures continued on the following page]*

Respectfully submitted this 24th day of July, 2015.

BUTLER WOOTEN CHEELEY
& PEAK LLP

WILBANKS & BRIDGES, LLP


BY: s/  James E. Butler, Jr.
JAMES E. BUTLER, JR.
   jim@butlerwooten.com
   Georgia Bar No. 099625
BRANDON L. PEAK
   brandon@butlerwooten.com
   Georgia Bar No. 141605
JOSEPH M. COLWELL
   joseph@butlerwooten.com
   Georgia Bar No. 531527
ROBERT H. SNYDER
   rob@butlerwooten.com
   Georgia Bar No. 404522
2719 Buford Highway
Atlanta, Georgia  30324
(404) 321-1700
(404) 321-1713 Fax

BY: s/  Marlan B. Wilbanks
MARLAN B. WILBANKS
   mbw@wilbanks-bridgeslaw.com
   Georgia Bar No. 758223
TY M. BRIDGES
   tmb@wilbanks-bridgeslaw.com
   Georgia Bar No. 081500
3414 Peachtree Street, N.E., Ste. 1075
Atlanta, Georgia 30326
(404) 842-1075
(404) 842-0559 Fax


PHILLIPS & COHEN


BY: s/  Mary Louise Cohen
MARY LOUISE COHEN
   mlc@phillipsandcohen.com
   DC Bar No. 298299
2000 Massachusetts Avenue, N.W.
Washington, DC 20036
(202) 833-4567
(202) 833-1815 Fax

Attorneys for Relators/Plaintiffs

16

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in Times New Roman, 14 point font.

s/ James E. Butler, Jr.
JAMES E. BUTLER, JR.
  Georgia Bar No. 099625
BRANDON L. PEAK
  Georgia Bar No. 141605
JOSEPH M. COLWELL
  Georgia Bar No. 531527
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
Butler Wooten Cheeley & Peak LLP
2719 Buford Highway
Atlanta, Georgia  30324
(404) 321-1700
(404) 321-1713 Fax

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on July 24, 2015, I electronically filed RELATORS' REPLY TO WF'S RESPONSE IN OPPOSITION TO RELATORS' MOTION TO DETERMINE SUFFICIENCY OF WF'S OBJECTIONS AND TO COMPEL DISCOVERY RESPONSES with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Amy P. Williams
K & L Gates, LLP
214 North Tryon Street, 47th Floor
Charlotte, NC 28202

Charles T. Huddleston
Nelson Mullins Riley &
 Scarborough, LLP
201 17th Street, N.W.
Suite 1700
Atlanta, GA 30363

I certify I have served this document on the following via e-mail:

*United States of America:*
Alan S. Gale
United States Department of Justice
P. O. Box 261
Ben Franklin Station
Washington, DC 20044
 *Alan.Gale@usdoj.gov*

*-and-*
Paris Wynn
Assistant U.S. Attorney
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
 *Paris.Wynn@usdoj.gov*

This 24th day of July, 2015.

BY: <u>s/  James E. Butler, Jr.      </u>
JAMES E. BUTLER, JR.
  Georgia Bar No. 099625
BRANDON L. PEAK
  Georgia Bar No. 141605
JOSEPH M. COLWELL
  Georgia Bar No. 531527
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
Butler Wooten Cheeley & Peak LLP
2719 Buford Highway
Atlanta, Georgia 30324
(404) 321-1700
(404) 321-1713 Fax