# EXHIBIT A

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, VICTOR E. BIBBY and BRIAN J. DONNELLY, | * * * * | CIVIL ACTION FILE NO. |
| RELATORS/PLAINTIFFS, | * * | 1:06-CV-547-AT |
| VS. | * * | |
| WELLS FARGO BANK, N.A., individually and as s/b/m with WELLS FARGO HOME MORTGAGE, INC., *et al.*, | * * * * * | |
| DEFENDANTS. | * | |

### AFFIDAVIT OF RELATOR VICTOR BIBBY

County of DeKalb

State of Georgia

Personally appeared before the undersigned attesting officer, duly authorized to administer oaths, Victor Bibby, who being first duly sworn, deposes and states as follows:

1. My name is Victor Bibby. I am more than twenty-one (21) years of age, am under no legal or mental disability, and have personal knowledge of the matters stated herein.

2. I am a Relator in the above-referenced case.

3. This affidavit is submitted in support of Relators' Motion for an Award of Relators' Share, requesting the Court to award Brian Donnelly and me the maximum 30% relator's share from the Wells Fargo recovery.

4. Brian Donnelly and I first filed this case under seal on March 8, 2006. When we filed this case, we disclosed the case to the Department of Justice and submitted with our disclosure evidence and information supporting our claims, as required by the False Claims Act.

5. For every major lender for whom our company, U.S. Financial Services ("USFS") originated loans, we provided to the Government HUD-1 settlement statements for IRRRLs showing that unallowable fees had been bundled into allowable fees. A substantial number of those HUD-1s were from Wells Fargo, from whom we had received instructions to bundle unallowable fees into allowable fees when originating Wells Fargo IRRRLs.

6. The title work fees on the HUD-1s we provided to the Government were significantly inflated above a reasonable and customary amount, and the closing, settlement, and attorney's fees were notably absent from the face of the HUD-1, indicating that they had been added to the title work fees. The unallowable closing, settlement, and attorney's fees had clearly been

concealed to circumvent the law. We knew that to be true because we had been instructed by the lenders for whom we worked, including Wells Fargo, to bundle unallowable fees into allowable fees. We told the Government about those instructions we had received from Wells Fargo.

7. In addition to the HUD-1s we provided, we also provided fee sheets from settlement agents such as Morris, Hardwick & Schneider, which, when compared to the HUD-1s we provided to the Government, provided further proof that unallowable fees had been bundled into allowable fees and concealed from the veteran borrowers. We provided a significant amount of similar HUD-1s and fee sheets in our disclosure to the Government.

8. We also provided expertise to the Government's lawyers and investigators on the subject of IRRRL closings and the reasonable and customary amounts charged for various fees on IRRRLs.

9. After this case was unsealed, Brian Donnelly and I were designated as expert witnesses on the subjects of IRRRLs, the reasonable and customary amounts for title work fees typically charged for an IRRRL, and our direct knowledge of lenders' fraudulent practice, including Wells Fargo, of adding unallowable fees to allowable fees on IRRRLs to circumvent the law.

concealed to circumvent the law. We knew that to be true because we had been instructed by the lenders for whom we worked, including Wells Fargo, to bundle unallowable fees into allowable fees. We told the Government about those instructions we had received from Wells Fargo.

7. In addition to the HUD-1s we provided, we also provided fee sheets from settlement agents such as Morris, Hardwick & Schneider, which, when compared to the HUD-1s we provided to the Government, provided further proof that unallowable fees had been bundled into allowable fees and concealed from the veteran borrowers. We provided a significant amount of similar HUD-1s and fee sheets in our disclosure to the Government.

8. We also provided expertise to the Government's lawyers and investigators on the subject of IRRRL closings and the reasonable and customary amounts charged for various fees on IRRRLs.

9. After this case was unsealed, Brian Donnelly and I were designated as expert witnesses on the subjects of IRRRLs, the reasonable and customary amounts for title work fees typically charged for an IRRRL, and our direct knowledge of lenders' fraudulent practice, including Wells Fargo, of adding unallowable fees to allowable fees on IRRRLs to circumvent the law.

10. As Mr. Donnelly and I stated in prior affidavits submitted in support of our Motion for Summary Judgment against Wells Fargo, Mr. Donnelly and I reviewed every HUD-1 settlement statement produced by Wells Fargo during discovery in this case, including all "preliminary" and "final" HUD-1s produced. We estimate that we reviewed well over 60,000 Wells Fargo HUD-1s.

11. We summarized our review of the Wells Fargo HUD-1s, and our findings about which Wells Fargo loans were at-issue in this case, in "Exhibits A and B," which were attached to our expert report. Those Exhibits listed some 4,097 Wells Fargo loans where unallowable fees had been charged and that resulted in false claims.

12. In addition to the Wells Fargo HUD-1s we reviewed, we also reviewed thousands of other Wells Fargo loan file documents, such as fee sheets, fee itemizations, fee invoices, and communications between Wells Fargo and its settlement agents. As the Court may recall, the fee invoices were finally produced by Wells Fargo only after we and our counsel caught Wells Fargo concealing them.

13. Mr. Donnelly and I spent approximately 5,135 hours of our time serving as expert witnesses in the case against Wells Fargo. That total does not include

any time spent serving as expert witnesses in the case against MIC and Edwards, and it also does not include all of the time we spent working on the Wells Fargo case, such as the time spent working on the case while it was under seal, and does not include all of the time we spent on the case after it was unsealed attending hearings and depositions, reviewing pleadings and depositions, and meeting with our attorneys about the case.

Further Affiant sayeth not.

This __15__ th day of __SEPTEMBER__, 2017.

_____
VICTOR BIBBY

I, __Sarah L. Andrews__, a notary public for the county and state, certify that Victor Bibby, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instruments, he executed the same voluntarily.

Sworn to and subscribed before me this __15th__ day of __September__, 2017.

_____
Notary Public

5