IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. VICTOR E. BIBBY AND | ) | |
| BRIAN J. DONNELLY, | ) | |
| | ) | |
| Plaintiff-Relators, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| WELLS FARGO BANK, N.A. | ) | 1:06-cv-0547-AT |
| | ) | |
| Defendant. | ) | |
| | ) | |

**UNITED STATES' BRIEF IN OPPOSITION TO RELATORS' MOTION FOR AN AWARD OF THE MAXIMUM RELATOR'S SHARE**

**I.   INTRODUCTION**

Although it recognizes Relators' efforts – which have already earned them a *$27 million dollar ($27,000,000.00) award* – in securing the $108 million Wells Fargo settlement, in view of their egregious misconduct in violating the Court's orders extending the FCA's statutory seal, the United States opposes Relators' demand for a maximum share, as it is wholly unwarranted, and irreconcilable with the FCA's explicit admonition that such awards be ***"reasonable."*** *See* 31 U.S.C § 3730(d)(2) (emphasis added).[1]  Plainly,

---

[1] The United States also opposes Relators' cryptic request for an *in camera* evidentiary hearing for the supposed purpose of putting into the record, "evidence and testimony … [that] may implicate the Government's investigation while this case was under seal and/or the joint prosecution privilege."  Doc. 1340 at 2.  Contrary to Relators' unsubstantiated suggestion, the resolution of their petition does not require delving into the Government's investigation or its decision not to intervene, which are matters subject to the deliberative process and other Government privileges.  Similarly, any communications with Relators

1

a maximum award should be reserved to reward those relators whose actions have been **"*virtually flawless.*"**  *See U.S. v. General Electric*, 808 F. Supp. 580, 584 (S.D. Ohio, 1992) (emphasis added) (maximum share "should be reserved for only those individuals whose conduct in disclosing the fraud is virtually flawless").  Here, however, the Court has already ruled that Relators' efforts were "***tarnished***" by their "blatant" misconduct, and likely warranted no more than "the statutory minimum."  *See* Doc. 474, p. 33, 30 (emphasis added).

     Importantly, Relators' demand arises in a context where the United States has already paid them *$27 million*.[2]  Nevertheless, in seeking a maximum award – *i.e.*, an additional $5.4 million – Relators ask the Court to rule that the $27 million awarded by the United States is not only an "*unfair result*," but also a violation of the Eighth Amendment's excessive fines clause.  *See* Doc. 1340-1, pg. 22, 24.  To state the obvious, any share prospectively awarded to a relator that is within the predetermined range set by the FCA can hardly be deemed either intrinsically unfair, or a penalty or sanction of any kind.  Indeed, the sheer magnitude of the $27 million award already paid will incentivize future whistleblowing, thus fulfilling a central goal of the FCA's *qui tam* provisions.[3]

---

(or their counsel) would be subject to the common interest and/or joint prosecution privilege, which Relators may not unilaterally waive.  Finally, in view of the voluminous and detailed factual record, an evidentiary hearing is not required. *See, e.g., U.S. ex rel. Burr v. Blue Cross Blue Shield of Florida*, 882 F. sup 166, 169 (M.D. Fla., 1995) (In assessing award share dispute, court noted that, "…lengthy factual record in this matter is sufficient for the Court to make this determination; therefore, the Relator's request for an evidentiary hearing shall be denied.")

[2] The $27 million constitutes 25 percent – *i.e.,* the minimum share in a non-intervened qui tam – of the $108 million settlement.  *See* 31 U.S.C. § 3370(d)(2).

[3] Relators state that, "[t]he purpose of a relator's share in *qui tam* cases is to both encourage whistleblowers to come forward and to reward relators who successfully prosecute cases."  *See* Doc. 1340-1, p. 2.  The United States agrees, and submits that its $27 million payment has irrefutably achieved both goals.

Relators' overarching argument – virtually their only argument – is that they are entitled to a maximum award because the Government declined to intervene, thus leaving Relators and their attorneys to litigate this case on their own.  This contention ignores that the FCA already has a built-in reward for relators who proceed with non-intervened *qui tams*.  Specifically, the minimum award in an intervened *qui tam* (where the Government takes over the case) is 15 percent.  *See* 31 U.S.C. § 3730(d)(1).  However, the minimum share increases to 25 percent in a non-intervened *qui tam,* in which the Government normally plays no active role whatsoever.  *See* 31 U.S.C. § 3730(d)(2).  Accordingly, Relators have already received an ***$11 million premium*** under § 3370(d)(2)'s enhanced award scale, and it is this premium – ***not*** a maximum award within the already enhanced share range – that compensates Relators for having litigated the *Wells Fargo qui tam* on a non-intervened basis.

To merit a maximum share, Relators must demonstrate that their efforts were not merely necessitated because this was a non-intervened case, but that they were exceptional and "virtually flawless." *U.S. v. General Electric*, 808 F. Supp. at 584.  However, Relators are precluded from doing so by their deliberate misconduct in repeatedly violating the seal.  Neither Relators' myopic invocation of legislative history, nor their calculated decision to *ignore* the Relator's Share Guidelines promulgated by the U.S. Department of Justice (the "Guidelines") (*which explicitly list violations of FCA seal procedures as a factor warranting a smaller relator share*), succeed in expunging their seal violations, which are fatal to their demand for a maximum award under § 3370(d)(2).

## II.     LEGAL STANDARDS

The purpose of the FCA is to protect the United States from acts of waste, fraud and abuse. As a means towards this end, Congress designed the *qui tam* provisions of the FCA to "quicken the self-interest" of relators who "can spot violations and start litigating to compensate the Government, while benefiting himself as well." *U.S. ex rel. Wood v. Allergan*, 2017 WL 1233991 (March 31, 2017 SDNY), *quoting Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 129-135 (2003). Under the FCA's *qui tam* provisions, whistleblowers can share in the financial recovery derived from their information. Specifically, in an intervened *qui tam*, a relator can receive an award of between 15 percent and 25 percent, and the FCA explicitly notes the determination should be driven by "*the extent to which the person substantially contributed to the case*." *See* 31 U.S.C. § 3730(d)(1). In a non-intervened matter, however, the FCA provides for a share between 25 percent and 30 percent that the court finds "*reasonable*." *See* 31 U.S.C. § 3730(d)(2).[4]

Although courts have great discretion in determining an appropriate relator share, they frequently look to two sources as guides: (1) FCA legislative history (principally the "Senate Factors"); and (2) the Relator's Share Guidelines promulgated by the U.S. Department of Justice ("Guidelines").[5] The Senate Factors include an assessment of: (1) the significance of the information provided to the Government; (2) the contribution of the

---

[4] Relators erroneously state that, "[t]he FCA has no specific factors to consider when deciding what the relator's share should be in a non-intervened case." Doc. 1340-1, p. 3. However, the FCA explicitly states that the determination should be driven by what is "*reasonable*[.]" *See* 31 U.S.C. § 3730(d)(2). The Court has previously recognized this standard. *See* Doc. 474, p. 30.

[5] While the Senate Factors and the Guidelines are principally geared towards the determination of relator shares under § 3370(d)(1), they are also relevant to the analysis under § 3370(d)(2), and courts frequently reference them when applying § 3370(d)(2).

person who brought the action to the results obtained; and (3) whether the determinative information was previously known to the Government.

In addition to the Senate Factors, "courts frequently refer to the [G]uidelines to determine relator's share, as they contain *common sense considerations* guided by *experience*." *U.S. ex rel. Johnson Pochardt v. Rapid City*, 252 F. Supp. 2d 892, 899-900 (D.S.D. 2003) (emphasis added). The Guidelines provide two sets of factors: one set is used to increase the award, and one set is used to decrease the award." *See United States ex rel. Wittenberg v. Public Utility District*, 2016 WL 6518438, *4, (D. Oregon, September 1, 2016) (Court lists all twenty-five of the Guidelines, and notes that, "Courts consistently have looked to the Guidelines[.]"). Importantly, the Guidelines explicitly list a *relator's violations of FCA procedures and, even more specifically, the relator's violation of the seal,* as factors favoring a *decreased* share award. *See, e.g., U.S. ex rel. Alderson v. Quorum Health*, 171 F.Supp. 2d 1323, 1334 (M.D. Fla. 2001) (Court references Guideline providing for lower share where, "*the relator publicized the case while it was under seal*") (emphasis added.)[6] Fundamentally, a central criterion of the Senate Factors and the Guidelines – as well as any "reasonableness" determination under § 3730(d)(2) – *is the conduct of the relator*.

---

[6] For obvious reasons, Relators ignore the Guidelines. This omission is conspicuous, as several of the cases Relators cite in support of their demand for a maximum share – *e.g., Alderson, Johnson Pochardt* – explicitly *endorse* and apply the Guidelines. *See, e.g., U.S. ex rel. Alderson v. Quorum Health*, 171 F.Supp. 2d 1323, 1333 (M.D. Fla., 2001) (Court noted that, "the DOJ guidelines touch many of the factors that *common sense and experience commend* in assessing a relator's contribution"). (emphasis added).

## III. ARGUMENT

### A. A Maximum Share Award is Unwarranted in View of Relators' Intentional Violations of the Court's Orders Extending the Seal.

In view of Relators' blatant violations of the Court's seal orders, a maximum award is neither warranted nor reasonable under § 3370(d)(2) of the FCA. In determining a "reasonable" relator share under § 3370(d)(2), the Court should not ignore Relators' compliance with FCA procedures, including their observance, or in this case lack thereof, of the seal. As Relators were aware, the seal requires that the details surrounding a *qui tam* be kept secret, and is a "mandatory rule that a relator must follow." *See State Farm v. Rigsby,* 137 S.Ct. 436, 442 (2016). Nevertheless, and as noted by the Court, "***Relators flagrantly disregarded their legal obligations of total confidentiality under the Court's seal orders***." Doc. 474, p. 32 (emphasis added). Moreover, Relators' misconduct was "***deliberate*** *and* ***prolonged***," and "***tarnished***" their efforts "on behalf of the Government." *Id.* at 30, 33 (emphasis added).

In support of their demand, Relators attempt to analogize to a number of cases where courts – applying the Senate Factors and/or the Guidelines – awarded a relator a share on the high end of the ranges set forth in 31 U.S.C §§ 3730(d)(1)-(d)(2), but ***none*** of those cases involved a relator that had engaged in the type of deliberate misconduct committed by Relators. *See* Doc. 1340-1 p. 3-8.[7] Indeed, Relators' misconduct was quite aberrant, as most relators do not purposefully engage in such misconduct. It is this aberrant misconduct that belies Relators' claim that, "***[n]o relators could be more deserving*** of the maximum

---

[7] Although it features prominently in their petition, the decision of the district court in *Smith* is not helpful to Relators. *See,* Doc. 1401-1, p. 6. While the court in *Smith* granted a maximum relator share, despite evidence of seal violations, those violations had been committed by relators' *counsel*, not relators themselves. In contrast, here it was Relators – not their counsel – who "*flagrantly disregarded their legal obligations of total confidentiality under the Court's seal orders.*" Doc. 474, p. 32.

30% relator's share than Victor Bibby and Brian Donnelly." Doc. 1401-1, p. 2 (emphasis added). Plainly, this claim is not true, and is offensive to the universe of relators as a whole, who do not engage in such misconduct.

### 1. The Consideration of Relators' Misconduct is Appropriate Under § 3370(d)(2) as Well as the Court's January 5, 2015 Order

Desperate to downplay their seal violations, Relators argue that no "logical connection" exists between their misconduct and their demand for a maximum share under § 3370(d)(2), which requires that an award be "reasonable." Doc. 1340-1, p. 23-25. In tendering this argument, Relators simply posit that, because the Court required Relators to return a total of $1.6 million from the shares they received from the six previous settlements, Relators' misconduct has been expunged, and must be excluded from the Court's calculus. *Id.* However, these arguments fail as they ignore the text of §3370(d)(2), as well as the logic of the Court's January 5, 2015 Order.

#### a. Relators' Misconduct is Relevant to the Court's Determination of a Reasonable Award.

First and foremost, Relators cannot escape the reality that the Court must consider their misconduct in determining a "reasonable" award under § 3370(d)(2). *See, e.g., U.S. v. General Electric*, 808 F. Supp 580, 584 (S.D. Ohio, 1992). (maximum share "should be reserved for only those individuals *whose conduct in disclosing the fraud is virtually flawless*") (emphasis added.) Fundamentally, a central criterion of the Senate Factors and the Guidelines – as well as any "reasonableness" determination under § 3730(d)(2) – is *the conduct of the relator*.

Moreover, it is Relators that assert that their conduct in *U.S. ex rel. Bibby, v. Wells Fargo* warrants a maximum award, and no basis exists to "carve-out" the seal violations from the Court's evaluation of the *entirety* of Relators' relevant conduct under § 3370(d)(2), the Senate Factors or the Guidelines.

### b. The Court's Consideration of Relators' Misconduct is Not Precluded by its January 5, 2015 Order.

Additionally, considering Relators' misconduct in connection with their share demand is entirely consistent with the Court's January 5, 2015 Order. The reason why the United States requested, and the Court ordered, a repayment of a portion of the earlier-awarded shares was because, had the United States been aware of the misconduct, it would never have voluntarily paid Relators a share above the minimum on those six settlements:

> As the Government explains, had it known the Relators were actively violating the seal, it would not have agreed to award them any more than the statutory minimum, instead retaining this amount ($2,736,500) for its use on the public's behalf. Likewise, had the Court been aware of the Relators' consistent disregard for its seal orders, it would not likely have approved an award of $2.7 million above the statutory minimum."

*See* Doc. 474 at p. 30.

This logic is unaffected by the arbitrary timing of the settlements. All that is happening now is that the United States is prospectively taking Relators' misconduct into account in making its voluntary award and doing exactly what it told the Court it would have done with regard to calculating an award if it had the benefit of the knowledge it now has regarding Relators' misconduct. Clearly, had all seven of the settlements occurred before Relator's misconduct became known and had the United States already voluntarily given Relators a share in excess of the minimum on all seven of them, the United States would have sought – and the Court presumably would have ordered – a return of the excess award on all of seven awards, including the Wells Fargo settlement. There is thus no reason to deem the prior misconduct irrelevant when prospectively determining the share Relators should receive from the Wells Fargo settlement. Indeed, ignoring Relators' misconduct could encourage future seal-violators to game the court by timing their settlements in such a way so that they are held to a minimum share only on early or small settlements.

### 2. A Minimum Award Share Would Not Constitute an Excessive or Unconstitutional Fine or Punishment.

Relators also suggest that awarding them the statutory minimum 25 percent (which works out to $27 million) as opposed to the 30 percent statutory maximum ($32.4 million) on the basis of their misconduct would be "unfair," "unjustified," and a violation of the Eighth Amendment's excessive fines clause. *Id.* at 23-24. But determining a reasonable award within the range contemplated by § 3730(d)(2) manifestly is *not* a "fine," and Relators' efforts to mischaracterize the Court's application of § 3730(d)(2) as some kind of "penalty proceeding" are unpersuasive and unavailing. Relators are neither intrinsically, nor presumptively, entitled to an award in excess of 25 percent – *let alone* a maximum award. Instead, the FCA requires the Court to *affirmatively determine* a "reasonable" award between 25 and 30 percent. Should the Court reject Relators' demand for a maximum award on the basis of their failure to follow FCA procedures, this would constitute an appropriate exercise of discretion under § 3730(d)(2), not a punishment, sanction or fine as Relators suggest.

### B. Relators' Handling of the *Wells Fargo Qui Tam* on a Non-Intervened Basis Entitles Them Only to An Enhanced Minimum Award, Not a Maximum Award.

Notwithstanding their flagrant disregard of the FCA's seal requirement, Relators' demand for a maximum award is based largely upon the argument that they and their counsel – not the Government – did all the work that resulted in the settlement. *See, e.g.*, Doc. 1340-1, pg. 2 ("Every brick laid to build this case was laid by Relators and their counsel; none by the Government."). As noted, however, it is the design of the FCA in a non-intervened case that the relator will pursue the case without Government assistance, and the FCA already takes this into account by providing an enhanced minimum share in

non-intervened cases. Accordingly, it does not follow, as Relators assume, that a maximum share is warranted merely because they proceeded with the case on their own.

Specifically, whereas the minimum relator share in an intervened matter is 15 percent, it is a substantially higher 25 percent in a non-intervened matter.[8] *See* 31 U.S.C. §§ 3730(d)(1), (d)(2). In promulgating the higher award scale in § 3730(d)(2), Congress recognized and rewarded the additional efforts required of relators in non-intervened *qui tams*. To illustrate, had the United States intervened, Relators' minimum share under § 3730(d)(1) would have been 15% ($16.2 million). However, because the United States did not intervene, § 3370(d)(2) applies, and provides for a higher minimum share of 25% ($27 million). Under the FCA, this nearly **$11 million premium** – not an automatic maximum share – compensates for Relators having proceeded in a non-intervened *qui tam*.[9]

Additionally, the efforts of *Relators' counsel* to augment Relators' demand with stories of *their own* efforts is inappropriate and should be ignored. *See* Doc. 1340-1, p. 15-16. While this factor might be relevant in an intervened case, Relators counsel is expected

---

[8] Relators' characterization of the 25 percent minimum share already paid by the United States – *i.e.*, the $27 million – as a "finder's fee," suitable only for a relator that "does nothing more than file the action in federal court[,]" *see* Doc. 1340-1, pg. 22, is apt only with respect to a 15% minimum share under *§ 3730(d)(1),* which applies to relators in intervened *qui tams*. The 25 percent minimum share already paid here, under the enhanced scale in *§ 3370(d)(2)*, is not simply a "finder's fee," as it is available only to relators in non-intervened *qui tams*, who do substantially more than "file an action in federal court."

[9] Continuing with their unabashed narrative of the woes attendant to the receipt of *only* $27 million dollars, Relators assert that, "Awarding the Relators no more than 25% in this case would be the equivalent of saying the Relators did nothing other than bring this fraud to the Government's attention and that **they deserve nothing** for what they have endured and accomplished[.]" (Doc. No. 1340-1, p. 22). Again, this contention is especially erroneous with respect to awards under § 3370(d)(2), which provides heightened awards for relators in non-intervened *qui tams*. Relators received an $11 million premium for proceeding with a non-intervened *qui tam*.

to work diligently in a non-intervened case, and is separately compensated *via* the attorneys' fees award provision of the FCA.  As Relators' brief makes clear, moreover, Wells Fargo has already paid Relators' attorneys' fees and expenses in the *full* amount claimed, which is likely *substantial*.  *See* Doc. 1340-1 at 15 ("Wells Fargo elected not to contest Relators' claims for attorneys' fees and expenses").  Awarding a maximum share on the basis of the efforts of Relators' counsel is thus unwarranted and amounts to paying counsel fees twice.

In arguing for a maximum share under §3370(d)(2), Relators must demonstrate that their *own* efforts and contributions were both *exceptional – i.e.*, well in excess of the general expectations of a relator in a non-intervened *qui tam* – and indeed virtually flawless.  As noted above, they are precluded from making any such showing by their deliberate misconduct.

### C.  Even Absent Relators' Seal Violations, the Maximum Award is Not Warranted

While Relators' intentional and repeated seal violations are a sufficient basis to keep the share at the minimum 25 percent level, this case does not otherwise merit a maximum award.  Indeed, even absent Relators' misconduct, the record does not support the idea that this case required exceptional efforts by, or visited undue hardships on, Relators *themselves* in a non-intervened case.  For instance, with reference to the Government's substantial and national knowledge regarding *qui tam* lawsuits, the volume of documents reviewed personally by Relators and the number of depositions described in Relators' motion and the attached affidavits are, by large FCA litigation standards, entirely unremarkable.

The Guidelines suggest another important reason why a maximum award is unwarranted in this case – *i.e.,* relatively small settlements warrant higher awards, while relatively high settlements warrant smaller awards.  These Guidelines factors are designed

to appropriately balance the goals of the *qui tam* provisions of the FCA – *i.e.*, recovering funds for the Government, by encouraging *qui tam* lawsuits.  In a relatively small settlement, a larger share may be warranted to sufficiently incentivize future relators to pursue smaller cases.  However, with respect to a larger settlement, a smaller share would be sufficient to incentive future relators, while maximizing the amount of funds returned to the public, which is their rightful owner.  Here, as the $108 million Wells Fargo settlement is large, a 25 percent minimum share – *i.e.*, *$27 million* – is wholly appropriate, as it spectacularly compensates Relators and incentivizes future whistleblowing, while concurrently maximizing the return of funds to the public.

**IV.    CONCLUSION**

As detailed above, Relators' demand for a maximum share award should be denied, as their efforts were tainted by their deliberate and prolonged misconduct in violating the Court's seal orders. The $27 million Relators have been awarded by the United States handsomely compensates Relators for their efforts in obtaining the $108 million Wells Fargo settlement, and is also more than sufficient to incentive future whistleblowers.

>    Respectfully submitted,
>
>    CHAD A. READLER
>    Acting Assistant Attorney General
>
>    Byung J. Pak
>    UNITED STATES ATTORNEY
>
>    /s/ Paris A. Wynn
>    PARIS A. WYNN
>    ASSISTANT U.S. ATTORNEY
>
>    600 Richard B. Russell Federal Bldg.
>    75 Ted Turner Drive, S.W.
>    Atlanta, Georgia 30335
>    Telephone: (404) 581-6302
>    Facsimile: (404) 581-6181
>    E-mail: Paris.Wynn@usdoj.gov

                MICHAEL D. GRANSTON
                ALAN S. GALE
                Attorneys, Civil Division
                United States Department of Justice
                601 D. Street, N.W.
                Washington, DC 2004
                Telephone:  (202) 307-6296
                Facsimile:  (202) 616-3085
                E-mail:  Alan.Gale@usdoj.gov

October 16, 2017

## CERTIFICATE OF COMPLIANCE

I certify that the documents associated with this certificate were prepared using one of the font and point selections approved by the Court in Local Rule 5.1B for documents prepared by computer.

/s/ Paris A. Wynn
PARIS A. WYNN
ASSISTANT U.S. ATTORNEY

CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing Opposition Brief, using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

This 16th day of October, 2017.

/s/ Paris A. Wynn
PARIS A. WYNN
ASSISTANT U.S. ATTORNEY